**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARK D. JASPERSON**<br><br>**Plaintiff,**<br><br>v.<br><br>**FEDERAL BUREAU OF PRISONS,**<br>**et, al.,**<br><br>**Defendants.** | **Case No. 1:06CV01488 (HHK)** |

**MEMORANDUM IN SUPPORT OF JURISDICTION**

COMES NOW, Plaintiff Mark D. Jasperson, by and through counsel, and submits the following points and authorities regarding jurisdiction in further support of his Motion for a Preliminary Injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure against Defendant Lappin and the Federal Bureau of Prison employees. In addition to the grounds previously set forth in his Memorandum in Support of a Temporary Restraining Order plaintiff provides the following points and authorities.

1.     **PROCEDURAL BACKGROUND**

The Plaintiff filed the underlying complaint on Wednesday, August 23, 2006, predicating jurisdiction primarily on 28 USC § 1331, because the relief sought required the interpretation and application of a statute of the United States, 18 USC § 3621(b), and regulations pursuant thereto, 28 CFR § 570.20 and 570.21.

The Plaintiff wished to be considered by the BOP for designation in accordance with the "**strong recommendation**" of the sentencing court to serve his four month sentence at a Community Sanctions Center irrespective of the invalid and illegal

regulations promulgated by the BOP as found in 28 CFR § 570.20 and 570.21. As noted in the Sentencing Minutes, the sentencing judge entered his recommendation specifically to allow the Plaintiff "to operate his business" by participating in a Community Corrections Center work-release program. This judicial recommendation was made to avoid unnecessary harm to hundreds of innocent families who rely upon the Plaintiff's day-to-day management of the business to assure that they will continue to receive salaries and health insurance from his business. The sentencing court and the Probation Officer, who recommended sentencing the Plaintiff to the Community Corrections Center, were unaware that the BOP had changed its thirty five year old policy of allowing direct placement of prisoners into Community Sanctions Centers and following judicial recommendations regarding such placements. It should be noted that the BOP has now rescinded the new 2005 regulations for defendants sentenced in the Second, Third and Eight Circuits since those Circuits have ruled the new regulations illegal and invalid. The newly developed 2005 BOP policy and regulation precluding consideration of such judicial recommendations are invalid as they are directly contrary to 18 USC § 3621(b).

Plaintiff has filed suit contending that the regulation misconstrues the discretion granted to the BOP by § 3621(b). Plaintiff seeks a declaratory judgment and injunctive relief finding the BOP policy invalid, the regulations invalid and an order requiring the BOP to consider in good faith[1] whether to directly designate Plaintiff to a Community Sanctions Center to serve his four month sentence.

During argument before Judge Walton on August 25, 12006, the jurisdictional issue arose, i.e., whether this court had jurisdiction under 28 USC § 1331-- and Judge

---

[1] Plaintiff does not request that this Court designate plaintiff to the halfway house, merely that the BOP make a good faith effort to comply with § 3621, as have most other courts considering this issue.

Walton requested that these matters be briefed by both parties and a memorandum be filed by noon on August 28, 2006.

## 2.    <u>THIS COURT HAS JURISDICTION</u>

This Court has jurisdiction over the Plaintiff's complaint seeking designation by the United States Bureau of Prisons ("BOP") pursuant to a federal statute, 18 USC § 3621(b).    Under 28 USC § 1331: "Federal question.    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983), the Supreme Court reiterated the test for federal question jurisdiction:

> Original federal [question] jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element . . . ." <u>Id</u>. at 11. . . . Under our interpretations, Congress has given the lower federal courts jurisdiction to hear a complaint that establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Id. at 25.

In a case involving a state utilities regulation that had relatively attenuated federal implications—unlike the instant action which directly disputes a federal agency action based on a federal statute—the court analyzed the issue favorably for federal jurisdiction setting forth the applicable legal principles as follows:

> We need not and do not decide, however, whether the federal court had jurisdiction of this matter under § 825p, for federal jurisdiction over NOPSI's statutorily-based preemption claim can be sustained under a different jurisdictional grant: 28 U.S.C. § 1331. Section 1331 provides for federal jurisdiction over questions "arising under" a federal law.  As noted by the Supreme Court, "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the

