UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK D. JASPERSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1488 (HHK) |
| FEDERAL BUREAU OF PRISONS, | ) |
| and | ) |
| HARLEY G. LAPPIN,<br>Director, Federal Bureau of Prisons, | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW**

Mr. Jasperson has moved for a temporary restraining order asking this Court to direct the Bureau of Prisons to disregard its own regulations and reconsider plaintiff's placement in a prison camp instead of a halfway house. Mr. Jasperson maintains that he is entitled to placement in a halfway house so that he can be released to go to work. Mr. Jasperson, who has already been granted two stays of the date he is to report, is currently scheduled to surrender into custody of prison authorities in Atlanta, Georga on August 31. At a hearing on Friday, Judge Walton recognized that in order for the court to grant the relief sought by plaintiff, the Court has to have jurisdiction. The parties were directed to brief the issue of jurisdiction by 12 noon on Monday, August 28.

The issue is whether this Article III Court has jurisdiction over plaintiff's claim that his interests are adversely affected by BOP regulations that he claims are invalid. Plaintiff asserts federal question jurisdiction under the constitution. Plaintiff alleges that his due process and equal

protection rights under the constitution were violated because the Bureau of Prisons did not consider the factors enumerated in 18 U.S.C. § 3621(b) before exercising its discretion to exclude him from placement in a halfway house at the inception of his sentence. Defendant contends that the court does not have jurisdiction over plaintiff's claim and that plaintiff's motion for a temporary restraining order should be denied and the case dismissed for lack of subject matter jurisdiction and for failure to state a claim.

**I. IN ORDER TO PROCEED WITH HIS CHALLENGE TO THE BOP REGULATIONS, PLAINTIFF MUST SURRENDER INTO BOP CUSTODY AND FILE A HABEAS PETITION.**

Plaintiff files this action not as a habeas petition but as a federal question action directly under 18 U.S.C. § 3621 and the Constitution. Plaintiff previously filed a habeas action before the sentencing judge, the Honorable Richard A. Lazzara, United States District Judge in the Middle District of Florida. Judge Lazzara dismissed the habeas petition for lack of jurisdiction on August 7, 2006, finding plaintiff's petition to be premature because Mr. Jasperson is not yet in the custody of the Bureau of Prisons. (Copy of order attached.) The judge's order clearly contemplates that plaintiff will re-file his habeas petition as soon as he surrenders into custody. *Id*. Apparently, Mr. Jasperson found this ruling unpalatable for it requires him to surrender into the custody of the Bureau of Prisons before he can seek relief. Plaintiff now seeks a more sympathetic forum the second time around. Nonetheless, in order for plaintiff to challenge the manner of the execution of his sentence, he must surrender to prison authorities and file a habeas petition. *See Levine v. Apker*, 455 F.3d 71, 78 (2nd Cir. 2006.)

**II.   PLAINTIFF HAS NO LIBERTY INTERESTS UNDER THE CONSTITUTION PROTECTING HIS RIGHT TO PLACEMENT IN A HALFWAY HOUSE.**

A.  Due Process

Mr. Jasperson alleges that his substantive and procedural due process rights were violated under the 5th Amendment because he contends the BOP regulations are invalid.  In deciding whether one's substantive due process rights have been violated, the Court must consider whether life, liberty, or property is at issue.  In order for due process rights to attach, a liberty interest must be identified arising from the Due Process Clause of the constitution, or, in unique circumstances, from statutes or regulations.  *Sandin v. Conner*, 515 U.S. 472-73 (1974).  But generally prisoners have only one liberty interest that is afforded constitutional protection and that is the freedom from restraint "which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin* at 484.  The rationale underlying this rule is that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights ..." *citing Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977), *quoting Price v. Johnston,* 334 U.S. 266, 285 (1948).

A convicted prisoner has no liberty interest in the place of his confinement even though the degree of confinement in one facility may be different than in another. *Meachum v. Fano,* 427 U.S. 215 (1976)(no due process protections implicated when prisoner transferred to a less congenial setting); *Gleave v. Graham*, 954 F.Supp. 599 (W.D.N.Y. 1997).  Congress has given federal prison officials full discretion to control the conditions of confinement.  *Meachum* at 815.  Mr. Jasperson has no liberty or property interest at stake that is subject to Constitutional protection.

B.  Equal Protection

Mr. Jasperson argues that the Bureau of Prisons is treating him differently than other similarly situated inmates by not placing him in a halfway house, while others in the residential drug abuse treatment program are still allowed up to six months. As a result, he claims his equal protection rights have been violated. The Equal Protection Clause requires similarly situated persons to be treated in a substantially equivalent manner. See F.S. Royster Guano Co. v. Virginia, 253 U.S. 412 (1920)("all persons similarly circumstanced shall be treated alike."). "Under the equal protection component of the Fifth Amendment's Due Process clause, a legislative classification need only bear a rational relationship to a legitimate government purpose as long as no suspect or quasi-suspect class is involved." Bennett v. District of Columbia Department of Corrections, et al., 1995 WL 601049 (D. D.C.) citing City of Cleburn v. Cleburn Living Center, 473 U.S. 432 (1985) (the Fifth Amendment imposes the same equal protection requirements on the federal government and the District of Columbia as the Fourteenth Amendment's Equal Protection Clause Imposes on the states).

