UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK D. JASPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1488 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HARLEY LAPPIN, | ) | |
| | ) | |
| Defendants. | ) | |

<u>DEFENDANTS' MOTION TO DISMISS, MOTION FOR RECONSDERATION,
AND OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION</u>

Comes now the Defendants, Federal Bureau of Prisons and Harley G. Lappin, Director,

Federal Bureau of Prisons, by and through undersigned counsel, and respectfully move, pursuant

to Fed. R. Civ. P. 12 (b)(1), (3), and (6), that the movant's complaint be dismissed for lack of

subject matter jurisdiction, improper venue, failure to state a claim under which relief can be

granted, and lack of standing. Defendant also moves, pursuant to Fed. R. Civ. P. 60, for

reconsideration of the Court's grant of the motion for a temporary restraining order on August

29, and opposes plaintiff's motion for a preliminary injunction.

1

Respectfully submitted,

KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

CHARLOTTE ABEL, DC Bar #388582
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK D. JASPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1488 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HARLEY LAPPIN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR RECONSIDERATION,
AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

This is an action brought by Mark D. Jasperson who was sentenced to an imprisonment

term of four months.  In the Judgment and Commitment Order, the sentencing judge made "a

strong recommendation" that the defendant serve his imprisonment term in a halfway house in

Florida.  The Federal Bureau of Prisons (BOP) did not honor the judicial recommendation in

light of a new regulation passed in 2005.  Instead, the BOP designated the defendant to be housed

at a Federal Prison Camp in Atlanta, Georgia.  The moving party seeks preliminary injunctive

relief and a temporary restraining order against the BOP to review the movant's designation

according to the procedures in place prior to the 2005 regulation and its earlier implementation.[1]

_____

[1]Mr. Jasperson may mistakenly believe that his movements will be unrestricted should he
be placed in a halfway house and that he will automatically be allowed to work outside the
halfway house.  While at a halfway house, Mr. Jasperson would still be serving a term of

The defendant is not yet in custody. The BOP regulation at stake precludes the designation of defendants to halfway houses for service of sentence and effectively incorporates the limitation set forth in 18 U.S.C. § 3624( c). The movant contends this court has jurisdiction to hear this case under § 1331, as this case involves a federal question. In essence, the Movant contends that he has a right to have his designation reviewed under 18 U.S.C. § 3621, and the enumerated factors thereon, which include the consideration of judicial recommendations when designating a defendant's place of confinement. The Movant contends that the BOP's regulation and interpretation of § 3621 violate his rights under the Due Process Clause and Equal Protection of the Law. The Movant also asserts this court has jurisdiction to hear this case as the policy which precludes his designation to a halfway house came to exist as a result of an opinion from the Office of Legal Counsel which was subsequently adopted by the Deputy Attorney General, and, by the BOP.

The Defendants respectfully submit this Court has no jurisdiction to hear this matter as the defendant is not yet in custody; his claim is one that falls within habeas corpus relief and is not yet ripe, his rights have not been violated, and he is not entitled to the extraordinary relief of

---

imprisonment. Thus, prison officials would thoroughly review his request to engage in his own business. In so doing, prison officials review these kinds of requests on a case by case basis and will look at a wide range of criteria when determining whether to approve such requests. For instance, prison officials will look, among other factors, at whether the crime committed has any relation to the business and whether halfway house staff can properly monitor the inmate's movement and whereabouts at all times. Restrictions will be imposed on working hours, places to be visited, and travel outside the state lines would be almost completely curtailed, if not altogether, during the period of confinement. Prison staff will conduct surprise visits to the place of employment to ensure where the inmate is and what the inmate is doing. Thus, even if Mr. Jasperson were placed in a halfway house, and allowed to work in his business, his actions would be sharply curtailed, his whereabouts would be monitored at all times, and his travel would be restricted.

a preliminary injunction.

For the reasons stated below, this action should be dismissed for failure to state a claim on which relief can be granted.

### Statutory and Regulatory Background

Federal law provides for the placement of federal prisoners in non-prison sites such as halfway houses shortly before the conclusion of their sentences to allow the prisoners an opportunity to adjust to the community prior to their release. This "pre-release custody" is governed by 18 U.S.C. § 3624(c), which provides to the extent practicable that such placement will take place during the last ten percent of a prisoner's sentence, not to exceed six months:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c)(emphasis added). BOP had followed a practice of designating certain offenders to halfway houses with short sentences when the sentencing court made such a judicial recommendation in the Judgment and Commitment Order and the inmate's custody classification allowed for such placement.

In 2002, the BOP abandoned this practice initially as a result of an opinion issued by the Office of Legal Counsel. Subsequently, this change in practice was published as a proposed rule for notice and comment. See 71 F.R. 47696. The proposed rule was adopted. See 28 C.F.R. § 570.21.

Accordingly, pursuant to the Department of Justice's interpretation of § 3624(c), the Bureau of Prisons does not transfer inmates to pre-release community confinement for any longer

than a reasonable portion of the last ten percent of the inmates' sentences. Thus, inmates are no longer serving sentences in halfway houses.

