**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**MARK D. JASPERSON**

        **Plaintiff,**

        **v.**

**FEDERAL BUREAU OF PRISONS,
et, al.,**

        **Defendants.**

**Case No. 1:06CV01488 (HHK)**

**OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS AND REPLY TO
OPPOSITION TO PRELIMINARY INJUNCTION**

      Plaintiff Mark D. Jasperson, by and through counsel, in opposition to <u>defendant's</u>

Motion to Dismiss and for Reconsideration and Opposition to Motion for Preliminary

Injunction, pursuant to Federal Rule of Civil Procedure 65, requiring the defendants to

consider his placement in a halfway house on or about August 31, 2006, in compliance

with 18 USC §3621, without reliance on the Bureau of Prisons' new rule regarding such

transfers, relies on the points and authorities set forth in his Opposition and the entire

record herein.

**PROCEDURAL BACKGROUND**

      Plaintiff filed the underlying complaint on Wednesday, August 23, 2006,

predicating jurisdiction primarily on 28 USC § 1331, because the relief sought required

the interpretation and application of a statute of the United States, 18 USC § 3621(b), and

regulations pursuant thereto, 28 CFR § 570.20 and 570.21.  On Friday, August 25, 2006,

the court heard oral arguments on plaintiff's Motion for Temporary Restraining Order

and instructed the parties to brief the issue of jurisdiction on or before Monday, August 28, 2006. Both parties were given the opportunity to fully brief the court regarding the issue of jurisdiction. After full and due consideration, this honorable court granted a Temporary Restraining Order. In so doing, the court has clearly indicated its jurisdiction over the parties and the subject matter of this Complaint.

The Plaintiff wishes to be considered by the BOP for designation in accordance with the "**strong recommendation"** of the sentencing court to serve his four month sentence at a Community Sanctions Center irrespective of the invalid and illegal regulations promulgated by the BOP as found in 28 CFR § 570.20 and 570.21. As noted in the Sentencing Minutes, the sentencing judge entered his recommendation specifically to allow the Plaintiff "to operate his business" by participating in a Community Corrections Center work-release program. This judicial recommendation was made to avoid unnecessary harm to hundreds of innocent families who rely upon the Plaintiff's day-to-day management of the business to assure that they will continue to receive salaries and health insurance from his business.

The sentencing court and the Probation Officer, who recommended sentencing the Plaintiff to the Community Corrections Center, were unaware that the BOP had changed its thirty five year old policy of allowing direct placement of prisoners into Community Corrections Centers and following judicial recommendations regarding such placements. It should be noted that the BOP has now rescinded the new 2005 regulations and allow direct placement into Community Corrections Centers for defendants sentenced in the Second, Third and Eight Circuits since those Circuits have ruled the new regulations illegal and invalid. The newly developed 2005 BOP policy and regulation precluding

consideration of such judicial recommendations are invalid as they are directly contrary to 18 USC § 3621(b). Parenthetically, it should be noted that no Circuit has ruled to the contrary and an overwhelming number of district courts in other Circuits have agreed that the BOP regulations are invalid.

Plaintiff has filed suit contending that the regulation misconstrues the discretion granted to the BOP by § 3621(b). Plaintiff seeks a declaratory judgment and injunctive relief finding the BOP policy invalid, the regulations invalid and an order requiring the BOP to consider in good faith[1] whether to directly designate Plaintiff to a Community Corrections Center to serve his four month sentence without regard to the invalid regulations.

Defendants Bureau of Prisons and its director, Harley G. Lappin contend that "this Court has no jurisdiction to hear this matter as the defendant [apparently meaning plaintiff here] is not yet in custody; his claim is one that falls within habeas relief and is not yet ripe, his rights have not been violated, and he is not entitled to the extraordinary relief of a preliminary injunction."

## STATUTORY AND REGULATORY BACKGROUND

After conviction, but before incarceration the Bureau of Prisons ("BOP") is required to designate a place of imprisonment pursuant to pursuant to 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or

---

[1] Defendants frequently suggest that plaintiff requests that this Court place him in a half-way house. This is merely BOP hyperbole. Plaintiff does not request that this Court designate plaintiff to the halfway house, merely that the BOP make a good faith designation under 18 USC 3621 without regard to the invalid 28 CFR 570.20 and 570.21, as have all or nearly all other courts considering this issue.

without the judicial district in which the person was convicted, that the Bureau
determines to be appropriate and suitable, considering--
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
      (A) concerning the purposes for which the sentence to imprisonment was
determined to be warranted; or
      (B) recommending a type of penal or correctional facility as appropriate;
and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant
to section 994(a) (2) of title 28.
In designating the place of imprisonment or making transfers under this
subsection, there shall be no favoritism given to prisoners of high social or
economic status. The Bureau may at any time, having regard for the same matters,
direct the transfer of a prisoner from one penal or correctional facility to another.
The Bureau shall make available appropriate substance abuse treatment for each
prisoner the Bureau determines has a treatable condition of substance addiction or
abuse."

