## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARK D. JASPERSON,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**FEDERAL BUREAU OF PRISONS, et al.,**<br>                    **Defendants.** | **Civil Action 06-01488  (HHK)** |

## MEMORANDUM OPINION

Mark Jasperson brings this action against the Federal Bureau of Prisons ("BOP") and Harley G. Lappin, the Director of the Bureau, in his official capacity.  His complaint includes two counts, one seeking a declaratory judgment and the other seeking relief under the mandamus statute.  Jasperson, who was sentenced to a term of imprisonment of four months, seeks preliminary injunctive relief against BOP, and in particular to have his place of confinement determination reviewed for possible placement in a halfway house.  Jasperson previously sought a temporary restraining order, which the court granted pending further review.   A hearing was held on the motion for a preliminary injunction, and the court granted the injunction on September 26, 2006, indicating that a more complete discussion of its reasoning would follow. This memorandum provides the court's rationale for its decision.

## I.  FACTUAL BACKGROUND

When Jasperson was sentenced, the district court of the Middle District of Florida "strongly" recommended that he serve his four-month term in a Community Confinement Center ("CCC").  Pl.'s Mot. for Prelim. Inj. Ex. 9, at 3 (Order, Aug. 7, 2006).  BOP did not consider the recommendation, but rather, pursuant to 2005 BOP regulations—which purport to categorically exercise BOP's discretion regarding confinement to only allow prisoners to serve the last ten percent of their terms in CCCs—designated a federal prison camp in Atlanta as Jasperson's place of confinement.  Pl.'s Mot. for TRO Ex. 1 (Designation); *see* 28 C.F.R. §§ 570.20–.21. Jasperson challenges the validity of these regulations and asks the court to order BOP to conduct an individualized assessment in order to determine if he should be placed in a CCC.  He does not seek an order forcing BOP to make a different designation; rather, he asks that the court require BOP to make his confinement determination taking into account the factors enumerated in the underlying statute, 18 U.S.C. § 3621, without regard to the 2005 regulations.

Jasperson initially filed a habeas petition in the Middle District of Florida.   The court there dismissed the petition on the grounds that Jasperson was not yet in custody of BOP and that his petition was therefore premature.  The court further suggested that Jasperson re-file the petition after surrendering to the Bureau.

## II.  ANALYSIS

### A.    Statutory and Regulatory Background

Section 3621(b) of Title 18 directs BOP to designate the place of a prisoner's imprisonment after considering a variety of factors, including "the nature and circumstances of the offense," "the history and characteristics of the prisoner," and "any statement by the court

that imposed the sentence" either "concerning the purposes for which the sentence to imprisonment was determined to be warranted" or "recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(2)–(4). Section 3624 provides for "pre-release custody," and mandates that BOP:

> shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to 2002, BOP made individualized assessments and frequently assigned prisoners serving short sentences to serve the entirety of those sentences in CCCs, often on the recommendation of the sentencing courts.  Both BOP and the courts viewed § 3621 as giving BOP discretion to transfer an inmate to a CCC for longer than six months or ten percent of his sentence, and read § 3624 to separately oblige BOP to transfer inmates to CCCs, where practicable, for a reasonable part of the last ten percent, not to exceed six months, of a given sentence. *See Levine v. Apker*, 455 F.3d 71, 75 (2d Cir. 2006) (describing history); *see also Goldings v. Winn*, 383 F.3d 17, 19–20 (1st Cir. 2004) (same); *Elwood v. Jeter*, 386 F.3d 842, 846–47 (8th Cir. 2004) (same); U.S. Dep't of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998).

In 2002, the Department of Justice Office of Legal Counsel issued a memorandum evaluating this practice and concluding that (1) the courts could not substitute a CCC term for traditional imprisonment and that (2) BOP did not have the authority to impose a CCC term for imprisonment before the last ten percent of the term. *See* Office of Legal Counsel, U.S. Dep't of

Justice, Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders

Who Have Received Sentences of Imprisonment, 2002 WL 31940146 (Dec. 13, 2002).

      This change in policy triggered a slew of civil actions and habeas petitions by prisoners.

A majority of courts reviewing the policy rejected it as being contrary to the statute's requirement

that BOP to affirmatively exercise its discretion in considering the factors enumerated in the

statute. *See*, *e.g.*, *Elwood*, 386 F.3d at 846–47; *Pimentel v. Gonzales*, 367 F. Supp. 2d 365,

367–68 (E.D.N.Y. 2005) (collecting cases).