federal judicial system." <u>Franchise Tax Board v. Construction Laborers Trust</u>, 463 U.S. 1, 8, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). However, an action may "arise under" federal law when "in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." <u>Id.</u> at 9 (quoting P. Bator, P. Mishken, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Court's and the Federal System 889 (2d ed. 1973)). Indeed, the Supreme Court has recently observed that a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." <u>Shaw v. Delta Air Lines Inc</u>., 463 U.S. 85, 96 n.14, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983). Of course, to avoid dismissal under Fed. R. Civ. P. 12(b)(1), the question presented must be "substantial." A complaint's allegations are "insubstantial if they are obviously without merit or if prior decisions foreclose controversy on the subject." <u>In re Carter</u>, 618 F.2d 1093, 1103 (5th Cir. 1980), cert. denied, 450 U.S. 949, 67 L. Ed. 2d 378, 101 S. Ct. 1410 (1981). So rigorous is the test for dismissal under Rule 12(b)(1) that if there is "any foundation of plausibility to the claim, federal jurisdiction exists." <u>Meason v. Bank of Miami</u>, 652 F.2d 542, 547 (5th Cir. 1981), cert. denied, 455 U.S. 939, 102 S. Ct. 1428, 71 L. Ed. 2d 649 (1982) (quoting 13 C. Wright & A. Miller, Federal Practice & Procedure § 3564 at 428 (1975). 463 U.S. at 8-9.

The complaint in this case directly requires the interpretation of 18 USC § 3621(b) and regulations pursuant thereto, 28 CFR § 570.20 and 570.21 and the application of that interpretation to federal agency action by the BOP. There can be no serious contention[2] that the relief sought does not squarely raise a federal issue.

As <u>Carter</u> at 618 F. 2d 1103 points out, "A complaint's allegations are "insubstantial if they are obviously without merit or if prior decisions foreclose controversy on the subject." Here, the plaintiff's allegations have been found substantial by the sentencing court. However, the sentencing court found that it did not have jurisdiction to hear plaintiff's habeas complaint under 28 USC § 2241, unless plaintiff was already in the physical custody of the BOP. In the previous action, the Plaintiff

---

[2] The government cannot seriously contend that a complaint disputing federal agency action pursuant to a federal statute and invalid federal regulations is not a federal question and should be filed in the Superior Court for the District of Columbia.

sought relief under the habeas statute rather than requesting declaratory judgment or mandamus as in the instant action.  If the Plaintiff were to be forced to await his physical incarceration to allow the court to accept jurisdiction to hear a habeas petition, justice could never be granted in this case as the time required to litigate the matter would most certainly exceed the term of his four month sentence.  Even if the matter were heard on an expedited basis, the serious and substantial harm to the Plaintiff's business and the innocent employees who rely upon his daily presence would be irreparable.

Indeed, when the First Circuit Court of Appeal invalidated the BOP's identical 2002 regulations, the court recognized that a federal question existed as the case was originally filed under the provisions of 28 USC 1331, seeking injunctive and declaratory relief.

> We review de novo an agency's construction of a statute that it administers, although subject to established principles of deference." Griffiths v. INS, 243 F.3d 45, 49 (1st Cir. 2003). If "the language of the statute is plain and admits of no more than one meaning" or if the statute's legislative history "reveals an unequivocal answer" as to the statute's meaning, "we do not look to the interpretation that may be given to the statute by the agency charged with its enforcement." Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 858 (1st Cir. 1998) (internal quotation marks omitted); see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Goldings v. Winn, 383 F.3d 17  (1st Cir. 2004)

In one of the multitude of District Court cases on point, the court held that there was a clear federal question and that mandamus was an appropriate remedy.

> Relief in the nature of *mandamus* is available to compel an exercise of discretion confined within lawful bounds Petitioners also seek relief in the nature of *mandamus* under 28 USC § 1361. They ask the Court to compel Respondent [**21]  to exercise his authority within lawful bounds. Here, Petitioners argue that the new BoP policy renders Petitioners ineligible for a type of imprisonment authorized by statute. HN14 *Mandamus* may be appropriate if the BoP policy impermissibly ignores the real legal limitations on BoP discretion.

That is, the Bureau of Prisons has interpreted the statute in a manner which limits the possible sites where Petitioners may be imprisoned. "The [officer's] duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or *mandamus* to keep within them." *Burnett v. Tolson*, 474 F.2d 877, 882 n.8 (4th Cir. 1973) (quoting *Work v. United States*, 267 U.S. 175, 177, 69 L. Ed. 561, 45 S. Ct. 252, 23 Ohio L. Rep. 251 (1925)); *see also infra* part III.C.v. If the interpretation, and thus the limitation, are not correct, utilization of the full discretionary spectrum can be compelled by *mandamus*. *Silveyra v. Moschorak*, 989 F.2d 1012 (9th Cir. 1993).

Accordingly, this Court has jurisdiction to decide the injunction and the mandamus claims.