Unless Mr. Jasperson is a member of a suspect class, the government action in question must generally bear a rational relationship to a legitimate government purpose. Courts have held that neither federal inmates nor violent offenders classify as suspect classes. Hutchins v. District of Columbia; 188 F.3d 531, 563 (D. D.C. 1999) ("Neither prisoners nor indigents constitute a suspect class."); Bennett, 1995 WL 601049 (D. D.C.) ( "Violent offenders do not constitute a suspect classification."). Thus, the plaintiff must prove that BOP's decision to permit residential drug treatment offenders to spend a longer period of time, up to six months, in community drug treatment programs prior to their release, than inmates who are not in such programs, is not rationally related to any legitimate governmental purpose. The burden to prove disparate treatment is on the movant

in these matters. James-Bey v. Freeman, 638 F.Supp. 758, 763 (D. D.C. 1986) (In the context of plaintiff's transfer to another facility after participating in a strike, the court held that he failed to present facts that proved he was being arbitrarily or irrationally treated by prison officials). In this action, Mr. Jasperson alleges no facts and cannot seriously be heard to support a claim that sometimes placing inmates in community drug treatment programs for up to six months prior to their release is arbitrary, unreasonable or irrational.

Deference is given to the BOP in such situations. The Supreme Court noted - in the context of an inmate's Equal Protection claim - that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Thus, the burden of proof required for an inmate stating an Equal Protection claim is high, and was not met by Mr. Jasperson.

Finally, BOP was obligated by Congress to develop and implement a residential drug abuse treatment program for all eligible prisoners by the end of fiscal year 1997, under provisions of 18 U.S.C. § 3621(e)(1)( c). Particulars of this program are laid out in BOP Program Statement 5310.10, including BOP's statement that it considers community transitional drug treatment services available through halfway houses to be "a critical component of the transitional drug abuse program." It is for this reason that inmates involved in that critical component should be able to make full use of those services before release. Because the community transitional component is so important, and because placement in halfway houses for this purpose was governed by 18 U.S.C. § 3621(e) rather than § 3624©, there is a rational relationship to a legitimate governmental purpose and no equal protection violation has been stated.

**III. PLAINTIFF HAS NO DIRECT CAUSE OF ACTION UNDER 18 U.S.C.A. § 3621 AND THIS COURT HAS NO JURISDICTION TO GRANT THE RELIEF THAT PLAINTIFF SEEKS.**

This is not a habeas petition and the plaintiff did not sue under the Administrative Procedure Act. The discussion above has shown that plaintiff does not have a liberty interest in the place of confinement that is protected by the constitution. The only other possible source of federal question jurisdiction is from the statutes or regulations themselves. The Court should reject the statutes and regulations themselves as a basis for jurisdiction, because there is no language in the statutes and regulations themselves that creates a private right of action. Nor do these statutory and regulatory provisions provide the necessary waiver of sovereign immunity. *See Trudeau v. Federal Trade Commission*, 384 F.Supp. 2d 281 (D.C.D.C. 2005)(in order to sue a federal agency, plaintiff must identify a basis of jurisdiction and a waiver of sovereign immunity).

The statute at issue, 18 U.S.C.A. § 3621, deals with post-sentence administration of persons convicted of a federal crimes. It authorizes the Bureau of Prisons to take custody of persons sentenced following conviction of a federal crime. Subsection (b) provides that the Bureau of Prisons:

> shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability...that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

>>(B) recommending a type of penal or correctional faciltiy as appropriate; and
>
>(5) any pertinent policy statement issued by the Sentencing Commission...
>
>In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another....

This language does not create a direct cause of action for the plaintiff to contest his placement. Instead, it vests discretion for placements with the Bureau of Prisons. Under its regulations, the Bureau of Prisons has the discretion under § 3621 to designate federal inmates to half-way houses and has chosen to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed 6 months.

The Attorney General's December 2002 policy arguably impermissibly interpreted these sections in a manner that stripped the Bureau of Prisons of all discretion to place inmates in halfway houses prior to the last ten percent of their sentence, not to exceed 6 months. This policy shift generated many habeas actions by inmates, particularly inmates who at the time the policy was changed, were serving time in a halfway house and who were transferred to more confined quarters. However, in February 2005, following a period of time for public notice and comment, the Bureau of Prisons acknowledged that the Bureau of Prisons had discretion to place inmates in halfway houses prior to the date specified by § 3624(c), but asserted that it would categorically exercise that discretion to decline to place inmates in halfway houses before the last ten percent of their sentences, not to exceed six months. The Supreme Court upheld this type of categorical treatment of discretion in *Lopez v. Davis*, 531 U.S. 230, 243-244 (2001) when it upheld the Bureau of Prisons' categorical exclusion of inmates from early release if they had been convicted of non-violent crimes involving

firearms.

## CONCLUSION

The Court should deny the plaintiff's motion for a temporary restraining order and dismiss this action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted,

   /s/
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

   /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

   /s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-2332

Of counsel:

Alma G. Lopez
Assistant General Counsel
Litigation Branch
Office of General Counsel
Bureau of Prisons
202-305-4749