### This Court does not have jurisdiction over the Movant's Claims as there is no Federal Question nor is any right of the Movant implicated in this case

The Movant initially brought a habeas corpus petition in the Middle District of Florida, the sentencing court, challenging his designation to a prison camp in Atlanta, Georgia. The Court dismissed the habeas corpus petition instructing the Movant to refile his petition once he came into the custody of the BOP. See Order. The Movant has conveniently changed his posture in this case, has filed an action in D.C., and now instead seeks injunctive and declaratory relief arguing that the regulation leading to his placement in prison was promulgated in D.C. Because habeas is an available remedy, Movant's request for injunctive and declaratory relief cannot allow him to evade the Habeas statute.

The Movant has filed this lawsuit to challenge the manner in which he must serve his sentence, however, such challenges must be brought as habeas corpus actions under 28 U.S.C. § 2241. See United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991); see also Lake v. Cameron, 364 F.2d 657, 659 (D.C. Cir. 1966) (prisoner's attack on the execution of his sentence, challenging his place of confinement, was "properly cognizable" in a 28 U.S.C. § 2241(a) habeas petition). Here, Mr. Jasperson, according to his own characterization of his case, is challenging the place of confinement, specifically the BOP's determination to house him in a prison camp as opposed to a halfway house. It follows that this is a case that Movant may bring under the habeas corpus statute, 28 U.S.C. § 2241.

Courts confronted with questions similar to those raised by this Movant have found

6

habeas to be the proper legal mechanism to seek relief. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241-244 (3ʳᵈ Cir. 2005)(". . . we are persuaded by the reasons of the courts holding that what is at issue here is the "execution" of [defendant's] sentence" as [t]he criteria for determining CCC placement are instrumental in determining how a sentence will be "executed.");_ Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006)(". . .execution of a sentence includes matters such as ' the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.")  In United States v. Jalili, 925 F.2d 889, 891, 893 (6th Cir. 1991), the Sixth Circuit held that a challenge to a BOP decision to transfer a prisoner from a community treatment center to "a more secure facility" is "properly cognizable in a 28 U.S.C. § 2241(a) habeas petition."

It is for this reason that Mr. Jasperson may not proceed on the jurisdictional bases set forth in this Complaint. The D.C. Circuit has made it clear, in an en banc decision, that when "habeas is an available and potentially efficacious remedy, it is clear beyond reasonable dispute that mandamus will not appropriately lie." Chatman-Bey v. Thornburgh, 864 F.2d 804, 806 (D.C. Cir. 1988) (en banc). In addition:

> Congress' provision of an express remedy [habeas pursuant to 28 U.S.C. § 2241] for unlawful detentions means, as [Preiser v. Rodriguez, 411 U.S. 475 (1973)] teaches, that habeas is the remedy intended by the Article I branch to be employed. This is all of a piece with the well-settled principle that a specific statute displaces (or, as is frequently said) preempts more general remedies. See Brown v. General Services Administration, 425 U.S. 820, 834-35 (1976) (and cases cited therein).

Chatman-Bey, 864 F.2d at 809. Because Mr. Jasperson's "complaint falls comfortably within the broad confines of habeas corpus," he cannot evade the requirements of the habeas statutes, id. at

7

806 n.2, nor should he be allowed to circumvent the instructions given to him by the Middle

District Court of Florida.  "Congress intended the more specific federal habeas statute,

'explicitly and historically designed to provide the means for a state prisoner to attack the validity

of his confinement,' [Preiser,] 411 U.S. at 489, to be utilized as opposed to the more generic civil

rights remedy embodied in § 1983 [which authorizes injunctive relief to enforce constitutional

rights]." Chatman-Bey, 864 F.2d at 808-09. Movant's attempt to rely on the general federal

jurisdiction statute should be rejected because the more specific habeas remedy is available.

Thus, while a panel of the D.C. Circuit held in an earlier decision in the Chatman-Bey litigation

that § 1331 provided an independent basis for jurisdiction, see Chatman-Bey v. Meese, 797 F.2d

987, 990 (D.C.Cir. 1986); the D.C. Circuit subsequently held, in its en banc decision, that the

prisoner was required to proceed under the habeas statute, and expressly rejected the panel's

earlier decision. See Chatman-Bey, 864 F.2d at 806, ("Chatman-Bey's complaint sounds in

habeas corpus and must be maintained as such") and at 810  n.5 , (rejecting analysis in earlier

opinion). Likewise, a prisoner's attempt to invoke § 1331 does not allow him to evade the

requirements of the habeas statute. See Williams v. Hill, 74 F.3d 1339, 1349 (D.C. Cir. 1996)

(prisoner seeking relief from term of incarceration may not bring action for declaratory/injunctive

relief); Rasul v. Bush, 215 F. Supp. 2d 55, 62 (D.D.C. 2002) (notwithstanding reference to §

1331 and other statutes, habeas provided "the exclusive means for securing the relief Petitioners

seek"); Doughty v. United States Board of Parole, 782 F. Supp. 653, 655 (D.D.C. 1992) (noting

that habeas preempts claims for declaratory and injunctive relief); Matthews v. Meese, 644 F.