      Respondents seem to claim that recent regulations, 28 CFR §§570.20 and 570.21

and 18 USC §3624 permit the BOP to ignore its obligations under 18 U.S.C. § 3621(b).

## **JURISDICTION**

      Respondents assert that this Court does not have jurisdiction because there is no

Federal Question nor is any right of plaintiff implicated in this case.  Respondents omit to

note that the BOP is a federal agency, 18 U.S.C. § 3621(b) is a federal statute and 28

CFR §§570.20 and 570.21 are federal regulations, and that plaintiff has the right to have

the BOP designate his place of imprisonment considering--

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
      (A) concerning the purposes for which the sentence to imprisonment was
determined to be warranted; or
      (B) recommending a type of penal or correctional facility as appropriate;
and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant
to section 994(a) (2) of title 28.

Rather than comply with the statute, the BOP has categorically refused to comply with the specific requirements of § 3621(b).  This categorical prohibition set forth in the regulations §§ 570.20 and 520.21, has been uniformly declared invalid.  See plaintiff's Memorandum in Support of Temporary Restraining Order, pp. 12-19, incorporated herein by reference.  A multitude of cases cited in the Memorandum have declared the BOP policies invalid.  Since the filing of this case, additional published opinions have similarly invalidated the BOP regulations.  See *McFadden v. Morrison*, 2006 U.S. Dist. LEXIS 63675 (D. Minn. September 5, 2006); *Oglesby v. Morrison*, 2006 U.S. Dist. LEXIS 64674 (D. Minn. September 8, 2006).  In fact, after researching over 600 cases citing 18 USC 3621(b) or 28 CFR 570.20 and 570.21, plaintiff has found no cases decided after the filing of this Complaint that find the regulations to be valid.

Although respondents' first contention is that jurisdiction is lacking because there is no Federal Question, respondents have failed to point to any support for this novel proposition[2] nor have they even attempted to show that no "right of movant's is implicated in this case."  Respondents claim that, despite their flagrant violation of §3621, no federal court can require them to comply with the laws of the United States in designating plaintiff.

Respondents devote their entire jurisdictional argument to a perplexing attempt to show that plaintiff was required to bring this action under 28 USC § 2241.  Relying primarily on <u>United States v. Jalili</u>, 925 F. 2d 889 (6th Cir. 1991) they claim that "such

---

[2] Since jurisdiction and venue over these defendants are indisputably present in the District of Columbia, if there is no federal question involved in the application of these federal statutes, it appears that respondents will be bound by the doctrine of estoppel by pleading from seeking removal when plaintiff files this action for declaratory and injunctive relief in the Superior Court for the District of Columbia.

challenges must be brought as habeas corpus actions under 28 USC §2241. <u>See also</u>

<u>Lake v. Cameron</u>, 364 F. 2d 657 (D.C. Cir. 1966).[3]

The government claims that challenges as to the manner in which sentences

should be served must be brought as habeas corpus actions, citing *United States v. Jalilli*,

925 F. 2d 889, 893 (6th Cir. 1991). *Jalilli* is clearly not applicable to this case as plaintiff

is not in custody and habeas corpus does not apply. Several other courts have

distinguished *Jalilli* in striking down the new BOP policies. See *Iacoboni v. United*

*States*, 251 F. Supp. 2d 1015 (D. Mass. 2003); *United States v. Eakman*, 378 F.3d 294,

2004 (3d Cir. Pa. 2004); *Pearson v. United States,* 265 F. Supp. 2d 973 (E.D. Wis.

2003); *Lawrence v. Ashcroft*, (N.D. Ga. Sept. 4, 2003).