      In February 2005, largely in response to these decisions, BOP enacted regulations which

asserted a "categorical exercise of [its] discretion for designating inmates to community

confinement." 28 C.F.R. § 570.20(a). The rule limits CCC designations to the "pre-release

custody" program and expressly provides that CCC confinement will only occur "during the last

ten percent of the prison sentence being served, not to exceed six months." *Id.* § 570.21(a).

Jasperson challenges the application of this regulation to his confinement determination.

**B.**    **Jurisdiction and Related Questions**

    **1.**    **Appropriateness of a Direct Civil Suit Against the Bureau of Prisons**

      The court must first determine whether a direct civil action, like this one, rather than a

habeas petition, is the appropriate vehicle for challenging BOP's determination policy. The

majority of (the many) cases challenging BOP's policies regarding placement in halfway houses

have been brought as habeas petitions by prisoners already in custody of BOP. The Second and

Third Circuits have held that a habeas petition is a proper, if not an exclusive, avenue for

challenging the BOP regulations and policies relevant here. *See Levine*, 455 F.3d at 78; *Woodall*

*v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–44 (3d Cir. 2005); *see also Pimentel*, 367 F. Supp.

2d at 369–71 (petitioner could bring a habeas claim to challenge the BOP policy, but habeas was

not his exclusive remedy). The Seventh Circuit, however, has held that habeas is not an available

remedy in this context, but rather that prisoners must bring civil actions utilizing the

Administrative Procedures Act. *Richmond v. Scibana*, 387 F.3d 602 (7th Cir. 2004).[1]

　　　Recent case law, including one decision of the United States Supreme Court and one of

the D.C. Circuit, clarifies both the scope of the habeas remedy and, in particular, the

circumstances in which habeas is the exclusive remedy a prisoner may pursue. In *Wilkinson v.

Dotson*, 544 U.S. 74 (2005), the Supreme Court held that two state prisoners could challenge

Ohio's parole procedures in Section 1983 actions. Because their challenges sought to render

invalid the procedures and did *not* seek a speedier or immediate release from custody or

otherwise "demonstrate the invalidity of confinement or its duration," they did not fall within the

"core" of habeas such that habeas was their only available remedy. *Id.* at 82. Success in the

actions would not "mean immediate release from confinement or [shorter stays] in prison," but

rather new parole reviews, "which at most would speed *consideration*" of parole. *Id.* at 81–82;

*see also Hill v. McDonough*, __ U.S. __, 126 S. Ct. 2096, 2103–04 (2006) (challenge to method

of scheduled lethal injection need not be brought in habeas; because injunctive relief in a Section

1983 action would not necessarily foreclose the state from executing the plaintiff by lethal

---

[1] In *Richmond*, the Seventh Circuit articulated an either/or standard for determining which vehicle a prisoner may use to challenge aspects of his sentence or incarceration. In that court's view, challenges to the fact or duration of custody must proceed in habeas, *id.* at 606 (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)), while a "challenge to [the] rules affecting conditions of custody, and potentially affecting [the] duration of a particular kind of custody, proceeds as an ordinary civil suit unless [the] conditions of custody change so substantially that [the] challenge really is to [the] 'fact' of custody." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). The Seventh Circuit did not entertain the possibility that there could be some overlap between available remedies for certain prisoners.

injection, the suit did not seek to establish "unlawfulness [that] would render a conviction or

sentence invalid" (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 (1994))).

In accord with this view of the limited scope of habeas's exclusivity, the D.C. Circuit

held in *Taylor v. U.S. Probation Office*, 409 F.3d 426 (D.C Cir. 2005), that a § 1983 action

challenging an inmate's placement in a detention facility, rather than in a halfway house (to

which he had been designated by the sentencing court), was properly brought and need not have

been styled as a habeas petition. Construing the action as a "challenge to a condition (namely,

the location) of [the plaintiff's] confinement, and not its fact or duration," *id.* at 430, the court

held that in light of *Wilkinson* and *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam)

(a "prisoner's challenge that threatens no consequence for his conviction or the duration of his

sentence" need not be brought in habeas), the prisoner was free to bring a § 1983 action. *Id.*

at 431.[2]

The court in *Taylor* also responded to a government argument that the challenge *could*

have been—and therefore must have been—brought in habeas: "This is obviously beside the

point," the court wrote. "It may well be that habeas is available where a prisoner alleges that he

'is unlawfully confined in the wrong institution,' or "'is being unlawfully detained by the

Executive,'" the court wrote, but the principle of *Heck* holds only that habeas is the *exclusive*

remedy for claims that imply the invalidity of the plaintiff's "conviction or sentence."