**3.    IRREPARABLE HARM**

At argument, the government suggested that there would be no harm because plaintiff would only have to report for incarceration if relief were not granted and then he could seek other remedies. While irreparable harm is a component of injunctive relief, this limited and erroneous view of harm is not consistent with the law. The four factors governing the issuance of injunctive relief "should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. CSX Transp., Inc. v. Williams, 406 F.3d 667, 670 (D.C. Cir. 2005) (citing CityFed Fin. Corp., 58 F.3d at 747). An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits[3] even if there is a relatively slight showing of irreparable injury. CityFed Fin. Corp., 58 F.3d at 747." Tanner v. Federal Bureau of Prisons, 433 F.Supp.2d 117, 120 (D.D.C. 05/17/2006.

In Tanner, plaintiff was transferred by the BOP from Fairton to Leavenworth, preventing him from continuing training in the aquaculture program at Fairton while

---

[3] As demonstrated in the initial Memorandum in Support of a Temporary Restraining Order, plaintiff's likelihood of success on the merits is overwhelming. The government has produced no authority for its position on the merits, nor has plaintiff's counsel found any that has not been overruled.

incarcerated at Leavenworth.  Plaintiff sought injunctive relief[4] claiming irreparable

injury from this deprivation.  District Judge Urbina found:

> It is axiomatic that the plaintiff cannot continue training in the aquaculture program at Fairton while incarcerated at Leavenworth. What is certain, therefore, is his loss of access to the aquaculture program. In addition, he is certain to lose his pay grade, pursuant to the defendant's policies, and as a result, he will lose his eligibility for the cable program. The plaintiff has thus established irreparable injury with regard to Fairton's aquaculture program and his eligibility for the cable programs.

In deciding a nearly identical case involving the BOP's unlawful designation

policy, the court in Byrd v. Moore, 252 F. Supp. 2d 293 (W.D.N.C. 2005) stated:

> Petitioners do not contend, and the Court does not believe, that Petitioners have a right initially to be designated to a CCC. Rather, they have **[\*\*22]** a right to be considered for such designation unless the BoP legitimately determines that CCCs are not proper "penal or correctional facilit[ies]." They have a right to require that the BoP not act based on what may be an erroneous interpretation of law. In other words, Respondent "has a clear duty" not to improperly foreclose any legally available places of imprisonment. United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 511 (4th Cir. 1999). The only way the BoP can properly foreclose places of imprisonment is by consideration of the five factors listed in 18 U.S.C. § 3621(b) and by consulting its institutional expertise. The BoP is not permitted to base policy changes on errors of law: to do so would be arbitrary and irrational. There is no evidence that the BoP considered any of the permissible factors in deciding that imprisonment at a CCC was "unlawful." The Court therefore concludes that the Petitioners have met their burden in "raising questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Blackwelder, 550 F.2d at 195.  **[\*\*23]**  And because the Court has previously concluded that the BoP interpretation of the relevant statute is likely incorrect, the Petitioners have demonstrated a likelihood of success on the merits of their application for relief in the nature of *mandamus*. A stay or preliminary injunction is proper. Byrd v. Moore, 252 F. Supp. 2d 293 (W.D.N.C. 2005)

---

[4] The Court denied injunctive relief based on plaintiff's failure to establish a likelihood of success on the merits.  Here, plaintiff has an overwhelming likelihood of success on the merits.  About seventy five cases have found the offending regulations invalid; no cases not overruled or whose precedential underpinnings have not been overruled can be found by counsel.  The government has not yet submitted any authority to the contrary.

Here, plaintiff has conclusively established irreparable harm both in the Middle District of Florida and this Court.  See Plaintiff's Declaration, Exhibits 1-6.  Plaintiff is the sole shareholder and Chief Executive Officer of a 50 outlet video chain employing over 350 people in ten states, which is struggling and can only remain viable through the personal efforts of plaintiff, who negotiates leases, deals with vendors who will only send orders if plaintiff runs the business, and other exigencies set forth in the pleadings.  There is no doubt that the business will collapse if plaintiff does not continue to run it.  This is plain in the pleadings and was the basis for Judge Lazarra's strongly recommending a halfway house.

This collapse is certain to occur because if plaintiff must report to Atlanta on August 31, there is no employee in his company[5] who has the confidence of the movie studios and distributors who supply the stores' inventory (all of the suppliers' contracts will expire in the next 90 to 120 days), there is no employee in his company who is able to renegotiate leases (one half of the leases are currently in some phase of renegotiation to downsize the stores, reduce the rent or extend the lease period), and is able to coordinate the overall operation of the business.  If he is not there the business will be terminated. Thus, the injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.