Supp. 380, 380-81 (D.D.C. 1986)(same).

　　　This analysis was applied to another halfway house challenge lodged in this Court.  In

<u>Combs v. Attorney General of the United States, et al.</u>, Civ. A. No. 03-0622 (RBW) (April 17, 2003 Amended Memorandum Opinion, attached), the Honorable Reggie B. Walton, District Judge, stated:

> While the plaintiff has chosen not to assert a habeas claim in his lawsuit filed in this Court, he concedes in his opposition to the defendants' motion that he could have proceeded under 28 U.S.C. § 2241. . . . And this Court finds that § 2241 is the appropriate mechanism for the plaintiff to challenge the BOP's new policy memorandum, especially since the plaintiff has chosen not to seek relief pursuant to 28 U.S.C. § 2255. . . . Concluding that the plaintiff's claims are most appropriately brought under § 2241, "the law in this circuit is clear that '[a] district court may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian of the prisoner.'" Id. at 810 (citing <u>Guerra v. Meese</u>, 786 F.2d 414, 415 (D.C. Cir. 1986)). Here, the plaintiff has named the Attorney General of the United States and the Director of the BOP as the defendants. However, it is clear that neither the Attorney General, nor the Director of the BOP are the custodians of the plaintiff under § 2241. See <u>McCall v. Swain</u>, 510 F.2d 167, 175 n.16 (D.C. Cir. 1974) (while persons convicted of offenses against the United States are committed to the custody of the Attorney General, the warden of the penitentiary in which the prisoner is confined, rather than an official in the District of Columbia, is the proper person to be served in habeas corpus proceedings); <u>Connally v. Reno</u>, 896 F. Supp. 32, 35 (D.D.C. 1995) (dismissing habeas corpus action brought against the Attorney General and the Director of the BOP). Because the named defendants are not the plaintiff's custodians under § 2241, this Court is compelled to conclude that this jurisdiction is not the appropriate forum to bring the plaintiff's challenge to BOP's new policy.

The Movant in this case is not yet in custody. Thus, he is not able to file a habeas corpus petition challenging the conditions of his confinement as he does not yet have standing. However, he has attempted to access judicial review by raising a challenge to the BOP national policy in the District of Columbia. The D.C. Circuit court in <u>Starnes v. McGuire</u>, 512 F.2d 918, 929 (D.C. Cir. 1974), explained that

> the existence of a national policy issue that may involve testimony by the policymakers is a factor to be considered by the district judge in determining whether transfer is appropriate under Section 1404(a). Where, however, there are present in the case other circumstances that make this an inconvenient forum, the advantages of litigating a

9

national policy issue in the forum where that policy has been developed must be weighed against the factors suggesting transfer and, if the factors suggesting transfer outweigh the value of litigating the policy issue here and the preference given the plaintiff's choice of forum, then the case should be transferred.

District Courts have limited jurisdiction. Admittedly, the BOP policy regarding halfway house placement was drafted in the District of Columbia as most of BOP's national policy statements are. To follow the Movant's reasoning would suggest that any individual who has a challenge to BOP national policy could raise it in a civil action filed in D.C. This would clearly hamper the interests of justice and speedy resolution of cases as there are almost two hundred thousand inmates in federal custody at this time and many inmates tend to be litigious. In Dominguez v. Bureau of Prisons, 2006 WL 1445041 (D.D.C., 2006), the Petitioner was challenging the constitutionality of the Inmate Financial Responsibility Program and the policy statements issued on the subject. The Court ultimately transferred the case to the jurisdiction where the Plaintiff was housed and where the events giving rise to the complaint took place. In so doing, the Dominguez court explained,

> And although this case involves a matter of BOP national policy, that factor is not determinative. Huskey v. Quinlan, 785 F.Supp. 4, 7 (D.D.C.1992). '[T]he advantages of litigating a national policy issue in the forum where that policy has been developed must be weighed against the factors suggesting' a transfer of venue. Starnes, 512 F.2d at 929. '[T]here is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia.' Id. at 925 n. 7.

2006 WL 1445041, 4 (D.D.C.,2006).

In this case, the Movant is not yet incarcerated. Thus, this Court should dismiss the petition without prejudice. The Movant could then refile his case as a habeas corpus petition in the district of incarceration as it was previously suggested by the District Court for the Middle

10

District of Florida.

## Plaintiff's petition for a writ of mandamus must fail

Issuance of a writ of mandamus in an extraordinary remedy, to be used only under exceptional circumstances and where essential to justice. See Hanek v. Secretary of HEW, 535 F.2d 1291, 1296 (D.C. Cir. 1976); In Re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988)(citing Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974)(en banc)).  While a federal district court has authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, its issuance is not required; rather, mandamus is issued at the discretion of the Court.  National Wildlife Federation v. United States, 626 F.2d 917, 923 (D.C. Cir. 1980).