In *Iacoboni,* the court rebuked the government's attempt to raise *Jalilli* in an attack on

jurisdictional grounds stating:

> Finally, the December 2002 memo cites *United States v. Jalilli, 925 F.2d*
> *889 (6th Cir. 1991)*. Again, the decision has no direct applicability. Jalilli
> received a straight sentence of ten months imprisonment, with what
> purported to be an order that the sentence be served in a specific
> community confinement facility. The BOP duly placed the offender in the
> facility. Shortly afterwards, Jalilli was convicted in state court of new
> offenses; the conviction persuaded [**51] the BOP that he was no longer
> eligible for community confinement, and the defendant was transferred to
> a more secure facility. In response to a petition under *28 U.S.C. § 2255*,
> the judge then re-sentenced Jalilli to probation with six months community
> confinement as a condition. On appeal by the Government, the Sixth
> Circuit reversed and reinstated the original sentence, noting that the
> sentence of ten months imprisonment was valid and that the purported
> "order" designating community confinement was mere surplusage, since
> the place of confinement was within the discretion of the BOP. The court
> did observe in dicta that, had the court decided to impose a split sentence,
> the guidelines would have required the defendant to serve the first half of
> the sentence in a facility other than community confinement.

---

[3] Unlike here, both cases were brought by plaintiffs incarcerated at the time of filing so are inapplicable to
plaintiff's status.

The *Iacoboni* court further states:

> To jettison even the possibility of a sentence of imprisonment to community corrections -- for anyone, ever -- is the ultimate act of tossing out the proverbial baby with the bath water. Thanks to this new policy change, even where the judge, the defense and the prosecutor all agree [as in the instant case] that a sentence to a term of imprisonment in a halfway house would be appropriate, it will now apparently be impossible. This bureaucratic rigidity will injure the very communities, and the society, the laws are designed to protect. More than ever, robotic "policy," and not human intelligence, will drive the system -- to everyone's detriment.

It is well settled, except apparently by the Department of Justice, that habeas can only be invoked by a person, unlike plaintiff, who is in custody.  As <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973) makes clear "as a matter of Congressional intent, prisoners mounting a challenge to the lawfulness of their custody are to proceed by means of habeas. That intent is evidenced by the Article I branch's employment of the pivotal terms, "a person in custody," in the statute itself. Unless he or she is "in custody," an individual with a constitutional (or other federal question-based) grievance simply would not be heard in the context of habeas." <u>Chatman-Bey, v. Thornburgh</u>, 864 F. 2d 804, 808 (D.C.Cir. 12/23/1988).  One of the fundamental flaws of respondents' argument is that , because every case cited by respondents was brought by a person in custody, only persons in custody may bring a cause of action.  Plaintiff <u>agrees</u> that if he were in custody he might be required to use habeas to attack the manner of execution[4] of his sentence.  However, because he is not in custody he must attack the illegal actions of the BOP without filing a habeas corpus action.

---

[4] Moreover, as the government continuously attempts to dodge, plaintiff merely seeks BOP compliance with the statute in designating his place of confinement.

Respondents admit that plaintiff "is not yet in custody".  Thus, they claim that he is not able to file a habeas corpus petition challenging the conditions of his confinement as he does not have standing.  The BOP has attempted to mislead the court into believing that the hundreds of thousands of federal inmates might bring actions in this jurisdiction if this Court were to accept jurisdiction. Memo p. 10. This logic is clearly flawed since habeas corpus relief is the only form of relief for prisoners who are actually in custody and the habeas action must be filed in the district in which the prisoner is incarcerated. Therefore, because virtually every federal prisoner who is in custody is incarcerated in a district other than the District of Columbia, none of these "hundreds of thousands" of federal inmates may file for habeas relief in the District of Columbia.

Respondents have failed to advance even one case in support of their position that plaintiff may only use habeas corpus as his sole means of relief. Likewise, respondents have failed to advance a single case in support of their position that this Court has no federal question jurisdiction to hear plaintiff's cause of action.

Respondents do offer a path to relief.  They suggest that because plaintiff is not yet incarcerated[5] this Court should dismiss the petition [presumably respondents are referring to the complaint and motion for injunctive relief] without prejudice.  The movant's could then refile his case[6] as a habeas corpus petition in the district of incarceration."  Of course, this path would be futile as the matter would be moot before it could be litigated due to the fact that plaintiff's sentence is only four months.

---

[5] Respondents do not explain why a plaintiff must be incarcerated to bring a federal question complaint or a motion for injunctive relief.  This would certainly make litigants think twice about such complaints and drastically cut down the case load of federal courts.

[6] Respondents note that the Florida court suggested this course.  A reading of the opinion shows that Judge Lazarro was simply pointing out that habeas relief is not available unless plaintiff is in custody.  He did not suggest that habeas was the only procedural device available to plaintiff.