409 F.3d at 430 (quoting *Preiser*, 411 U.S. at 486; *Heck*, 512 U.S. at 487). The court also cited

its prior decision in *Brown v. Plaut*, a prison-conditions-challenge case in which the court wrote

---

[2] An action under § 1983, which applies to state governmental actors, is not available to Jasperson because he pleaded guilty to a federal crime.

that "[h]abeas corpus might conceivably be available to bring challenges to such prison

conditions . . . but *requiring* the use of habeas corpus in such cases would extend *Preiser* far

beyond the 'core' of the writ that *Preiser* set out to protect."  131 F.3d 163, 168–69

(D.C. Cir. 1997); *see also Docken v. Chase*, 393 F.3d 1024, 1028–30 (9th Cir. 2004) (concluding

that habeas and § 1983 are not mutually exclusive, and noting that "[t]he [Supreme] Court's

central concern . . . has been with how far the general remedy provided by § 1983 may go before

it intrudes into the more specific realm of habeas, not the other way around"); *Pimentel*,

367 F. Supp. 2d at 369–71 (rejecting *Richmond* and holding that "the fact that [the petitioner's]

claims could be brought under the APA does not necessarily preclude a separate remedy under

habeas corpus"); *cf. Smith v. United States*, 277 F. Supp. 2d 100 (D.D.C. 2003) (reviewing the

merits of a § 2255 habeas motion challenging the plaintiff's assignment to a prison camp instead

of a CCC).[3,4]

_____

[3] BOP cites and relies upon *Chatman-Bey v. Thornburgh*, 864 F.2d 804 (D.C. Cir. 1988), and its progeny.  In *Chatman-Bey* the D.C. Circuit held that prison actions which, if successful, would have a "probabilistic impact" on the duration of a prisoner's confinement must be brought as habeas actions.  BOP's reliance on *Chatman-Bey* is misguided.  First, such reliance fails to take into account the change in the legal landscape wrought by *Wilkinson* and *Taylor*.  Second, *Chatman-Bey* would not control here in any event because Jasperson does not seek to alter the duration of his confinement; he seeks only consideration of an alternate location for that confinement.  *See Williams v. Hill*, 74 F.3d 1339, 1340–41 (D.C. Cir. 1996) (a prisoner seeking relief "from his conviction or sentence" may not bring an action for injunctive relief) (citing *Preiser* and *Chatman-Bey*).

[4] The Middle District of Florida determined that because Jasperson had not yet surrendered to BOP, he was not in custody and could not therefore bring a habeas petition.  Pl.'s Mot. for Prelim. Inj. Ex. 9, at 3–4.  The court respectfully disagrees with this conclusion.  The Supreme Court has held that "an individual released on his own recognizance pending execution of his sentence is nonetheless in custody and may bring a habeas petition."  *Smith v. United States*, 277 F. Supp. 2d at 105 (citing *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973)).  It appears from the scant record before the court that this appears to be Jasperson's precise situation.  *United States v. Arthur*, 367 F.3d 119, 121 (2d Cir. 2004), which the Middle District

7

Thus while BOP may be correct in arguing that Jasperson's action *could* be brought upon his surrender to BOP as a habeas petition, it does not follow that his civil action here therefore is foreclosed.

### 2.     Subject Matter Jurisdiction, Immunity, and the Cause of Action

#### a.     *Subject Matter Jurisdiction and Immunity*

Though Jasperson is entitled to bring a civil action, questions remain as to whether the court has jurisdiction over the action and whether Jasperson has a basis on which to sue.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question), but neither the federal question statute, the declaratory relief statute, nor the mandamus statute waives sovereign immunity.  *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *United States v. King*, 395 U.S. 1, 5 (1969).  Relief is not foreclosed, however, as the APA provides the necessary waiver of sovereign immunity.  The relevant provision of the APA states:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein

---

of Florida cited to support its decision, correctly determined that a convicted person not yet imprisoned is in "custody" and may bring a habeas petition, but also decided to dismiss the habeas petition and instructed the petitioner to re-file after surrender.  The court explained that, in its view, ordering BOP to make a new determination without taking the invalid policy into account would likely only bring about a re-designation to the same facility and another subsequent habeas petition.  *Id.* at 123.  That may very well have been the case, but in this court's view, it is beside the point.  Placement of prisoners is a discretionary task vested with the Bureau and is not reviewable.  18 U.S.C. §3625.  Thus whether a petitioner or plaintiff is in custody has no bearing on whether the sole relief available to him—injunctive relief requiring a determination that ignores the allegedly invalid BOP policies—will be efficacious.  If such a re-determination is made in a given case, it will be, by definition, efficacious, regardless of the facility assignment.  The risk that the agency will fail to comply or act in bad faith, or that a litigant will file a subsequent habeas petition claiming as much, is little reason to decline at the outset to grant otherwise warranted injunctive relief.

be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

        *b.*    *Right of Action*

The waiver of immunity does not end the inquiry, however, as the court must determine whether there exists, and whether Jasperson has identified, a viable right of action.