This harm is irreparable because plaintiff's absence due to plaintiff's incarceration will require the business to be shut down because there is no one else in the business who can deal with the vendors and lessor.  When the business is shut down approximately 350 employees will be put out of work and there is no likelihood that plaintiff will be able to

---

[5] See Plaintiff's Second Declaration fully explaining his role in the company.  Much of this information is in his first declaration and the exhibits thereto. .

start the business up again since his locations and employees will be gone. There is no monetary remedy recoverable[6] by plaintiff nor, even if available, would it be adequate to remedy the collapse of the business.

The gravity of plaintiff's situation and need for immediate relief may be seen in the history of plaintiff Combs after the transfer of his case[7] from the District of Columbia on April 16, 2003. After delays by the government, Combs got the relief he sought on August 22, 2003, over four months after the decision by the District of Columbia District Court. By denying injunctive relief here, plaintiff will have to wait to be incarcerated and then exhaust administrative remedies, file his habeas under §2241 and await the inevitable grant of relief—after he has served his time and after his business has been destroyed by the government's refusal to follow the overwhelming weight of judicial decisions.

1.    **RELIEF SOUGHT**

It is necessary for an order granting injunctive relief be entered by August 29, 2006, so that plaintiff may consider an appeal or prepare himself to report to Atlanta. If the latter, he must sign various papers to enable others to shut down the business. Plaintiff needs a few days to do this and his ability to do so is hindered by the hurricane approaching Tampa, which is presently scheduled to strike on Wednesday night.

---

[6] Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. See WMATA v. Holiday Tours, Inc., 182 U.S. App. D.C. 220, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977). Even if monetary loss would be recoverable, plaintiff's business will be terminated without injunctive relief. Injunctive relief is also appropriate where it would be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999). The losses to plaintiff's company are difficult to calculate, but it should be recalled that plaintiff brought this company out of insolvency and has struggled for six years, and its demise will cost 350 people their jobs, health insurance, and benefits and will result in the loss of all store locations.
[7] Combs, v. Attorney General, 260 F. Supp. 2d 53 (D.D.C.2003); compare Ashkenazi v. Attorney General, 246 F. Supp. 2d 1, (D.D.C. 2003) (granting injunction)

Accordingly, we request that a decision be entered soon and, in any case, a stay of his reporting date be granted for ten days.

WHEREFORE, plaintiff requests that injunctive relief be entered requiring defendant Lappin and the Bureau of Prisons to reconsider plaintiff's CCC placement in good faith in accordance with the standards employed by the Bureau of Prisons prior to December 2002 and without consideration of 28 CFR § 520.20 and 520.21.

Respectfully submitted,

_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC  20001
(202) 842-1700

Attorney for the Plaintiff
Mark D. Jasperson

In deciding a nearly identical case, the court in . Byrd v. Moore, 252 F. Supp. 2d 293
     (W.D.N.C. 2005)  explained the irreparable harm in the BOP's unlawful
     designation policy:

An enormous number of judicial challenges to the validity of  the BOP policy embodied in 28 CFR § 570.20 and 570.21, which are almost identical to the Plaintiff's challenge, have been victorious and a plethora of prior decisions uniformly support the Plaintiff's position that the BOP rules are illegal and invalid.  A vast number of cases in support of the Plaintiff's position were cited in the Plaintiff's Memorandum in Support of the Motion for Temporary Restraining Order and, as each day passes, even more cases

are decided in accordance with the Plaintiff's position.  Indeed, the government's position has been rejected by virtually all courts that have heard the matter including all three Circuit Courts of Appeal that have heard the issues and over one hundred decisions in District Court cases.  Thus, the Plaintiff's allegations cannot be found without merit or foreclosed by prior decisions.

WHEREFORE, the Plaintiff requests that injunctive relief be entered requiring defendant Lappin and the Bureau of Prisons to reconsider plaintiff's **Community Sanctions Center** placement in good faith in accordance with the standards employed by the Bureau of Prisons prior to December 2002 and without consideration of 28 CFR § 520.20 and 520.21.  The Plaintiff further requests that an affidavit be filed with this Court demonstrating compliance within ten calendar days of this Order or before plaintiff is required to report to the Bureau of Prisons, whichever is earlier,  The Plaintiff requests that bond be waived or set in a de minimus amount and that his reporting date be stayed until this matter may be more fully litigated.

Respectfully submitted,

_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC  20001
(202) 842-1700

Attorney for the Plaintiff
Mark D. Jasperson