Mandamus generally will not issue unless there is a clear right to the relief sought, a plainly defined and nondiscretionary duty on the part of the defendant to honor that right, and no other adequate remedy, either judicial or administrative, available.  Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir. 1984); accord In Re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986); Homewood Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242, 1251 (7th Cir. 1985); Jones v. Alexander, 609 F.2d 778 (5th Cir. 1980); Billiteri v. U.S. Board of Parole, 541 F.2d 938 (2nd Cir. 1976).

The requirement of a clear duty to act has been interpreted to mean that the duty of the federal officer sued must be "ministerial, plainly defined and peremptory."  Jeno's Inc. v. Commissioner of Patents and Trademarks, 498 F.Supp. 472, 476 (D.Minn. 1980).  The act sought to be compelled must be "a clear nondiscretionary duty."  Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988).  Accord, Nova Stylings, Inc. v. Ladd, 695 F.2d 1179 (9th Cir. 1983); Welch v. Donovan, 551 F.Supp. 809 (D.D.C. 1982).  "It is well settled that a writ of mandamus

11

is not available to compel discretionary acts." <u>Cox v. Secretary of Labor</u>, 739 F.Supp. 28, 30 (D.D.C. 1990)(citations omitted).

Congress intended to grant to prison authorities unfettered discretion to decide where to place inmates. See <u>Goldings v. Winn</u>, 383 F.3d 17, 32 (1st Cir. 2004)(Howard, Circuit Judge, concurring). Although 18 U.S.C. § 3621(b) contains a list of facts to be considered when prison officials decide where to place inmates, the Bureau of Prisons has properly followed rule-making procedures to promulgate rules governing the placement of prisoners. 28 C.F.R. §§ 570.20 and 570.21. These rules sanction the "categorical exercise of discretion" whereby inmates are not placed in halfway houses immediately upon sentencing, but only during the last portion of their sentence to prepare for "re-entry into the community." 28 C.F.R. § 570.20(a). For this reason, were the Court inclined to issue a writ of mandamus directing the Bureau of Prisons to consider the four factors found in 18 U.S.C. § 3621(b) in relation to Mr. Jasperson, the outcome would be the same.[2]

## Application of BOP's New Interpretation of 18 U.S.C. § 3624(c) to Movant Does Not Violate Due Process.

### A. Movant Has No Right to Serve His Prison Sentence In a Particular Institution or Program.

The Movant asserts that this Court has jurisdiction over this matter, as the application of the new regulation to him violates his rights of due process and this constitutes a federal question for this Court to entertain.

There are no due process concerns with applying the new BOP interpretation to

---

[2]Plaintiff maintained at oral argument on August 25 that he is not requesting placement in a halfway house, he merely wishes the Court to direct the Bureau of Prisons to reconsider the four factors found in § 3621 in relation to himself.

Mr. Jasperson. For prisoners, liberty interests protected by due process are "interests generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). It is well-established that a prisoner does not possess a protected liberty interest in serving his term of imprisonment in a particular institution or program, whether it be a custody facility or a CCC. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (concluding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system;" noting "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); Montanye v Haymes, 427 U.S. 236, 242 (1976) (same); cf. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (noting that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State").

It is well established that federal prisoners do not have a protected liberty interest in halfway house placement, and that BOP has complete and absolute discretion in determining halfway house placement. See, e.g., Pugliese v. Nelson, 617 F.2d 916, 923–25 (2d Cir. 1980); United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991); United States v. Jalili, 925 F.2d 889 (6th Cir. 1991). Courts have long recognized that the authority to incarcerate, classify, and transfer federal prisoners falls within the broad discretion of the BOP, and indeed a Court lacks the authority to order that a prisoner be confined in any particular institution. "[T]hose decisions are within the sole discretion of the Bureau of Prisons." United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995); see also United States v. Restropo, 999 F.2d 640, 645 (2d Cir. 1993) ("The

13

Bureau is given a great deal of flexibility with the respect to the assignment of any prisoner to a correctional facility."); Leibowitz v. United States, 729 F. Supp. 556, 561 (E.D. Mich 1989) ("The Bureau of Prisons enjoys almost absolute discretion over assignment, transfer, and conditions of confinement."), aff'd, 914 F.2d 256 (6th Cir. 1990). This discretion is so far reaching that such decisions are not reviewable under the APA. See 18 U.S.C. § 3625.