Furthermore, past experience shows that, if the plaintiff were required to bring a habeas action after incarceration, based upon the past claims of the government in other cases, they would claim that his administrative remedies had not been exhausted (a process that takes at least four months) and that his case would still be unripe.  The result in either event is the invalid BOP policy would never be properly challenged for plaintiffs with short sentences, thus allowing the executive branch to use nefarious and underhanded means to preclude this matter from litigation, despite the clear and unambiguous intent of Congress as found in 18 USC 1361(b).

Again, respondents claim that no relief is available to plaintiff unless he gets incarcerated.  If this reasoning has any validity—and we see none—respondents have made a bulletproof case for the grant of mandamus since no other remedy is available to plaintiff.

## MANDAMUS

Defendants oppose the issuance of a writ of mandamus based general principles of mandamus law, none of which is controverted by plaintiff, but they somewhat focus on the requirement of a clear duty to act.  In sole support of this purported absence of a clear duty to act, defendants rely, remarkably, on Goldings v. Winn, 383 F. 3d 17 ( 1st Cir. 2004). In Goldings, petitioner sought relief from the invalid regulations relied on by defendants here.  The government primarily relied its claim that a half-way house was not a "place of imprisonment".  This proposition has been solidly rejected by every court of competent jurisdiction and even the government, in its Response Memorandum (footnote 1) admits that a half-way house is a "place of imprisonment."   The Goldings Court  excoriated the government for "circular reasoning"

and found that the new regulations were completely inconsistent with 18 U.S.C. § 3621(b) and that plaintiff was entitled to have the BOP decide whether to send him to a half-way house based on the statute rather than the new policy. 383 F. 3d at 21.  This is essentially the same relief that plaintiff seeks and is entitled to here.

However, seizing upon a parenthetical note in a case cited by the concurring opinion, Falcon v. Knowles, 807 F. Supp. 1531, 1533 (S.D. Fla. 1992) ("[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner--no matter how well justified on utilitarian grounds--collides with . . . [BOP's] unfettered authority to decide where to house federal prisoners), the BOP claims it may ignore the statutory mandate of 18 U.S.C. § 3621(b).  In fact, the Falcon court was referring to the BOP's use of its discretionary authority, not its refusal to consider the factors specified in 18 U.S.C. § 3621(b).  Indeed, the concurring opinion agreed with the majority's decision to require compliance with 18 U.S.C. § 3621(b).  Plaintiff does not disagree that the BOP has discretion in placing him, but contends, with the support of nearly the entire United States judiciary that the BOP must exercise its discretion pursuant to the statute.

Because the statute requires such consideration and all courts –except a few district courts now overruled by circuit authority-- considering this issue have invalidated the regulations relied on by defendants here.  Therefore, the BOP currently has a clear duty to consider their placement decision[7] under the statute and the previous Policy Statements (that were followed for 35 years) and ignoring the invalid regulations.  Since there is a clear duty to consider the statute in designating plaintiff, justice requires its

_____

[7] Plaintiff has faith in the integrity of the mid- and lower-level officials of the BOP to act responsibly, as they have in all cases known to plaintiff, e.g., Combs, Colter, Hurt, etc.

consideration, and if, as argued by the government, plaintiff has no injunctive or other remedy—except for commitment to the Atlanta facility--a writ of mandamus[8] should issue.

## BOP'S "NEW" INTERPRETATION OF THE STATUTES DOES VIOLATE DUE PROCESS

### A.    Although Movant Has No Right To A Particular Designation, Movant Has a Right to Expect that the BOP Will Follow Its Statutory Duty Imposed Upon It by 18 USC 1361(b) in Making the Designation Decision.

Respondents claim that plaintiff has no right to <u>serve</u> his prison term in a particular institution or program.  Again, respondents refuse to acknowledge that plaintiff is not seeking such a result from this Court.  They pitch their entire argument on liberty interest cases, which generally suggest that a defendant has no right to serve his sentence in a particular institution.  While there may be some rebuttal to that proposition, plaintiff makes no such claim that would require that rebuttal.  Plaintiff merely asks that the government apply the designation statute[9] to his designation; that is, he wants the law, 18 U.S.C. § 3621(b), to be applied.  It is fundamental that statutes trump administrative regulations and not vice versa.  Therefore, a regulation, such as 28 CFR 570.20 and 570.21, that seeks to override the clear meaning of a statute, such as 18 USC 1361(b) is invalid.  There can be no more fundamental right to due process than the process