        (1)    Administrative Procedures Act

Typically, challenges to agency actions such as rulemaking are brought under the APA. Jasperson does not cite the statute, nor does he dispute the government's contention that this is not an APA case, and it appears from the briefs and representations by counsel in oral argument that both parties agree that 18 U.S.C. § 3625 precludes APA review of Jasperson's claims. That provision states that the APA does "not apply to the making of any determination, decision, or order under this subchapter." Jasperson does not challenge, however, the making of any determination, decision, or order. He challenges the 2005 agency rulemaking, which informs the imprisonment determination made regarding him.

The line between a challenge to an agency rule which has been followed in making an imprisonment determination and a challenge to the underlying determination itself is a fine one. The structure and legislative history of the statute, however, support the making of such a distinction. In addressing the scope of § 3625 in similar circumstances to those here, two district courts have concluded that challenges to rulemaking are not precluded by the statute:

In *Lyle v. Sivley*, 805 F. Supp. 755 (D. Ariz. 1992), the court determined that a direct challenge to a BOP denial of CCC placement in the § 3624(c) context (pre-release custody, to be

9

distinguished from the initial confinement determination under § 3621 at issue here) could not be brought, but that challenges to rulemaking would not be precluded by § 3625. *Id.* at 758–60. The court noted the general presumption that agency action is subject to judicial review unless Congress manifests "clear and convincing evidence" of intent to foreclose such review, *id.* at 758 (citing *Abbot Laboratories v. Gardner*, 387 U.S. 136, 141 (1967)), and reviewed the legislative history of the enacting legislation, the Sentencing Reform Act of 1984. *Id.* That Act, in the court's view, manifested congressional intent to preclude judicial review of adjudications, but not rulemaking. *Id.* at 759; *see also* H. Rep. No. 98-1030, 98th Cong. 2d Sess. 149 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332 (stating that judicial review of rulemaking, but not "adjudication[s] of specific cases," is available).

In *Wiggins v. Wise*, 951 F. Supp. 614 (S.D.W.Va. 1996), a habeas petitioner challenged a BOP policy which denied her eligibility for early release under a drug treatment program provided for by 18 U.S.C. § 2621(e)(2). Following *Lyle*'s lead, the court similarly noted that the legislative history of the statute favored judicial review of rulemaking, and also noted that the distinction between a "decision, determination [or] order" in § 3625 and a rule was "reinforced by the conspicuous failure of 18 U.S.C. § 3625 to preclude review under 5 U.S.C. § 533, the section governing rulemaking under the APA." *Id.* at 618.[5]

---

[5] A third district court, in *Davis v. Beeler*, 966 F. Supp. 483 (E.D. Ky. 1997), faced the slightly different question of whether the court could review a direct challenge to a substantive decision to deny a prisoner early release, § 3625 notwithstanding. The court held that such a review was available, but was limited to "whether the agency's interpretation of the statute under which it makes said decision is contrary to well-settled case law." *Id.* at 485–86 (citing *Neal v. United States*, 516 U.S. 284, 294–95 (1996)).

The court agrees with the reasoning of these decisions. Like the petitioner in *Wiggins*, and unlike the petitioner in *Lyle*, Jasperson challenges the rulemaking leading to the BOP policy that informed his confinement determination, rather than challenging the determination itself. Thus, his claim is cognizable under the APA.

That Jasperson does not cite the statute gives the court pause, but the court is nonetheless persuaded by Judge Greene's decision in *Pueblo of Sandia v. Babbitt*, No. 94-2624, 1996 WL 808067 (D.D.C. Dec. 10, 1996), in which he wrote that a "suit is not barred on the technical ground that the amended complaint did not refer to the APA in the jurisdictional sections," particularly where, as here, "the facts alleged in the amended complaint, on their face, indicate that the plaintiff is seeking review of administrative action." *Id.* at *9. The court, therefore, will construe Jasperson's complaint as containing an APA claim.