The D.C. Circuit has held that in view of the BOP's discretion in making prisoner assignment and transfer decisions, there is no "constitutionally protected interest in halfway house placement." Ostrer v. BOP, No. 89-5028, 1989 WL 128033, at * 1 (D.C. Cir. Sept. 6, 1989) (per curiam summary affirmance). The fact that Movant's unilateral expectation that he would serve his four month sentence at a halfway house may be frustrated is of no constitutional significance, because such an expectation cannot give rise to a protected liberty interest. See Smith v. United States, 277 F.Supp.2d 100, 110 (D.D.C., Aug. 19, 2003) (". . . CCC placement is not 'implicit in the concept of ordered liberty' and the petitioner therefore has no substantive due-process claim to it. Thus, any interest that the petitioner can claim in a CCC surely cannot rise to so high a level as to qualify as a fundamental right."); United States v. Andrews, 240 F. Supp. 2d 636, 638-39 (E.D. Mich. 2003) (upholding BOP's new policy against challenge based on due process clause). It necessarily follows that even if Movant is correct and the BOP's former policy must be applied to him, the BOP still has the authority and discretion to transfer him to a prison facility. For this reason alone, even if Movant is correct, he still has failed to state a claim upon which relief may be granted.

**B. There is No "Fundamental" Right at Stake Herein Warranting Substantive Due Process Protection.**

Substantive due process rights attach only when a "fundamental" right is involved, thus ensuring that the government does not unjustifiably infringe on that right. Hutchins v. District of Columbia, 188 F.3d 531, 535 (D.C.Cir.1999). Not all rights are fundamental. Only those rights that are "implicit in the concept of ordered liberty" are considered to be fundamental. Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937); San Antonio Independent School District v. Rodriguez, 411 U.S.1(1973) (education not a fundamental right); Dandridge v. Williams, 397 U.S. 471 (1970) (receipt of public welfare not fundamental right). In Smith v. United States, 277 F.Supp.2d 100 at 110 (D.C. D. 2003), any right to placement in a halfway house was found not sufficiently "fundamental" for substantive due process purposes:

> The petitioner cannot make out a substantive due-process claim under the Fifth Amendment because substantive due process only attaches when a fundamental right is at stake. Hutchins, 188 F.3d at 535; Beo, 44 F.3d at 1028 (quoting Rochin v. California, 342 U.S.165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and Planned Parenthood v. Casey, 505 U.S.833, 846-48, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The D.C. Circuit, echoing the Supreme Court, has recognized that " 'the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended,' " and so " 'has always been reluctant to expand the concept of substantive due process.' " Beo, 44 F.3d at 1028 (quoting Albright v. Oliver, 510 U.S. 266, 271-72, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992))). As a result, substantive due- process protections " 'have for the most part been accorded to matters relating to marriage, family, procreation and the right to body integrity.' " Id. Put another way, CCC placement is not "implicit in the concept of ordered liberty" and the petitioner therefore has no substantive due-process claim to it. Palko, 302 U.S. at 325, 58 S.Ct. 149. Thus, any interest that the petitioner can claim in a CCC surely cannot rise to so high a level as to qualify as a fundamental right. Id.; Beo, 44 F.3d at 1028.

The Movant asserts that his due process rights are violated because the new regulation contravenes 18 U.S.C. § 3621(b). The Movant asserts he has a right to have his designation

15

made in accordance with the BOP's prior practice.  He relies on three decisions by the Third, the

Eighth and the Second Circuits which ruled against the BOP on this issue.  See Elwood v. Jeter,

386 F.3d 842 (8th Cir. 2004); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir. 2005);

Levine v. Apker, 455 F.3d 71 (2d Cir. 2006).  However, those decisions came from split courts.

The dissenting opinions found that the BOP's decisions regarding halfway house placement were

appropriate under the statutory construction adopted by the agency.  See Levine, supra, at 87-91

(Judge Raggi concludes that the new regulation is a ". . . permissible categorical rejection of

CCCs as appropriate and suitable facilities for 3621(b) designations generally, with a limited

exception only for those circumstances where Congress has identified statutory considerations

pursuant to 18 U.S.C. §§ 3621(e)(2)A), 3624 ( c), or 4046( c), in addition to those catalogued in

§ 3621(b)."); Elwood, supra, at 848 (Judge Riley found that "By reading the two sections

together to permit the BOP to begin to transition inmates at any time during their imprisonment,

the majority eviscerates both the specific limitations set forth in section 3624( c) and Congress's

express intention to limit the amount of time permitted for CCC placement at the conclusion of

an inmate's term."); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005)(Judge

Fuentes concludes that " . . . the BOP may categorically preclude the consideration of any inmate

for CCC [placement] without reference to the §3621(b) factors, under the Supreme Court's

holding in Lopez.").

## C. Movant Had "Fair Notice" of the Law.

In Ashkenazi v. Attorney General of United States,  246 F. Supp 2d 1 at 6 (vacated due to

mootness by the D.C. Circuit), a "Front End" halfway house direct commitment case, the Court

considered whether the defendant and the sentencing court had fair notice of the change in policy

announced by the BOP in December, 2002. The court said if there is a protected interest at stake, it is "the right of fair warning" as discussed in Davis v. Moore, 772 A.2d 204, 217-218 (D.C. 2001) (en banc) (quoting Bouie v. City of Columbia, 378 U.S. 347, 352 (1964).[3] Davis teaches that in evaluating notice, it is highly relevant to consider what the plaintiff's lawyer would have found had he not merely relied on his understanding of the BOP's former policy, but instead "examine[d] the state of the law and advise[d] [plaintiff] as to whether" the BOP's former policy was consistent with 18 U.S.C. § 3624(c). See Davis, 772 A.2d at 218. On the ultimate merits of that question, reasonable lawyers could have differed, as in actuality they did; but a competent lawyer would have warned [plaintiff] that the issue was controverted and unresolved .... [Plaintiff] would have been warned, in other words, that despite ... the issuance of implementing regulations by the [BOP], and the seemingly uniform views of officials. . ., [the BOP's policy] might turn out to [require change] after all. See Davis, 772 A.2d at 218.