---

[8] Because plaintiff is not in the custody of the BOP he cannot file a habeas under § 2241 and if injunctive relief is not available, this Court should issue a writ of mandamus to require government compliance with the law.  Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." <u>Northern States Power Co. v. U.S. Dep't of Energy</u>, 128 F.3d 754, 758 (D.C. Cir. 1997).  Here, plaintiff is undoubtedly the beneficiary of § 3621 and has a clear right to relief, the requirement of designation without reliance on the invalid regulations is clear, indeed, undisputed, in the uniform case authority invalidating the regulations, Plaintiff's Reply, fn 1.

[9] Attached as Exhibit 2 is plaintiff's Designation Report.  It shows that no individuated consideration as required by 18 USC 1361(b) has been given plaintiff—apparently a routine omission by the BOP.  It states that there was o judicial recommendation.  Most importantly, plaintiff was excluded from direct placement in a halfway house solely because he was not sentenced in the 3rd or 8th Circuits.  Now with the <u>Apker</u> case, the BOP will have to add the 2d circuit to the circuits in which it will comply with the law.

prescribed by the statute.  We await the government's authority for the proposition that

the refusal to apply a federal statute conferring a right on a person—the statutory

procedure in considering inmate designation-- does not implicate due process.

**B.        Fundamental Rights Warranting Protection Are Found in This Case**

Substantive due process rights attach only when a "fundamental right" is

involved, thus ensuring that the government does not unjustifiably infringe on that right.

The government claims that only those rights that are "implicit in the concept of ordered

liberty" are considered to be fundamental.  Palko v. Connecticut, 302 U.S. 319 (1937).

Again, the government sets up the strawman of plaintiff's imagined claim for designation

by this Court to a half-way house.  Since the government can cite no valid authority for

the proposition that the BOP regulations are valid, their only argument is to quote

dissenting opinions.  As previously stated, all of the Circuits that have weighed in on this

important question have uniformly invalidated the offensive BOP regulations. Of course,

reliance on the dissent to support a legal position is futile.  The government cites no legal

authority to support its position.  Accordingly, it is unanimously accepted that the BOP

regulations are invalid and their use is a denial of due process.

**C.        The Government's Fair Notice Argument is a "Red Herring"**

Citing Davis v. Moore, the government argues that there was "fair notice" of its

intention to act illegally by applying the invalid regulations.  Therefore, there can be no

due process violation.  Although neither the defense attorney, the prosecuting attorney,

the probation officer or the federal judge were aware the BOP would fail to follow the

law, the government seems to claim that had they "examined the state of the law to

advise plaintiff as to whether "the BOP's former policy was consistent with 18 USC

§3624(c)," the attorneys and the judge would have been on notice that the government

would flout the law.  To the contrary, such an examination would have revealed that all

legitimate authority had rejected the government's invalid regulations and as well as their

predecessor[10] OLC policy opinion.

**D.**       **Expecting that the BOP Will Follow the Law Is a Protected Liberty Interest**

Respondents argue that plaintiff's subjective expectation that he would be housed

in a half-way house does not entitle him to due process relief.  Although the government

fails to point out that the expectation of plaintiff going to a half-way house was the

expectation of the defense attorney, the Department of Justice prosecuting attorney, the

federal judge and the probation department, plaintiff's only "expectation" was that the

government would follow the law.  To the surprise of all parties, the BOP chose not to do

so.  Unlike in U.S. v. Addonizio, 442 U.S. 178 (1979) cited by the government, plaintiff

did not acquire some liberty interest or vesting in the half-way house placement.  But see,

Culter v. United States, 241 F. Supp. 2d 19 (D.D.C. 2003) (Judge Huevelle had an

expectation that defendant would serve her time in a half-way house and enforced that

expectation).

---

[10] Present counsel handled three cases in 2003 invalidating the earlier OLC policy, Colton, Hurt and xxx. All three courts rejected the same BOP arguments presented here. All three judges ruled from the bench; indeed, one judge summoned the marshal into court after the argument and directed him to transport the inmate to the half-way house immediately.  When counsel was asked by plaintiff here to represent him on this issue, counsel told plaintiff that this issue had already been decided and there must be some mistake. Then counsel learned that the Department of Justice had rammed through the discredited OLC opinion in the form of a regulation and was again violating the law.  It is difficult to believe that a competent attorney would believe that this issue was still "controverted."  At any rate, the government's Davis argument is irrelevant because the Davis court was considering a curfew restriction on the constitutional right to travel, not a clear, explicit statute, 18 U.S.C. § 3621(b), whose specific directions the BOP has refused to apply, in violation of plaintiff's due process rights, because of the invalid regulations.