(2)    Nonstatutory action for nonmonetary relief

Even if Jasperson's failure to cite to the APA precluded review under that statute, his action would nonetheless be properly brought as a nonstatutory action for nonmonetary relief. "If a plaintiff is unable to bring his case predicated on either a specific or general statutory review provision, he may still be able to institute a non-statutory review action." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996). Such actions are available because "[j]udicial review is favored when an agency is charged with acting beyond its authority," *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988), and thus "[e]ven where Congress is understood generally to have precluded review, the Supreme Court has found an implicit but narrow exception, closely paralleling the historic origins of judicial review for agency actions in excess of jurisdiction." *Griffith v. FLRA*, 842 F.2d 487, 492 (D.C. Cir. 1988). "Pursuant to this case

11

law, 'judicial review is available when an agency acts *ultra vires*,' even if a statutory cause of

action is lacking." *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006) (quoting *Aid Ass'n for*

*Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)).

This nonstatutory exception is "intended to be of extremely limited scope." *Griffith*,

842 F.2d at 493. A plaintiff must allege that the agency acted in a manner that exceeded its

authority. The D.C. Circuit has explained that nonstatutory "review may be had only when the

agency's error is patently a misconstruction of [a statute], or when the agency has disregarded a

specific and unambiguous statutory directive, or when the agency has violated some specific

command of a statute." *Ibid.* (internal quotations and citations omitted).

Jasperson's claims fall within this exception. He alleges that BOP violated the specific

command of 18 U.S.C. § 3621 to take into account the individualized factors enumerated in that

provision. Whether his narrower argument that BOP was particularly required to consider

confinement in a CCC falls within this exception is a closer question, but it necessarily flows

from the underlying allegation, that the agency acted *ultra vires* in failing to follow the statute,

given the presence of CCCs on BOP's roster of places of imprisonment. *See Levine*, 455 F.3d at

82 n.8; *see also infra* Part II.C.1.

Whether construed as a properly pleaded APA action or as a nonstatutory action,

Jasperson's complaint is within the court's jurisdiction and adequately pleaded, and is not barred

by sovereign immunity. *See Reich*, 74 F.3d at 1328 (APA's immunity waiver "applies to any suit

[seeking nonmonetary relief] whether under the APA or not"); *Trudeau*, 456 F.3d at 189–90

(D.C. Cir. 2006) (discussing the availability of nonstatutory actions); *cf.* 5 U.S.C. § 702

(providing waiver for any "action [challenging official action] in a court of the United States

seeking relief other than money damages"). Because the court has determined that Jasperson's

action may be construed as one under the APA, and because the APA is a preferred remedy to its

more exceptional counterparts, the analysis that follows will focus primarily on the application of

the APA to this case. As will be seen, however, a preliminary injunction is warranted regardless

of whether Jasperson's suit is styled as one under the APA or as a nonstatutory action.[6]

**3.    The Administrative Procedures Act**

As mandated by statute, the Bureau's placement decision itself is not open to challenge.

18 U.S.C. § 3625 ("The provisions of [the APA] do not apply to the making of any

determination, decision, or order under this subchapter."). A prisoner may challenge, though, the

policy used to make that determination. *See Wiggins*, 951 F. Supp. at 618–19; *Lyle,* 805 F. Supp.

at 758–59. Jasperson brings such a challenge.

*a.    Exhaustion*

Before the merits can be addressed, an inquiry into exhaustion is necessary. There are

two kinds of exhaustion requirements: "jurisdictional" and "non-jurisdictional" (or "prudential")

requirements. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247–49 (D.C. Cir. 2004). The

court will address each in turn.

---

[6] Jasperson also states a claim under the mandamus statute. Because mandamus is a
"drastic" remedy, "to be invoked only in extraordinary situations," *Allied Chem. Corp. v.
Daiflon, Inc.*, 449 U.S. 33, 34 (1980), and the less extraordinary remedies provided by the APA
or available to him via a nonstatutory action provide avenues for relief here, the court will not
grant mandamus relief. It is settled that mandamus is not appropriate where other remedies are
available. *Compare Griffith*, 842 F.2d at 493 (requiring a clear violation of a statutory mandate
to justify a nonstatutory action), *with N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754,
758 (D.C. Cir. 1997) (requiring a clear right to relief, plain and certain duty to the plaintiff, and
the absence of any other available remedy to justify mandamus). As discussed below, alternative
relief appears to be available, so mandamus relief would likely be unnecessary.

(1)    Jurisdictional Exhaustion

Under the APA, "a party can seek judicial review from a final agency action without pursuing an intra-agency appeal unless required to do so by statute or by regulation." *DSE, Inc. v. United States*, 169 F.3d 21, 26–27 (D.C. Cir. 1999) (citing *Darby v. Cisneros*, 509 U.S. 137 (1993); *Sendra Corp. v. Magaw*, 111 F.3d 162, 166 (D.C. Cir. 1997) ("Parties therefore do not have to seek rehearing before they commence an action for judicial review unless there is a statute requiring them to do so.")).  Section 10(c) of the APA "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Darby*, 509 U.S. at 146.[7]  To determine whether Jasperson was required to exhaust administrative remedies before bringing this action, then, the court must look both to governing statutes and to BOP rules and regulations.