Movant's frustrated expectations do not amount to a due process violation. To the extent that the agency's prior policy was a mistake, the mistake, while "regrettable," did not make application of the new policy unforeseeable, because "the general rule is otherwise." Id. Relying on numerous cases, including six Supreme Court decisions, the Court explained that an official mistake does not give rise to a liberty interest except in extreme circumstances:

> An expectation ... that is induced not by a valid statute or regulation but by the mistaken representations of officials does not without more give rise to a liberty

---

[3]Judge Kessler noted that, " with no disrespect to the D.C. Court of Appeals," Davis was not binding on the Court and "there is no similar controlling precedent in this Circuit governing this case." Id. at 6. Davis is discussed herein in reference to Movant's "fair notice" argument.

interest entitled to protection under the Due Process Clause. . . . "Only in rare circumstances have courts allowed the misconstructions of officials to estop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations." . . . Thus, it is a well established rule that a prisoner has no constitutional right to object to the correction of a miscalculation of his sentence.... Rather, "[t]he public have rights in such matters which it is beyond the power of the public officer to barter away," . . . . The offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention, . . . public safety, . . . and punishing criminals, . . . .

Davis, 772 A.2d at 219-20 (citations omitted) (emphasis added). Davis also drew a parallel to

Bozza v. United States, 330 U.S. 160, 166-67 (1947), where the Supreme Court observed in an

analogous context that "[t]he Constitution does not require that sentencing should be a game in

which a wrong move by the judge means immunity for the prisoner." Davis, 772 A.2d at 219

n.9. This case does not present the sort of extreme circumstances of unfairness warranting due

process protection. See Davis, 772 A.2d at 220. As explained above, this movant was on notice

that he might not be assigned to a halfway house for service of his sentence. The new regulation

was published in January 10, 2005 and became effective on February 14, 2005. Plaintiff pleaded

guilty and was sentenced after that date. This is a case involving no more than "frustrated

expectations" that do not amount to a due process violation. See id. at 219.

## D. Movant's Expectation of Serving his Sentence at a Halfway House Does Not Give Rise to a Protected Liberty Interest.

Movant claims that BOP has unfairly altered its interpretation of § 3624(c) in violation of

the Due Process Clause and should grant him the full four months at a halfway house. In

Movant's case, the Court sentenced him to a term of imprisonment, and his own subjective

expectation that, based upon prior BOP practice, he would be housed in a halfway house, does

not entitle him to due process relief.

18

In <u>United States v. Addonizio,</u> 442 U.S. 178 (1979), the Court held that a similar

expectation provided no basis for collateral relief. In <u>Addonizio,</u> the district court sentenced the

defendant to a 10-year term of imprisonment and expected that the defendant would be released

on parole after serving approximately one-third of this term, based on "generally-held notions" of

the operation of the parole system at the time of defendant's "old-law" sentence. <u>Id.</u> at 181, n.3.

However, the district court's expectations were subsequently frustrated by a post-sentencing

change in Parole Commission policy under which the gravity of the offense became a more

significant factor in the parole release decision. <u>Id.</u> at 182. The defendant filed a motion for

re-sentencing under Section 2255, which the district court granted, noting that the court's

"'sentencing expectation' was frustrated by the Parole Commission's subsequent adoption of new

standards and procedures." <u>Id.</u> at 183. The Supreme Court, however, rejected the defendant's

argument that a post-sentencing change in the policies of the U.S. Parole Commission authorized

a district court to vacate a defendant's sentence, pursuant to Section 2255, in order to effectuate

the judge's subjective intent at the time of sentencing. <u>Id.</u> at 187. Moreover, the Court rejected

the argument that the defendant's sentence was based on "misinformation of constitutional

magnitude." <u>Id.</u> Rather, the Supreme Court distinguished between a court's incorrect

assumptions about subsequent parole policy, which did not provide a basis for collateral relief,

from a court's incorrect assumptions about a defendant's criminal record at the time of

sentencing, which could provide a basis for collateral relief. <u>Id.</u> (citing <u>United States v. Tucker,</u>

404 U.S. 443 (1972)). Like the retroactive policy change in <u>Addonizio,</u> BOP's placement of

Movant in a prison setting, pursuant to correction of its interpretation of the statute, does not

constitute a due process violation that would authorize this Court to grant other collateral relief.

19

See Addonizio, 442 U.S. at 190; see also United States v. Jalili, 925 F.2d 889, 892-93 (6th Cir. 1991).