He was vested in the requirement that the BOP follow the law in considering his designation.  That dereliction deprived him of having a government agency exercise its discretion pursuant to the statutory requirements and deprived him of due process.

## DISPARATE APPLICATION OF 18 USC § 3624(c) VIOLATES EQUAL PROTECTION RIGHTS

Respondents argue that they are permitted to treat certain members of a class differently from others: permitting drug program inmates to have halfway house transfers earlier than others.  While plaintiff recognizes the possible value of transferring drug program inmates before 10% of the end their terms, in attempting to justify its violation of §3621, the government has asserted that § 3624 bars any and all transfers prior to 10% of the end of an inmate's term.  Since Congress, according to the BOP, created a unitary class of all inmates, by differentiating among members of the statutorily created class, the BOP has denied equal protection[11] to those, such as plaintiff, not granted the more liberal half way house treatment.  Accordingly, plaintiff has been denied his right to equal protection of law.

## PLAINTIFF HAS MET HIS BURDEN FOR OBTAINING INJUNCTIVE RELIEF

After mentioning some boilerplate, respondents suggest, without providing any factual support, that plaintiff has not met his burden of showing his entitlement to injunctive relief. As is clearly set forth in the original moving papers, plaintiff overwhelming qualifies for injunctive relief.

### A.    Plaintiff has a High Likelihood of Success on the Merits

---

[11] The government seeks deference for the BOP, claiming a need for wide-ranging deference in matters involving internal security and discipline. First, deference is not granted in statutory interpretation and, second, designation of an inmate by the BOP's ignoring congressionally-mandated standards, such as §3621, will detract from internal order and discipline.

14

Plaintiff has demonstrated a high likelihood of success on the merits.  See supra pp. 4-6, Plaintiff's Memorandum in Support of a TRO, pp. 9-19 and Plaintiff's Memorandum In Support Of Jurisdiction filed August 28, 2006.  In addition, plaintiff has conducted a Lexis search for the period after his original filing and has found four new casers supporting his position with respect to the merits.  There are approximately 535 cases supporting plaintiff with resp4ect to this position that the BOP has flouted 18 USC §3621 and 235 cases supporting plaintiff's position that the regulations, are invalid. Other than a few district court cases overruled by appellate courts, plaintiff has found no more cases supporting respondents. That may well explain the government's failure to cite relevant case authority.  Accordingly, plaintiff is overwhelmingly likely to prevail on the merits.

**B.    Irreparable injury**

Again, respondents play their old refrain that plaintiff has no absolute right to be placed in a half way house.  As explained frequently, plaintiff does not seek that relief, but merely asks that the government act in compliance with the well settled law that it consider plaintiff's designation without reliance on the invalid regulations categorically baring him from halfway house placement  If he is not considered for designation to a half-way house for the four months of his term, plaintiff will be deprived of the opportunity to adjust to his reentry into society, he will be unable to assist his family, his business ill probably fail, and he will suffer an absolute, irrevocable loss of those liberties, all of which is not susceptible to remedy by money damages.

The United States Supreme Court has held on more than one occasion that a violation of constitutional rights constitutes irreparable injury warranting interim

injunctive relief.  See <u>Elrod v. Burns</u>, 437 U.S. 347 (1976); <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922 (1975).  The rationale behind treating constitutional injuries as irreparable is that no other form of redress appears available if the preliminary injunction is denied, and, later on the merits, a constitutional violation is found to have occurred.  This is particularly true in cases, as here, in which the constitutional violation might likely become permanent due to the extended time necessary to complete the litigation.

**C.**     <u>**Defendants Will Suffer No Harm From the Granting of Injunctive Relief.**</u>

The rule at issue in this case was adopted in response to a legal opinion issued by the Department of Justice's Office of Legal Counsel.  There is no suggestion in that opinion or elsewhere of any rationale for the rule other than a perceived inconsistency in the application of the law.  Indeed, representatives of BOP have noted that enforcement of the rule is coming at great effort and cost for the agency because it requires the administrative expense of redesignation and the practical expense of transfer and housing at higher security institutions.  Rather than imposing a burden, the entry of a preliminary injunction is likely to save the defendants time and money.  See <u>Hurt v. BOP</u>, in which Judge Fitzpatrick found that the entry of a preliminary injunction would be a benefit to the BOP financially and administratively.  USDC M.D. GA, Memorandum Order, September 19, 2003, attached hereto.