There is no statute requiring exhaustion.  Typically, prison-related cases are subject to a statutory exhaustion requirement imposed by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  That statute, however, applies by its terms to any "prisoner confined in any jail, prison, or other correctional facility," *Id.* § 1997e(a), and defines the term "prisoner" as meaning "any person incarcerated or detained in any facility" who is accused, convicted, sentenced, or adjudicated delinquent for violations of criminal law. § 1997e(h).  Jasperson, while he is in

---

[7] In order to mandate exhaustion, a statute must contain "[s]weeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (internal quotations omitted).  "We presume exhaustion is non-jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'" *Avocados Plus*, 370 F.3d at 1248 (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir.1984)).

14

*custody* of the Bureau, is not *confined* (nor, in the words of subsection (h), is he "incarcerated or detained") "in any jail, prison, or other correctional facility."  Thus, the statutory exhaustion requirement of § 1997e does not apply to him, and he may bring this action directly against the agency without first bringing an intra-agency appeal.

Nor do any agency rules require Jasperson to exhaust his remedies before bringing this action.  The relevant regulation states the purpose of the BOP "Administrative Remedy Program" and outlines its scope as applying to "all *inmates in institutions* operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement" (emphasis added).  28 C.F.R. § 542.10.  In turn, the general definitions section of the relevant subchapter defines "inmate" as meaning "all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities."  28 C.F.R. § 500.1(c).  While this provision is ambiguous (it could refer either to (1) persons in the custody of BOP *or* in the custody of BOP contract facilities, or to (2) persons in the custody *either* of BOP facilities *or* BOP contract facilities), the better reading interprets the definition as referring to inmates actually confined in BOP or BOP contract facilities.  This interpretation squares with the traditional usage of the term "inmate" and is in greater harmony with the specific definition provided in the "Administrative Remedy Program" regulation (which definition states that it applies to "inmates in institutions").  It also harmonizes the BOP regulations with the PLRA, which, as noted, limits its statutory exhaustion requirement to inmates confined in institutions.  The court adopts this reading and concludes that because Jasperson is not yet confined in a facility, he has no jurisdictional exhaustion obligation.

15

(2)    Nonjurisdictional Exhaustion

As the D.C. Circuit has stated, "[n]on-jurisdictional exhaustion serves three functions: 'giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review.'" *Avocados Plus*, 370 F.3d at 1247 (quoting *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 414 (D.C. Cir. 1998)).  Exhaustion may be excused in some circumstances, however, including when there are no facts in dispute, when the disputed issue is outside the agency's expertise, or when "requiring resort to the administrative process may prejudice the litigants' court action or may be inadequate because of agency bias." *Ibid.*  Exhaustion may also be excused on grounds of futility.  *See Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994).  In such circumstances, "the district court may, in its discretion, excuse exhaustion if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Avocados Plus*, 370 F.3d at 1247 (internal quotations and citations omitted).

Although the parties have not briefed the issue, it appears from Jasperson's complaint that he took a variety of steps to exhaust his administrative remedies, including making requests to a variety of BOP officials that his confinement be determined without reference to the 2005 regulations.  Compl. ¶¶ 16-18.  Even if he did not exhaust his remedies, the court would exercise its discretion to excuse exhaustion on grounds of futility.  The court may excuse exhaustion on futility grounds when an adverse decision would be a "certainty," *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986), and when "resort to administrative remedies [would be] clearly useless." *Commc'ns Workers*, 40 F.3d at 432 (internal quotation

omitted).  This case presents adequate certainty of an adverse response to Jasperson's administrative appeals:  The regulation is published in the Code of Federal Regulations and BOP continues to adhere to it, despite fairly consistent rejection of the regulation by the courts.  *See Knish v. Stine*, 347 F. Supp. 2d 682, 686–87 (D. Md. 2004) (excusing challenge to 2002 BOP policy on a futility basis); *Zucker v. Menifee*, No. 03-10077, 2004 WL 102779 at *4 (S.D.N.Y. Jan. 21, 2004) (same); *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689–91 (E.D. Ky. 2004) (same); *Howard v. Ashcroft*, 248 F. Supp. 2d 518, 532–33 (M.D. La. 2003) (same).  This is not a case where requiring exhaustion would afford the agency an opportunity to correct any errors, as the agency already has received ample opportunities via the lawsuits which have preceded this one to change its approach.