### Application of BOP's New Interpretation of 18 U.S.C. § 3624(c) to Movant Does Not Violate the Equal Protection Clause.

Movant argues that the BOP is treating him differently than other similarly situated inmates by not placing him in a halfway house, while others in the residential drug abuse treatment program are still allowed up to six months. As a result, he claims his equal protection rights have been violated. The Equal Protection Clause requires similarly situated persons to be treated in a substantially equivalent manner. See F.S. Royster Guano Co. v. Virginia, 253 U.S. 412 (1920)("all persons similarly circumstanced shall be treated alike."). "Under the equal protection component of the Fifth Amendment's Due Process clause, a legislative classification need only bear a rational relationship to a legitimate government purpose as long as no suspect or quasi-suspect class is involved." Bennett v. District of Columbia Department of Corrections, et al., 1995 WL 601049 (D. D.C.) citing City of Cleburn v. Cleburn Living Center, 473 U.S. 432 (1985) (the Fifth Amendment imposes the same equal protection requirements on the federal government and the District of Columbia as the Fourteenth Amendment's Equal Protection Clause Imposes on the states).

Unless the Movant is a member of a suspect class, the government action in question must generally bear a rational relationship to a legitimate government purpose. Courts have held that neither federal inmates nor violent offenders classify as suspect classes. Hutchins v. District of Columbia; 188 F.3d 531, 563 (D. D.C. 1999) ("Neither prisoners nor indigents constitute a suspect class."); Bennett, 1995 WL 601049 (D. D.C.) ( "Violent offenders do not constitute a

suspect classification."). Thus, the Movant must prove that BOP's decision to permit residential

drug treatment offenders to spend a longer period of time, up to six months, in community drug

treatment programs prior to their release, than inmates who are not in such programs, is not

rationally related to any legitimate governmental purpose. The burden to prove disparate

treatment is on the movant in these matters. James-Bey v. Freeman, 638 F.Supp. 758, 763 (D.

D.C. 1986) (In the context of plaintiff's transfer to another facility after participating in a strike,

the court held that he failed to present facts that proved he was being arbitrarily or irrationally

treated by prison officials). In this action, Movant alleges no facts and cannot seriously be heard

to support a claim that sometimes placing inmates in community drug treatment programs for up

to six months prior to their release is arbitrary, unreasonable or irrational.

Deference is given to the BOP in such situations. The Supreme Court noted - in the

context of an inmate's Equal Protection claim - that "[p]rison administrators ... should be

accorded wide-ranging deference in the adoption and execution of policies and practices that in

their judgment are needed to preserve internal order and discipline and to maintain institutional

security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Thus, the burden of proof

required for an inmate stating an Equal Protection claim is high, and was not met by movant.

Finally, BOP was obligated by Congress to develop and implement a residential drug

abuse treatment program for all eligible prisoners by the end of fiscal year 1997, under provisions

of 18 U.S.C. § 3621(e)(1)( c). Particulars of this program are laid out in BOP Program

Statement 5310.10, including BOP's statement that it considers community transitional drug

treatment services available through halfway houses to be "a critical component of the

transitional drug abuse program." It is for this reason that inmates involved in that critical

21

component should be able to make full use of those services before release. Because the community transitional component is so important, and because placement in halfway houses for this purpose was governed by 18 U.S.C. § 3621(e) rather than § 3624(c), there is a rational relationship to a legitimate governmental purpose and no equal protection violation has been stated.

### Movant Has Failed to Satisfy His Heavy Burden for Obtaining a Temporary Restraining Order or Preliminary Injunction.

Because the complaint should be dismissed for lack of jurisdiction or readily denied on its merits, Defendants submit that it is unnecessary for the Court to consider whether to issue a temporary restraining order or preliminary injunction. If, however, the Court chooses to consider Mr. Jasperson's motion for a temporary restraining order or preliminary injunction while considering the merits of the complaint, neither extraordinary remedy is appropriate.

A preliminary injunction is an "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). To obtain a preliminary injunction, Movant must show (1) a substantial likelihood of success on the merits, (2) he would suffer irreparable injury if the injunction is not granted, (3) an injunction would not substantially injure other interested parties, and (4) the public interest would be furthered by the injunction. Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C. Cir. 2001); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (citation omitted). Further, the PLRA, at 18 U.S.C §3626(a)(1), puts substantial limits on injunctive relief. Applying all these standards, Movant is not entitled to preliminary injunctive relief.

22

**A. Movant is Not Likely to Succeed on the Merits.**

For reasons stated herein, it is not likely that Movant will succeed on the merits in this litigation. This Court has no subject matter or in personam jurisdiction to consider Movant's challenge to BOP's change in the interpretation of 18 U.S.C. § 3624( c), Movant's arguments are without merit, and thus the BOP has the discretion to place Movant in a prison setting for service of his sentence.