In granting relief in a similar case, Judge Ponsor, in <u>Iacoboni v. United States,</u> 251 F. Supp. 2d 1015, 1022-23 (D. Mass. 2003 analyzed the claimed injury to respondents and the public interest as follows:

> But the advantages of community confinement to defendants constitute only a fraction of their particular usefulness. For innocent third parties, particularly children, the economic and emotional devastation caused by a parent's distant incarceration can be, to some extent, palliated. With the inmate employed,

16

families can stay off welfare; with a parent available, children can avoid placement in foster homes. For the Government wishing to recognize substantial assistance provided by a cooperating defendant this option also holds out advantages during plea negotiations, and at sentencing. Finally, of course, perhaps the Number One beneficiary of community corrections is the American Taxpayer, since the cost of community confinement, when it serves the interests of justice, is far less than the price tag on more conventional forms of imprisonment. When one remembers that persons placed in community corrections are generally minor offenders, with minimal or no criminal records, and no history of violence, the decision to entirely eliminate community corrections as an optional imprisonment designation becomes even more astonishing.

In considering the balance of the hardships, "the court should consider wherein lies the public interest, sometimes described as preserving the status quo ante litem until the merits of a serious controversy can be fully considered by a trial court." Maryland Undercoating Co., 603 F.2d at 481. In addition to preserving the plaintiff's designation to the halfway house, the Court may consider a variety of other "public interests" which pertain in this case, including safeguarding constitutional rights, maintaining the integrity of the rulemaking process, fostering respect for the criminal justice system, preserving the family unit, and protecting small businesses. See 3 Moore's Federal Practice § 65.22[3] (Matthew Bender 3d ed.). All these interests weigh in favor of the plaintiff.

This precipitous sea change[12] in the administration of the BOP was not based on considerations of a broad consideration of the impact of the new rule, but merely on the Department of Justice legal opinion changing the BOP's longstanding, well-established and apparently effective utilization of community correctional centers.

The governmental interest is set forth in the LEGAL RESOURCE GUIDE TO THE FEDERAL BUREAU OF PRISONS, 2003, which, in pertinent part states:

---

[12] The nature of the change was best described by District Judge Brady, who explained that under the pre-existing procedure, a reasonable imprisonment was envisioned for Ms. Ferguson by the U.S. Attorney, the court and Ms. Ferguson's attorney. "And that is precisely what happened. Until, that is, some Washington D.C. bureaucrat determined that the entire legal world had been acting under the same shared "unlawful" fantasy for decades and acted to bring us all back into step with his vision of the law." Ferguson v. Ashcroft, 248 F.Supp. 3d. 547, 561 (D.C.M.D.La. 2003). That "vision of the law" is what has deprived Mr. Colton of his transfer to the halfway house.

The Federal Bureau of Prisons (BOP) was established in 1930 to provide more progressive and humane care for Federal inmates, to professionalize the prison service, and to ensure consistent and centralized administration of the 11 Federal prisons in operation at that time.  .  .  . The mission of the BOP is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

The arbitrary abandonment of a fairly effective early transfer program will adversely impact consistent administration of the prisons, will remove many from community based facilities that are humane and cost-efficient and will limit opportunities for offenders to become adjusted to reentry into the community as law-abiding citizens. Thus, this new rule not only deprives Mr. Jasperson of due process, but also it is contrary to the long-established purposes of the BOP as is further demonstrated below.

The efficacy of the halfway house process is well recognized.  The BOP has found it useful and it has received broad-based support in the legal-correctional community. See e.g., Blueprint for Cost-effective Pretrial Detention, Sentencing and Corrections Systems, ABA, Criminal Justice Section August 2002, Halfway Houses Less of an Option in White-Collar Crime, Los Angeles Times, May 25, 2003, Community Update, BOP, June 28, 2002, Electronic Monitoring vs. Halfway Houses: A Study of Federal Offenders by Jody Klein-Saffran, Project Greenlight, Vera Institute of Justice.