## C.    The Merits of Jasperson's Claims

Having concluded that this action is properly before it, the court will now address the merits of Jasperson's motion.  The court must consider four factors in determining whether to grant a motion for preliminary injunction: (1) whether the petitioner has demonstrated that there is a substantial likelihood that he will prevail on the merits of his claim; (2) whether the petitioner has shown that he would be irreparably harmed if injunctive relief is not awarded; (3) whether the issuance of injunctive relief would "substantially harm" other parties; and (4) whether awarding the relief is in the public interest.  *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001).  These factors should be balanced against one another and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir.

17

1995).  Thus, injunctive relief may be warranted "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *Id.* However, a party seeking injunctive relief must "demonstrate at least 'some injury' . . . since '[t]he basis for injunctive relief in the federal courts has always been irreparable harm.'"  *Id.* (quoting *Sampson v Murray*, 416 U.S. 61, 88 (1974)).

### 1.    Substantial Likelihood of Success on the Merits

Review under the APA is subject to familiar *Chevron* deference.  *See Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). As the D.C. Circuit recently explained:

> [D]eference to an agency's interpretation of a statute is due only when the agency acts pursuant to delegated authority.  *Chevron* "requires a reviewing court to ask . . . whether an agency's specific course of action is permitted by statute. It is possible that a statute might grant an agency authority to act in some fashion, but not in the particular manner it has chosen." *Arent v. Shalala*, 70 F.3d 610, 619 n.1 (D.C. Cir. 1995) (Wald, J., concurring).

*Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 855–56 (D.C. Cir. 2006) (internal citations omitted).  *Chevron* review proceeds in two steps: First, the court asks whether Congress has "directly spoken" to the issue, *Chevron*, 467 U.S. at 842.  Second, if Congress has not clearly expressed its intent on the matter, the court moves to the second step, deferring to the agency's interpretation as long as it "is based on a permissible construction of the statute."  *Id.* at 843.

All of the three circuit courts to have reviewed the 2005 BOP regulations have held them to be invalid.  *See Levine*, 455 F.3d at 87; *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall*, 432 F.3d at 248–49.  Many district courts have also reviewed the regulations and are

roughly split on the question of their validity. *See Woodall*, 432 F.3d at 244, nn.9–10 (collecting cases).

The court concludes that the reasoning of the three circuit courts is persuasive. The plain language of the statute obliges BOP to consider each of the factors outlined in 18 U.S.C. § 3621. These factors are individualized to the circumstances of each prisoner, and BOP's attempt to categorically exercise its discretion to refuse to consider designating any prisoners to CCCs, except for during the last ten percent of their prison terms, is plainly contrary to the mandate of the statute. Moreover, its purported categorical exercise of discretion in this regard makes it impossible to take into account any statement by the sentencing court "recommending a *type* of penal or correctional facility," as the statute directs. 18 U.S.C. § 3521(b)(4)(b) (emphasis added). Congress's use of the word "and" in articulating the list of factors makes its intent clear: Each factor must be considered, including those which are unique to each prisoner. *Levine*, 455 F.3d at 86–87; *Woodall*, 432 F.3d at 245. As the Third Circuit has observed, "the statute indicates that BOP *may* place a prisoner where it wishes, *so long as* it considers the factors enumerated in § 3621." *Woodall*, 432 F.3d at 245; *Levine*, 455 F.3d at 85 ("The BOP is not empowered to implement selectively the instructions given by § 3621(b), by picking and choosing those factors that it deems most compelling."); *Fults*, 442 F.3d at 1092 ("Nothing in § 3621(b) suggests that consideration of the factors is optional.").

This reading is further supported by the statute's legislative history. A report from the Senate Judiciary Committee explains that BOP is "specifically required to consider" the enumerated factors, including "the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case,

19

[and] any recommendations as to type of facility made by the court." S. Rep. No. 98-225 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3324–25; *see Woodall*, 432 F.3d at 245–46 (discussing Senate Report); *Levine*, 455 F.3d at 82 (same).