**B. Movant's Alleged Injury is Legally Insufficient to Require Issuance of Preliminary Injunctive Relief.**

The dispute in this case is whether Mr. Jasperson will serve his sentence at a halfway house in Florida so that he can continue tending to his business. Obviously, nobody wants to spend time serving a federal term of imprisonment away from their family and business, especially when there are problems, but the criminal conviction and imposition of a prison term upon him means the Movant is subject to being placed wherever, in its discretion, the Federal Bureau of Prisons designates the sentence to be served. This is a consequence of plaintiff having violated the law resulting in his conviction. He has no protected liberty interest or expectation to remain within or be transferred to any particular form of housing assignment, as set out in detail above. Therefore, Movant will not suffer irreparable legal injury absent preliminary injunctive relief.

**C. Granting Movant Preliminary Injunctive Relief Would Substantially Injure BOP Officials in the Lawful Administration of the Federal Prison System, and Adversely Impact the Public Interest.**

The change in interpretation of 18 U.S.C. § 3624 (c) directly relates to the administration of the federal prison system and how much time, in what kind of housing, and under what level

of security a federal prisoner will serve their court-imposed punishment. The correction of implementing policy serves important public interests in achieving effective punishment and deterrence for criminal activity. Further, the magnitude of punishment and size of achieved deterrence vary significantly as a result of the amount of time a prisoner spends in halfway house placement as opposed to traditional custodial confinement. Take, for instance, an inmate sentenced to a twelve-month term of incarceration. Under the old BOP interpretation of § 3624(c), that inmate could serve as much as half of the sentence outside of prison walls in a halfway house. Under the new policy, which correctly applies § 3624(c), the inmate could serve only thirty-six days of the year in a halfway house. Clearly, 329 days of incarceration has a far greater deterrence and punishment effect than six months of incarceration. See, e.g., H.R. Rep. No. 101-681(I) at 338 (dissenting to proposed expansion of BOP authority to place offenders in community facilities and commenting that "[t]he American public wants dangerous felons in jail, not in therapy programs or home detention").

BOP's application of that former policy, upon which Movant claims he relied, was a mistake. As the en banc D.C. Court of Appeals has held, relying on Supreme Court precedent, the public interest is ordinarily paramount in sentence mistake cases: The offender's expectation and reliance interests in sentence mistake cases are ordinarily trumped by the strong public interest in crime prevention, see United States v. Salerno, 481 U.S. 739, 750 (1987), public safety, see Pell v. Procunier, 417 U.S. 817, 822-23 (1974), and punishing criminals, see Bearden v. Georgia, 461 U.S. 660, 669 (1983). Davis v. Moore, 772 A.2d 204, 220 (D.C. 2001) (en banc). The public interest will be served by denying the motion for preliminary injunctive relief.

24

**D. No Injunctive Relief May Be Awarded Without Meeting the Specific Preliminary Injunctive Relief Requirements of the PLRA at 18 U.S.C. §3626(a)(2), Which Movant Cannot Do.**

The statute governing prospective relief in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C §3626(a)(2), puts substantial limits on preliminary injunctive relief. Specifically, the act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in <u>Porter v. Nussle</u>, 534 U.S. 516, 525 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any preliminary injunctive relief unless narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and is the least intrusive means necessary to correct that harm." Further, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." The court must make <u>particularized findings</u> with respect to the requirements of the act, and must be more than mimicking the language of the statute, as discussed in <u>Cason v. Seckinger</u>, 231 F.3d 777 (11th Cir. 2000); <u>see also</u>, <u>Johnson v. Breeden</u>, 280 F.3d 1308 (11th Cir. 2002).

The legislative history regarding these restrictions was set out in <u>Thompson v. Gomez</u>, 993 F.Supp. 749, 754-5 (N.D.Cal.1997), <u>rev'd on other grounds</u> in <u>Gilmore v. People of the State of California</u>, 220 F.3d 987, 1005 (9th Cir. 2002):

The legislative reports on the bill reflect these Congressional intentions:

> 'By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits

> remedies to those necessary to remedy the proven violation of
> federal rights. The dictates of the provision are not a departure
> from current jurisprudence concerning injunctive relief [which
> provides that] ... injunctive relief must be no broader than
> necessary to remedy the constitutional violation.' H.R.Rep. No. 21,
> 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations
> omitted).'

See also, Hadix v. Johnson, 182 F.3d 400 (6th Cir. 1999) (Michigan prison system access-to-

courts litigation); and Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) (disabled inmates sought

injunctive relief, using ADA/Rehabilitation Act as federal right).

There is no jurisdiction to proceed with this litigation, and defendant has shown that

Movant's other arguments should be rejected, so there is no likelihood of success in this

litigation. There is insufficient legal harm alleged, and granting preliminary prospective relief

would have an adverse impact upon public safety and the operation of the federal criminal justice

system.

## CONCLUSION

For all the reasons explained above, defendant's motion for reconsideration of the grant

of a temporary restraining order should be granted, plaintiff's motion preliminary injunction

should be denied, and this case should be dismissed.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

_____

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____

CHARLOTTE ABEL, DC Bar #388582
Assistant United States Attorney