Prior to the December 2002 reversal of policy, the BOP had been expanding and improving the use of tbe halfway house program. See Survey on the Effectiveness of the Comprehensive Sanctions Centers, by James L. Beck and Jody Klein-Saffran, Ph.D., American Probation and Parole Association Perspectives, (Summer 1997), 20(3), pp. 34-7.  Indeed, to accomplish one of its primary goals:

to help ensure sufficient capacity to imprison violent offenders to the fullest extent of the law, DOJ will increase the percentage of its population in other-than-BOP facilities.  These include halfway houses, contract facilities, and home confinement.  Use of secure and community-based alternatives to traditional confinement helps BOP address the prison overcrowding problem by placing nonviolent Federal prisoners in other-than-BOP facilities.  "Performance Goal 5.2.3," <u>FY 99 Annual Accountability Report, U.S. Department of Justice</u>.

Raag Singahl, Esquire, Co-Chairman of the Corrections Committee of the National Association of Defense Lawyers, in reacting to the BOP halfway house policy change said, "Removing halfway houses as a sentencing option runs counter to recent trends in state judicial systems, which are increasingly turning to community corrections as a way to save money and ease prison crowding."   A measure of difficulties this restriction will have is the fact that many BOP facilities are now occupied beyond capacity.  This new policy will exacerbate the overcrowding.

Perhaps more significant is the impact that this BOP edict will have on halfway house treatment for drug program attendees, a group the OLC opinion seeks to except from the policy change.  Briefly put, the OLC opinion claims, relying on Section 3624 (c), that non-drug offenders cannot be transferred to a halfway house unless they are within 10% of the end of their sentences, but that drug program attendees may continue to be transferred under Section 3621 (e), even though Section 3624 (c) applies equally to all inmates, including the latter class.  While we do not argue that drug program attendees should be stopped being transferred to a halfway house prior to 10% of the end of their sentence, when the BOP recognizes the legal implication of the OLC opinion and ends that transfer policy as in violation of Section 3624 (c) there will be significant dislocation in the BOP drug program under Section 3621 (e); costs to the taxpayer and prison overcrowding will mount enormously.

Given this framework and the government's failure to provide any relevant authority to the contrary, this Court should find that the balance of the hardships weighs in favor of the plaintiff.

**<u>The Government's Argument That No Injunctive Relief May Be Awarded Without
Meeting the Requirements of the PRLA at 18 USC 3626(a)(2) Is Without Merit</u>**

The government has argued that the statute controlling injunctive relief is the

Prison Litigation Reform Act (PRLA) codified at 18 USC 3626(a)(2).  The government

misconstrues the PLRA on several levels.  It is clear that the PRLA does not apply to this

case.

The PRLA is entitled "§ 3626.  Appropriate remedies with respect to prison

conditions."  Plaintiff's complaint does not seek a remedy with respect to prison

conditions.  Instead, plaintiff seeks to declare a BOP regulation invalid and enjoin its

application in the designation process.

Citing <u>Porter v. Nussle</u>, 534 U.S. 516, 525 (2002) as defining the subject matter

of the PRLA as any aspect of prison life,, apparently contending that because the VBOP

is involved this suit must be about prison life.  If one actually reads <u>Porter v. Nussle</u>, it is

readily seen that the PRLA applies only to suits by prisoners about the prison conditions

they are enduring.  <u>Porter</u> states in pertinent part:

> (a) And unlike the previous provision, which encompassed only §1983 suits,
> exhaustion is now required for all "action[s] ... brought with respect to prison
> conditions." Section 1997e(a), designed to reduce the quantity and improve the
> quality of <u>prisoner suits</u>, affords corrections officials an opportunity to address
> complaints internally before allowing the initiation of a federal case.
> (b) Determination of the meaning of §1997e(a)'s "prison conditions" phrase is
> guided by the PLRA's text and context, and by this Court's prior decisions
> relating to "[s]uits by prisoners," as §1997e is titled.

Thus, it is clear that PRLA applies only to prisoner suits about prison conditions.

Neither criteria apply to plaintiff's action to get the Department of Justice to behave

according to law in administering the designation process for plaintiff who is not a prisoner.  Respondents' attempt to hide behind PRLA must be denied.

WHEREFORE, plaintiff requests that respondents' Motion to Dismiss be denied and  injunctive relief be entered or a writ of mandamus be issued requiring defendants Lappin and the Bureau of Prisons to reconsider plaintiff's designation in good faith in accordance with the standards employed by the Bureau of Prisons prior to December 2002 and without consideration of 28 CFR § 520.20 and 520.21.

Respectfully submitted,

_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC  20001
(202) 842-1700

Attorney for the Plaintiff
Mark D. Jasperson