BOP points indirectly to *Lopez v. Davis*, 531 U.S. 230 (2001), to argue that its purported "categorical" exercise of its discretion was proper. In *Lopez*, the Supreme Court upheld the validity of a BOP rule that categorically excluded certain inmates convicted of nonviolent offenses (but whose crimes also involved the use, carrying, or possession of a firearm) from early release after completion of a drug program. *Id.* at 243–44. The BOP policy in *Lopez* differs, however, from the policy challenged here. Most obviously, the governing provision in *Lopez*, 18 U.S.C. § 3621(e)(2)(B), grants unfettered discretion to BOP. Under that provision, in making its early-release determinations, BOP "*may*" reduce eligible inmates's sentences. *Id.* The subsection *requires* nothing. As the Eighth Circuit explained (in the decision affirmed by *Lopez*), § 3621(e)(2)(B) does not require BOP to make "individual, rather than categorical, assessments of eligibility." *Bellis v. Davis*, 186 F.3d 1092, 1094 (8th Cir. 1999); *see also Lopez*, 531 U.S. at 237 (summarizing *Bellis*). Section 3621(b), in contrast, requires BOP to do precisely that which § 3621(e)(2)(B) does not: conduct an individualized determination, considering each of the enumerated factors.

In *Lopez*, the Court observed that "'[e]ven if a statutory scheme requires individualized determinations,' which this scheme does not, 'the decisionmaker has the authority to rely on rulemaking to resolve certain *issues of general applicability* unless Congress clearly expresses an intent to withhold that authority.'" *Id.* at 243–44 (quoting *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991)) (emphasis added). The § 3621(b) confinement determination does not lie

within the ambit of this rule.  As the Third Circuit wrote, "sentencing recommendations and other individual factors . . . are not generally applicable.  Moreover, Congress *did* appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors."  432 F.3d at 247; *see also Levine*, 455 F.3d at 86–87 (distinguishing *Lopez*); *Fults*, 442 F.3d at 1090–91 (same).

BOP's contravention of the statute is not limited to its refusal to make an individualized determination of the place of imprisonment, taking into consideration all the factors enumerated in the statute.  It is also obligated, so long as CCCs remain in operation and are locations to which BOP *can* designate prisoners, to include those facilities as available options for confinement when it does make the necessary individualized confinement determinations.  *See* 18 U.S.C. § 3621 (requiring BOP to designate the place of imprisonment and granting BOP discretion to designate "any available penal or correctional facility" that meets minimum health standards and that BOP deems appropriate based on its consideration of the enumerated individualized factors); *Levine*, 455 F.3d at 82 n.8 (holding that so long as CCCs are available facilities on BOP's "roster" of "places of imprisonment," BOP "must comply with the factors made mandatory by Congress in assigning prisoners to them"); *see also Goldings*, 383 F.3d at 25 (rejecting BOP's argument that a CCC did not constitute a "place of imprisonment" for purposes of § 3621).

Regardless of whether Jasperson's claim is construed as an APA claim or as a nonstatutory claim, the result is the same.  In publishing the 2005 regulations and in abiding by them in designating Jasperson to a federal prison camp, BOP violated a clear statutory directive to make an individualized confinement determination, taking into account the type-of-facility

21

recommendations of the sentencing judge, and including all available facilities in that individualized determination. The court is satisfied that Jasperson has shown a substantial likelihood of success on the merits of his claim.

**2.      Irreparable Harm**

Jasperson alleges irreparable harm in that BOP's failure to properly apply the statute to his confinement designation will prevent him from possible assignment to a CCC, where he could maintain his business. The Bureau's decision not to make an individualized assessment did create irreparable harm, in that (1) it deprived Jasperson of a statutory right (to an individual determination that took into account both his circumstances and the possibility of CCC confinement); and in that (2) the shortness of his sentence and the Bureau's refusals to respond to his administrative appeals demonstrate that if an injunction does not issue, Jasperson will be denied his rights under the statute from the moment he surrenders to BOP custody.

**3.      Substantial Harm to the Defendants and Whether Relief Would Benefit the Public Interest**

Finally, the court must inquire whether the issuance of injunctive relief would substantially harm the defendants and whether such relief is in the public interest. The administrative cost of making a determination of the sort Jasperson seeks would be exceedingly minor, and is, in fact, required by statute. The court sees no potential "substantial harm" that would flow from issuing the injunction. Jasperson remains under court supervision pending his submission to BOP confinement and allowing him to remain free from confinement pending the

outcome of this litigation does not appear to create a significant threat to the public.  Similarly, the court considers issuing the relief to be in the public interest.[8]

### III. CONCLUSION

For the foregoing reasons, the court concludes that Jasperson has made the required four-part showing to obtain preliminary injunctive relief.


Henry H. Kennedy, Jr.
United States District Judge


Dated: October 30, 2006

---

[8] Jasperson's challenge to the 2005 BOP policy is not a "civil action with respect to prison conditions" by a "person[] confined in prison," *see* 18 U.S.C. § 3626, and therefore is not subject to the limitations imposed in the Prison Litigation Reform Act.  *See supra* Part II.B.3.a(1) (concluding that Jasperson is not confined in prison).

23