UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK D. JASPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1488 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| _____and | ) | |
| | ) | |
| HARLEY LAPPIN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR RECONSIDERATION AND REQUEST FOR FINAL JUDGMENT ON THE MERITS

Comes now the Defendants, Federal Bureau of Prisons and Harley G. Lappin, Director, Federal Bureau of Prisons, by and through undersigned counsel, and respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (3), (6), and 60(b)(6) to reconsider the grant of preliminary injunction in this case. In addition, defendant moves the Court for entry of final judgment on the merits pursuant to Fed. R. Civ. P. 12, 54 and 58.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____/s/_____
CHARLOTTE ABEL, DC Bar #388582
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MARK D. JASPERSON,                    )
                                      )
            Plaintiff,                )        Civil Action No. 06-1488 (HHK)
                                      )
      v.                              )
                                      )
FEDERAL BUREAU OF PRISONS,            )
                                      )
_____and                            )
                                      )
HARLEY LAPPIN,                        )
                                      )
            Defendants.               )
                                      )


MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION AND
REQUEST FOR FINAL JUDGMENT ON THE MERITS

        This is an action brought by Mark D. Jasperson who was sentenced to an imprisonment

term of four months.  In the Judgment and Commitment Order, the sentencing judge made "a

strong recommendation" that Mr. Jasperson serve his imprisonment term in a halfway house in

Florida.  The Federal Bureau of Prisons (BOP) did not place Mr. Jasperson in a halfway house in

light of a new regulation passed in 2005.  Instead, the BOP designated the defendant to be housed

at a Federal Prison Camp in Atlanta, Georgia.

        This Court granted plaintiff's preliminary injunction.  The Court found that plaintiff

demonstrated a substantial likelihood of success on the merits since the three circuit courts to

have reviewed the 2005 BOP regulations have held them to be invalid.  The Court found that the

plain language of the statute dictates that BOP consider each of the factors outlined in 18 U.S.C.

2

§ 3621 for each prisoner.  The Court also found that plaintiff would suffer irreparable harm if he surrendered to BOP custody and that BOP and the public would be unharmed by the issuance of an injunction.  The defendant is not yet in custody.  The Court has continued the stay of plaintiff's obligation to report to the Bureau of Prisons for confinement.  The Defendants maintain that this Court has no jurisdiction to hear this matter as the defendant is not yet in custody.  His claim is one that falls within habeas corpus relief and is not yet ripe.  The Court erroneously construed this action under the APA.  For these reasons, the Court should reconsider the grant of a preliminary injunction under Rule 60(b) which provides for relief from a judgment or order for "any...reason justifying relief from the operation of the judgment."  Defendants also move under Rule 12 for entry of a final judgment on the merits from which an appeal may lie as provided for in Rule 54 and 58(d) of the Federal Rules of Civil Procedure.  Despite the opportunity, plaintiff has not filed a dispositive motion.  Aside from the issues raised in defendant's motion for reconsideration, there are no more contested issues between the parties to be decided by this Court.

## Statutory and Regulatory Background

Congress has conferred upon the BOP the discretion to designate an inmate's place of confinement.  Section 3621(b) provides in pertinent part:

> The Bureau *may* designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
> (1)    the resources of the facility contemplated;
> (2)    the nature and circumstances of the offense;
> (3)    the history and characteristics of the prisoner;
> (4)    any statement by the court that imposed the sentence—

> (A)     concerning the purposes for which the sentence to imprisonment
>         was determined to be warranted; or
> (B)     recommending a type of penal or correctional facility as
>         appropriate; and
>
> (5)     any pertinent policy statement issued by the Sentencing Commission
>         pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this
> subsection, there shall be no favoritism given to prisoners of high social or
> economic status.  The Bureau may at any time, having regard for the same matter,
> direct the transfer of a prisoner from one penal or correctional institution to
> another.

Federal law provides for the placement of federal prisoners in non-prison sites such as

halfway houses shortly before the conclusion of their sentences to allow the prisoners an

opportunity to adjust to the community prior to their release.  This "pre-release custody" is

governed by 18 U.S.C. § 3624(c), which provides to the extent practicable that such placement

will take place during the last ten percent of a prisoner's sentence, not to exceed six months:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a
> term of imprisonment spends a reasonable part, not to exceed six months, of the last 10
> per centum of the term to be served under conditions that will afford the prisoner a
> reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the
> community.

18 U.S.C. § 3624(c)(emphasis added).  BOP had followed a practice of designating certain

offenders to halfway houses with short sentences when the sentencing court made such a judicial

recommendation in the Judgment and Commitment Order and the inmate's custody classification

allowed for such placement.

In 2002, the BOP abandoned this practice initially as a result of an opinion issued by the

Office of Legal Counsel.  Subsequently, this change in practice was published as a proposed rule

for notice and comment.  See 71 F.R. 47696.  The proposed rule was adopted on January 10,

2005.  See 28 C.F.R. § 570.21.  Accordingly, pursuant to the Department of Justice's interpretation of § 3624(c), the Bureau of Prisons does not house inmates in pre-release community confinement for any longer than a reasonable portion of the least of the last ten percent or six months of the inmates' sentences.  Thus, inmates are no longer serving entire sentences in halfway houses.

## I.    THE COURT'S CONSTRUCTION OF THE PLAINTIFF'S CASE AS ONE CHALLENGING THE BOP'S RULEMAKING UNDER THE ADMINISTRATIVE PROCEDURE ACT IS ERRONEOUS.

The Court erroneously construes this case as one in which "[the plaintiff] challenges the 2005 agency rulemaking, which informs the imprisonment determination made regarding him." Court Order, at 9.  The Court went on to explain that § 3625 and its preclusive effect did not apply to challenges to rulemaking.  Id. at 10.  The Court relies on Lyle v. Sivley, 805 F.Supp. 755 (D.Ariz. 1992) and Wiggins v. Wise, 951 F.Supp. 614 (S.D.W.Va. 1996) and states that "[l]ike the petitioner in Wiggins and unlike the petitioner in Lyle, Jasperson challenges the rulemaking leading to the BOP policy that informed his confinement determination." Id. at 11.  The Wiggins case involved a challenge to a BOP interpretive rule, which according to the plaintiff, did not comply with the notice and comment provision of the APA.  See Wiggins, supra, at 618.

Pursuant to the APA, before an agency may promulgate "legislative rules or regulations," it must first must provide all interested parties with notice of the proposed rule and the legal authority under which the rule is proposed, and it must allow interested parties to comment and participate in the rulemaking process.  See 5 U.S.C. §§ 553(b) and (c).  These "legislative rules and regulations" are those rules that are intended to "create new law, rights or duties . . . ." General Motors Corp. v. Ruckelshaus, 742 F.2d 1561, 1565 (D.C. Cir. 1984), cert. denied, 471

U.S. 1074 (1985). The BOP complied with the subsection of the APA requiring notice and

comment prior to promulgation of "legislative rules or regulations" when issuing the challenged

regulation. See 5 U.S.C. § 553 and Proposed Rule 69 F.R.51213-01 (August 18, 2004). The

BOP published the proposed rule for comments in August 2004, after a period open for

comments, and the final rule was published on January 10, 2005. 70 F.R. 1659-01. Thus, the

BOP complied with its rulemaking obligations under the APA.

### A.    Determinations Regarding Halfway House Placement Are Not Subject to Judicial Review Under the Administrative Procedure Act

The APA, by its own terms, does not apply where another statute bars judicial review.

See 5 U.S.C. § 701(a)(1). The BOP's designation decisions, including those related to 18 U.S.C.

3624(c), are precluded from review under this provision. Specifically, such decisions are

precluded from APA review by 18 U.S.C. § 3625, entitled "Inapplicability of the Administrative

Procedure Act," which provides:

> The provisions of section 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision or order under this subchapter.

The legislative history of section 3625 makes clear that this preclusion of judicial review

is quite broad:

> Section 3625 makes clear that certain provisions of the Administrative Procedure Act do not apply to any determination, decision or order of the Bureau of Prisons. This result is in accordance with recent case law, and will assure that the Bureau of Prisons is able to make decisions concerning the appropriate facility, corrections program, and disciplinary measures for a particular prisoner without constant second guessing.  The provision, of course, would not eliminate, and is not intended to eliminate, constitutional challenges by prisoners under the appropriate provisions of law.

H.R. Rep. No. 98-1030, 98th Cong. 2d Sess. 149 (1984), reprinted in 1984 U.S.C.C.A.N. 3182,

6

3332. (emphasis added).  Referring to this legislative history, one court has explained:

> While some might dispute Congress' use of the somewhat pejorative term "second guessing" in reference to the exercise of the federal judicial power, the message rings loud and clear. In light of the overwhelming evidence of congressional intent, this Court concludes that in enacting section 3625, Congress intended to "carve out" an area of decision making committed solely to agency discretion and not subject to judicial review.

Lyle v. Sivley, 805 F.Supp. 755, 759 (D. Ariz. 1992).

This Court distinguished this case by finding that the plaintiff is challenging the BOP's rule making and is not challenging the decision to not place him in a halfway house.  Order, at 9. However, the Court's construction of this case as one challenging the BOP rulemaking is incorrect as the BOP clearly complied with the APA notice and comments requirements.  Thus, this Court is bound by the express terms of § 3625, and may not review the BOP's decisions regarding halfway house custody under the APA.  See Eaton v. United States, 178 F.3d 902, 903 (7th Cir. 1999).

In Eaton, the plaintiff challenged the terms under which the BOP had transferred him to a halfway house.  The district court ruled against him on the merits.  However, the Seventh Circuit held that the district court lacked jurisdiction to even consider the plaintiff's claim.  Id.  Citing § 3625, the Court stated: "The Bureau's decision to transfer Eaton to the halfway house was not judicially reviewable."  Id.  See also National Coalition to Save Our Mall, 269 F.3d 1092, 1094 (D.C. Cir. 2001) (affirming district court's conclusion that Act of Congress precluded judicial review of agency action regarding World War II Memorial).

### B.    The Evidence Before The Court Establishes That BOP Did Not Violate the APA in Issuing the February 2005 Rules

The APA requires that agency action be upheld unless it is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court "will not substitute [its] own judgment for that of the agency, but will examine only 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,' whether the agency's policy choice is supported by 'substantial evidence,' and 'whether there is a rational connection between the facts and the choice made.'"Wisconsin Valley Improvement v. F.E.R.C., 236 F.3d 738 (D.C. Cir. 2001).

The BOP promulgation of the 2005 regulations was not arbitrary and capricious. While the different circuit courts have struck down the regulations, these rulings have come from split courts. See e.g., Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir. 2005); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006). See Cellular Phone Taskforce v. FCC, 205 F.3d 82, 90-91(2d Cir. 2000) ("As long as all of the evidence has been considered, . . . a factual finding that is supported by more than a scintilla of the evidence is not arbitrary and capricious simply because there is conflicting evidence"). These decisions were rendered within the context of petitions for habeas corpus relief, which is the proper mechanism to challenge the "execution of sentence," and all the petitioners were in custody. The majority opinions still acknowledged that BOP is not obligated to assign inmates to a Halfway house, in other words inmates do not have a right to be housed in a Halfway house. Instead, the BOP is only required to make a good faith effort in considering whether to house an inmate in a halfway house. The majority opinions disregarded the time limitation for the placement of inmates in halfway houses found in §3624(c) and this improper construction of the statutes will lead to results inconsistent with the Congressional intent.

The Second Circuit majority opinion would "give the BOP discretion to transfer an

inmate to a [halfway house] for a period longer than six months or ten percent of his sentence."
Levine, at 75.  The Second Circuit's failure to address the language "not to exceed six months"
would permit the transfer of an inmate to a halfway house at any time during his sentence until
the last ten percent of his or her sentence.  Id.

The Third Circuit found that "§3624 does not determine when the BOP should *consider*
Halfway house placement, but when it must provide it." Woodall, at 250 (emphasis in original)).
Thus, under the Third Circuit reasoning, inmates could be transferred to a halfway house at any
time during their confinement also.  The Eighth Circuit agreed with the Third Circuit, and found
"that the BOP's regulation removed the opportunity for the BOP to exercise discretion for all
inmates not serving the last ten percent of their sentences" and as a result is in conflict with §
3621(b).

The Tenth Circuit just recently joined those courts in Wedestedt v. Wiley, 2007 WL
512517 (10th Cir. February 20, 2007).   The Tenth Circuit reasoned that the BOP was bound to
consider all the enumerated factors, and in so doing adopted the reasonings of the Third Circuit
and Second Circuit courts.  Id. at 5.  The Court found no conflict between § 3624 (c) and 3621(b)
but instead concluded that §3624(c) "has no bearing on whether a Halfway house may be
considered as a place of imprisonment at some earlier point in a prisoner's period of
incarceration."  Id.     The Court then ordered the BOP to consider the enumerated factors in §
3621(b) in determining whether to transfer the inmate to a Halfway house.

These four circuit court opinions came from split courts.  The dissenting opinions found
that the BOP's decisions  regarding halfway house placement were appropriate under the
statutory construction adopted by the agency and raised persuasive arguments about the flaws in

the majority opinions thereby undermining the courts' conclusion that the BOP's regulations are invalid.

In Woodall, Judge Fuentes dissented because ". . . the § 3621(b) factors need not be considered by the BOP until an inmate is actually considered for a transfer, and that the BOP is not required to consider any inmate for transfer to a [halfway house] until the lesser of six months or ten percent of an inmate's sentence remains." Id. at 251 (Fuentes, C.J., dissenting). The judge explained the statute § 3621(b) itself does not have any built in time limitation. However, § 3624(c) does limit halfway house placement to the lesser of six months or ten percent of an inmate's sentence.   Thus, Judge Fuentes concluded that "[u]ntil that point . . . the BOP may categorically preclude the consideration of any inmate for [halfway house] transfer without reference to the § 3621(b) factors, under the Supreme Court's holding in Lopez." Id. This reasoning would make the application of the statutes consistent with one another and would take into account the time limitations present in § 3624(c).

In Fults, Judge Riley agreed with Judge Fuentes' reasoning and explained that the categorical rules were not in conflict with the enumerated factors in § 3621(b).  Fults, supra, at 1093 (Riley, C.J., dissenting).  In Levine, Judge Raggi considered the new regulation as a ". . . permissible categorical rejection of halfway houses as appropriate and suitable facilities for 3621(b) designations generally with . . .  limited exception[s]." Id.., at 88 (Raggi, C.J., dissenting).  First, Judge Raggi reasoned that the regulation merely eliminated halfway houses as the type of facility where inmates would serve sentences when the five factors are taken into account.  Id.  Second, Judge Raggi found that the time limitation for the use of halfway house placement has a well reasoned purpose, namely, for pre-release preparation, which is statutorily

mandated.  Id. at 89.  Third, Judge Raggi found the categorical exclusion of the five factors in §

3621(b) was supported by Lopez v. Davis.  Id. at 90.

In the Tenth Circuit case, Wedelstedt, Judge Hartz found

a BOP regulation governing a particular housing choice can be entirely consistent with
3621(b) even if the regulation does not require consideration in some circumstances of
one, or more, of the factors listed in the statute.  When experience or common sense
shows that the housing decision will be the same no matter what the evidence regarding a
particular factor, the BOP need not go through the motions of collecting the evidence and
noting that the one factor cannot outweigh the others in the particular circumstance.

Wedelstedt, supra, at 10 (Hartz, C.J., dissenting).  Judge Hartz, troubled by the results that would

ensue from the majority's ruling, delved in depth into the practicalities of the application of the

regulations as construed by the majority and explained,

The five factors in § 3621(b) are to be used in making housing determinations in a wide
variety of circumstances.  Some factors will be more important, perhaps much more
important, than other factors in certain circumstances.  Experience, or common sense,
may reveal that in a particular set of circumstances one of the factors-call it factor A-
simply cannot overcome the weight of the other factors.  Accordingly, there is no need to
engage in fact-finding or analysis regarding factor A in individual cases within that set of
circumstances.  Recognition of that reality is not contrary to a directive to consider factor
A in that context and determined that the outcome will be the same no matter what
specific facts regarding the factor.

Consider a prisoner sentenced to death for a terrorism offense.  The prisoner seeks to be
housed in a minimum-security facility.  Is it really necessary for the BOP to check the
prisoner's file to see whether, under factor (3), he had bright spots in his history or
characteristics?  I cannot believe that Congress could have intended to require such
useless effort.

We should read statutory language as if it were written by human beings.  Say the
company president sent out a directive stating:
            Managers shall select the appropriate mode of transportation for each trip on
            company business by a subordinate, considering
                        (1)    the cost of the mode of transportation,
                        (2)    the travel time using that mode of transportation,
                        (3)    the safety of the mode of transportation, and
                        (4)    the impact of the mode of transportation on the appearance and

11

> functioning of the employee upon arrival at the business
> destination.
> Would the head of the international-business division be fired for insubordination if she
> orders that anyone traveling to Beijing should travel by jet (not, for example, boat)? Of
> course not. And if one should read such a mandate in the real world as permitting general
> rules, I do not see why we should assume that Congress is using similar language in a
> more rigid, unreasonable manner.

Id. at 9.

The circuit majority opinions ignored the Congressional intent behind § 3624(c) and

made it inconsistent with the application of § 3621(b). §3624(c) restricts the use of halfway

houses as a place of confinement to strictly cases in which the inmate is serving the least of the

last six months of his sentence or ten percent. Judge Hartz clearly articulates the practical

consequences of construing the statutes as the majority does and bases his opinion in "common

sense and experience" which the BOP has, as the agency managing all federal prisons.

### (1)    The Promulgation of the 2005 Regulations was Justified and Reasonable

With respect to rules promulgated under APA's notice-and-comment procedure, an

agency is not required to discuss every fact or opinion contained in public comments. See, e.g.,

Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1487 (9th Cir. 1992) ("An agency is not

required to adopt a rule that conforms in any way to the comments presented to it. So long as it

explains its reasons, it may adopt a rule that all commentators think is stupid or unnecessary");

Mortgage Investors Corp. of Ohio v. Gober, 220 F.3d 1375 (Fed. Cir. 2000); Tindal v. Block,

717 F.2d 874 (4th Cir. 1986), cert. denied, 465 U.S. 1080 (1983). As set forth below, BOP

adequately explained its reasons for issuing the February 2005 Rules, and its decision was

reasonable.

### (a)     Eliminating Favoritism and Encouraging Consistency of Treatment

BOP properly took into account § 3621(b)'s prohibition against "favoritism given to prisoners of high social or economic status," stating that the February 2005 Rules were intended to "promote Congress' goal of eliminating unwarranted disparities in the sentencing and handling of inmates and also eliminate any concern that the [BOP] might use community confinement to treat specific inmates leniently."  60 Fed. Reg. 51214.

BOP reasonably explained that a primary reason for issuing the February 2005 Rules was to eliminate any <u>appearance</u> that its policy would be applied disparately.  <u>See</u> 70 Fed. Reg. 1661. Though BOP did not provide "empirical support" for its concerns, BOP's rationale was supported by <u>Lopez v. Davis</u>, 531 U.S. 227 (2001).

This Court rejects the BOP's assertion that its categorical exercise of discretion in the 2005 regulation is supported by <u>Lopez</u>.  The Court distinguishes <u>Lopez</u> from this case by stating that in <u>Lopez</u>, the statute in question granted unfettered discretion to BOP.  Court Order at 20.  In <u>Lopez</u>, the Supreme Court approved BOP's categorical exercise of its discretion to limit eligibility for early release under § 3621(e), holding that case-by-case decisionmaking could, as here, "<u>invite</u> favoritism, disunity and inconsistency."  531 U.S. at 244 (emphasis added).  In the promulgation of the 2005 regulations, the BOP by categorically exercising its discretion under the statute created uniformity and consistency in decisionmaking thereby eliminating the appearance of favoritism that would surface with cases involving inmates of higher income, just as the petitioner.

**(b)     Ensuring That Halfway House Resources Are Used To Their Maximum Benefit**

Similarly, BOP based the February 2005 Rules on its judgment that halfway houses are "particularly well suited as placement options for the final portion of offenders' prison terms." 69 Fed. Reg. 51214.  This court has stated that BOP "is also obligated, so long as halfway houses remain in operation and are locations to which BOP can designate prisoners, to include those facilities as available options for confinement when it does make the necessary individualized confinement determinations."  Court Order, at 21.   BOP explained reasonably that after taking a "closer look at the particular advantages and characteristics of [halfway houses]," it determined that they are "best suited to particular inmates during the last ten percent of the prison sentence being served, not to exceed six months."  Its conclusion is buttressed by Congress' implicit determination in § 3624 that placement of an inmate in a facility such as halfway house for a "reasonable part . . . of the last 10 per centum of the term to be served" would "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."  70 F.R. 1662 (citing § 3624 (c); the February 2005 Rule is "consistent with congressional judgments as to the appropriate and reasonable amount of time to be spent in pre-release custody)."

**(i)     BOP Was Properly Guided By the Sentencing Guidelines**

Although assuming that § 3621 permits it to place inmates at halfway houses at any time during their sentences, BOP properly took into account the Sentencing Guidelines, distinguishing imprisonment from community confinement for the purpose of sentencing.  See United States v. Adler, 52 F.3d 20 (2d Cir. 1995) (interpreting § 5C2.1(d) of Guidelines as requiring inmates to

14

satisfy part of split sentence in prison, and not in community confinement). BOP bases the February 2005 Rules, in part, on policies underlying the Sentencing Guidelines and not on the former mandatory nature of the Guidelines. See 70 Fed. Reg. 1661 ("in our discretion, we consider it appropriate to analyze the Guidelines as one of many factors we consider in making this rule").

In sum, BOP's promulgation of the February 2005 Rules was not arbitrary or capricious in violation of the APA.

## II.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS

### A.    The BOP is Entitled to Deference in the Promulgation of the 2005 Regulation

Contrary to the Court's assertion, the BOP is entitled to deference in its interpretation of the 2005 regulation. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984); accord Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes they are charged with administering"). Courts should presume that "Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, 517 U.S. at 740-41. As the agency responsible for administering 18 U.S.C. § 3621, see United States v. Wilson, 503 U.S. 329, 335 (1992), BOP's interpretation of that statute therefore deserves deference.

This Court concurs with the three circuit courts that have invalidated the 2005 BOP regulations and concludes that the BOP is not entitled to Chevron deference . Order, at 18.

However, the BOP respectfully submits that the BOP regulations meet the Chevron two-step analysis for reviewing an agency's statutory construction.   The analysis begins with "whether Congress has directly spoken to the precise question at issue"; if Congress's intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. "If, however, the court decides that the statute is ambiguous, then the court determines only whether the agency's interpretation is a reasonable one." America's Community Bankers v. FDIC, 200 F.3d 822, 834 (C.A.D.C. 2000).  Under this second step, the agency's construction is accorded substantial deference, United States v. Mead Corp., 533 U.S. 218, 227-28 (2001) ("'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer'" (citation omitted)), and will be upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute," Chevron, 467 U.S. at 844.

"In making this assessment, '[i]t is not necessary that [a court] conclude that the agency's interpretation of the statute is the only permissible interpretation, nor that [a court] believe it to be the best interpretation of the statute.'" Michel, 206 F.3d at 263 (quoting Skubel v. Fuoroli, 113 F.3d 330, 336 (2d Cir. 1997)); accord Mead, 533 U.S. at 299 ("a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise").  Thus, an agency's statutory construction will not be disturbed if it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' express intent." Rust v. Sullivan, 500 U.S. 173, 184 (1991).

Furthermore, an agency's revised interpretation of a statute is entitled to deference, even

16

if it marks a departure from a prior reading.  See Rust, 500 U.S. at 186 ("This Court has rejected

the argument that an agency's interpretation `is not entitled to deference because it represents a

sharp break with prior interpretations' of the statute in question") (quoting Chevron, 467 U.S. at

862).  Specifically, an agency's revised interpretation of a statute merits deference because "[a]n

initial agency interpretation is not instantly carved in stone" and because the agency "must

consider varying interpretations and the wisdom of its policy on a continuing basis."  Chevron,

467 U.S. at 863-64.    An agency rule will be found to be arbitrary and capricious "where an

agency departs from established precedent without a reasoned explanation" and clearly such is not

the case here. See Wisconsin, supra, at 748.  Accordingly, BOP's current rule interpreting

§ 3621(b), which was adopted through the notice-and-comment process, is entitled to substantial

deference under Chevron.  Schneider v. Feinberg, 345 F.3d 135, 142 (2d Cir. 2003) ("Chevron

deference is clearly owed to regulations adopted by formal rule-making after notice and

comment") (citing Christensen v. Harris County, 529 U.S. 576, 586-87 (2000)).

**B.      Section 3621(b) Does Not Require BOP to Consider Inmates for any Facility**

Section 3621(b) vests BOP with discretion to "designate the place of the prisoner's

imprisonment," including "any available penal or correctional facility that meets minimum

standards of health and habitability established by the Bureau."  18 U.S.C. § 3621(b).  Likewise,

BOP "may at any time . . .  direct the transfer of a prisoner from one penal or correctional facility

to another."  Id.  Under its statutory authority, BOP has the sole discretion to determine where a

prisoner should be designated to serve his term of imprisonment.  Thye v. United States, 109

F.3d 127, 130 (2d Cir. 1997) ("[d]ecisions to place a convicted defendant within a particular

treatment program or a particular facility are decisions within the sole discretion of the Bureau of

17

Prisons"); <u>see generally</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 467 (1983)(prison officials have "broad administrative and discretionary authority over the institutions they manage").

Thus, as a threshold matter, given BOP's unfettered authority, individuals such as Mr. Jasperson do not have the statutory right under § 3621(b) to require that BOP consider them for housing at a halfway house or any other facility.  <u>See, e.g.,</u> <u>Goldings</u>, 383 F.3d at 33 (Howard, J., concurring) (stating that "just because the BOP may assign prisoners to Halfway houses does not mean that it must do so" and "nothing in § 3621(b) requires BOP to give any particular level of consideration to an assignment or transfer request").  Nowhere does the statute require the BOP to consider transferring any inmate to any particular facility").

### C.     BOP Properly Exercised Its Discretion In a Categorical Manner By Limiting Placement in Halfway Houses to the Last Ten Percent of a Prisoner's Sentence Served, Not to Exceed Six Months

In assuming that BOP has discretion under § 3621(b) to place inmates in Halfway houses at any point during their term of imprisonment, the February 2005 Rules are consistent with the reasoning of the First and Eighth Circuits, as well as district courts within this Circuit, that invalidated the December 2002 Policy.  The common thread in each of the decisions was that BOP erroneously had failed to recognize its discretion under § 3621(b) to designate prisoners to a term of imprisonment in a Halfway house at any time during the prisoner's sentence, even prior to when the lesser of ten percent or six months remained on an inmate's sentence.  <u>See, e.g.,</u> <u>Elwood</u>, 386 F.3d at 847; <u>Goldings</u>, 383 F.3d at 28.  In response to these decisions, BOP promulgated the February 2005 Rules, assuming it possessed discretion under §§ 3621(b) and 3624(c) to place a prisoner sentenced to a term of imprisonment in a Halfway house at any time

18

during the term.  70 Fed. Reg. at 1660-61.

BOP properly exercised that discretion in the February 2005 Rules categorically to limit the period an inmate may be placed in a Halfway house.  See 28 C.F.R. § 570.20-21; 70 Fed. Reg. 1659.  BOP's categorical exercise is supported by numerous cases holding that an agency may categorically exercise the discretion Congress has statutorily granted it.  See, e.g., Lopez, 531 U.S. at 233-34; Warren v. Miles, 230 F.3d 688, 693-94 & n.4 (5th Cir. 2000); Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir. 2000); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998); Jacks v. Crabtree, 114 F.3d 983, 985-86 (9th Cir. 1997); Yang v. INS, 79 F.3d 932, 936 (9th Cir. 1996).

Indeed, while this Court rejects the BOP assertion that its interpretation of the statute falls within the parameters set by Lopez, Lopez presented strikingly similar issues to those before this Court (and one expressly relied on by BOP in proposing the February 2005 Rules, see 69 Fed. Reg. 51213).  The Lopez Court addressed BOP's categorical exercise of its statutory discretion under 18 U.S.C. § 3621(e)(2)(b), a sub-division of the statutory section at issue here, providing that the "period a prisoner convicted of a violent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau."[1]  Under review in Lopez was a

_____

[1]    The history of the rule in Lopez closely parallels the change in BOP policy in this case.  As summarized by the Ninth Circuit,

For some time, the Bureau has been of the belief that a prisoner whose crime of conviction involved the possession, carrying, or use of a firearm should be ineligible for early release.  At first, the Bureau implemented that belief by decreeing [in a statement not promulgated through notice-and-comment rulemaking] that those possessors of firearms had committed crimes of violence, and, therefore, had not been "convicted of a nonviolent offense" [as required by statute for eligibility for the early-release program].  We declared that the Bureau thereby misinterpreted the meaning of "nonviolent offense" because it could not declare that possession of a firearm, either as the very offense of

19

BOP regulation pursuant to which inmates convicted of non-violent crimes involving firearms were ineligible for relief.  28 C.F.R.  550.58(a)(1)(iv)(B).

In upholding BOP's rule, the <u>Lopez</u> Court "reject[ed the petitioner's] argument . . . that the agency must not make categorical exclusions, but may rely only on case-by-case assessments."  531 U.S. at 243.  The Court explained, even where a statutory scheme requires individualized determinations (which was not the case in <u>Lopez</u>), "'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'"  <u>Id.</u> at 243-44 (quoting <u>American Hospital Association v. NLRB</u>, 499 U.S. 606, 612 -13 (1991)).  The Court further held that BOP "is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'"  <u>Id.</u> at 244 (quoting <u>Heckler v. Campbell</u>, 461 U.S. 606 (1983)).

Just as "§ 3621(e)(2)(B) vests broad discretion in the BOP to determine which individuals, among the group of statutorily eligible inmates convicted of nonviolent offenses, are appropriate candidates for early release," <u>Bellis v. Davis</u>, 186 F.3d 1092, 1094 (8th Cir. 1999), so too § 3621(b) vests BOP with broad discretion in determining where to designate inmates.

_____

conviction or as an enhancement, was itself enough to make a crime one of violence.

The Bureau acceded to that interpretation, but, not deterred from its continuing belief that individuals in that category should not be given early release into the community, it determined that it would not rest its categorical exclusion of them on a direct interpretation of the specific statutory language, "nonviolent offense."  Rather, it would exercise its discretion under the statute to refuse them early release, regardless of that language.

<u>Bowen v. Hood</u>, 202 F.3d 1211, 1217 (9th Cir. 2000) (citations omitted).  The court held that the BOP had the power to "reach[] the same conclusion [as previously rejected by the court] on an entirely different ground," <u>id.</u> at 1219, and held that the BOP's new regulation was proper, <u>id.</u> at 1220.  The same rule was affirmed by the Supreme Court in <u>Lopez</u>.

BOP's decision to restrict Halfway house placements to prisoners serving the final ten percent of their sentences, not to exceed six months, is a lawful categorical exercise of the agency's placement discretion, just as the BOP's categorical exclusion of certain crimes from early release eligibility was lawful in Lopez. Further, as in § 3621(e)(2), no language in § 3621(b) precludes BOP from exercising its discretion categorically. See Warren, 230 F.3d at 694 n.4 ("section 3621 grants the BOP unfettered discretion . . . . [N]othing in section 3621 prevents the BOP from exercising that discretion categorically.").

Nor does § 3621(b)'s enumeration of a non-exhaustive list of designation considerations alter BOP's authority to announce a categorical application of that statute. Thus, even assuming arguendo that § 3621 requires BOP to make individualized determinations on inmates' housing requests, and it does not (see supra Point I.B.2), the Supreme Court has made clear that an agency may announce a categorical rule of general applicability, even where the statutory scheme calls for individualized determinations. Am. Hosp. Ass'n, 499 U.S. at 612.

At issue in American Hospital Association was a rule promulgated by the National Labor Relations Board concerning the number of employee units appropriate for collective bargaining at acute care hospitals. Id. at 608 (citing 29 C.F.R. § 103.30). Section 9(b) of the National Labor Relations Act states that the NLRB shall determine whether the designated unit is appropriate "in each case." 29 U.S.C. § 159(b). Notwithstanding that language, the NLRB promulgated a rule, 29 C.F.R. § 103.30, that provided that only eight employee units for collective bargaining shall be appropriate in any acute care hospital, with three exceptions in extraordinary circumstances. In upholding the regulation, the Supreme Court observed that "even if a statutory scheme requires individualized determinations, the decisionmaker has the authority to rely on rulemaking

21

to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Id. at 612.[2]

So too, in Richmond, the Seventh Circuit implicitly approved the February 2005 Rules. Although the case concerned a challenge to the December 2002 Policy, the court suggested that BOP's categorical exercise of its discretion in the February 2005 Rules would withstand judicial scrutiny, citing the Supreme Court decisions in Lopez and American Hospital Association. Richmond, 387 F.3d at 605 (stating that the Lopez decision shows that "discretion may be exercised by rule as well as by person-specific decision").

### D.    BOP Was Not Required To, but Did, Consider The Factors Enumerated in § 3621 When Issuing the February 2005 Rules

In promulgating the February 2005 Rules, BOP properly interpreted § 3621(b) as setting forth various factors that it was authorized, but not required, to consider in determining whether a facility was appropriate for designation.  See Cohen v. United States, 151 F.3d 1338, 1343-44 (11th Cir 1998) (discussing BOP's wide discretion to assign prisoners to any correctional facility, despite statutory factors); Goldings, 383 F.3d at 33 (Howard, J., concurring) (§ 3621 factors are "non-exclusive and do not bind or limit BOP's exercise of its discretion").

---

[2]    In cases in addition to American Hospital Ass'n, the Supreme Court has upheld an agency's reliance on rulemaking to resolve issues of general applicability, even where the governing statute calls for individualized assessments.  E.g., Heckler, 461 U.S. at 467; Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 41-44 (1964); United States v. Storer Broadcasting Co., 351 U.S. 192, 205 (1956).  The Court in Heckler held that, although the Social Security Act "contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing," the Secretary of Health and Human Services may nonetheless "rely[] on rulemaking to resolve certain classes of issues."  Heckler, 461 U.S. at 467.  The Court explained that "[a] contrary holding would require the agency continually to relitigate issues that may be established fairly and efficiently in a single rulemaking proceeding."  Id.

### 1.     Section 3621(b)'s Statutory Language and Legislative History Supports BOP's Interpretation

By its express language, § 3621(b) makes plain that BOP has the discretion, but not the duty, to consider the enumerated factors in making decisions whether to transfer inmates to Halfway houses and other facilities.  Congress's use of the word "may," as opposed to "shall," demonstrates that BOP was not required to consider each of the § 3621(b) factors in determining eligibility for Halfway house placement.  Indeed, in examining BOP's authority under § 3621(e), the Supreme Court has held that Congress's use of the word "may" as opposed to "shall" does not impose discretionless obligations.  Lopez, 531 U.S. at 241 (BOP had "authority, but not the duty" to reduce a prisoner's term following completion of drug treatment, based on Congress's decision to use the permissive "may" instead of the "mandatory 'shall'"); see also Mallard v. United States Dist. Court, 490 U.S. 296, 302 (1989).

Moreover,§ 3621(b) makes clear that its enumerated factors apply solely where BOP "direct[s] the transfer of a prisoner from one penal or correctional institution to another."  18 U.S.C. § 3621(b) (emphasis added).  Thus, the § 3621 factors are inapplicable here, as the February 2005 Rules do not "direct the transfer" of inmates from one institution to another, but instead limit eligibility for transfers to Halfway houses.

Additionally, the legislative history of § 3621(b) supports  BOP's construction.  The Senate Report states, "[BOP] is required to consider such factors as the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court . . ., and any pertinent policy statement issued by the Sentencing Commission . . . . ."  1984 U.S.C.C.A.N. at 3325 (emphasis added).

Other provisions in this same Committee Report show that the Committee did not intend to curb the BOP's discretion:

> The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, <u>does not intend to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau</u>, but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations.

S. Rep. No. 98-225, 1984 U.S.C.C.A.N. 3182, 3325 (emphasis added).  The cases relied on by this Court that invalidate the February 2005 Rules overlook this statutory language and history.

Finally, to the extent that this Court were to conclude that § 3621(b) is ambiguous in any way, it should defer to BOP's reasonable interpretation of the statute, which is consistent with the language of the governing statute and the legislative history, as well as with BOP's broad discretion over prisoner placements.  E.g., Smiley, 517 U.S. at 739 ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering.").

## 2.    BOP Did Consider § 3621(b)'s Statutory Factors In Promulgating the February 2005 Rules

In any event, though not required to, BOP did "carefully consider[] all of the statutorily-specified factors " in § 3621, as well as other factors, when promulgating the February 2005 Rules, and expressly listed the factors it deemed "most significant."  See 69 Fed. Reg. 51,213, 51,214 (Aug. 18, 2004) (proposed rule).

For example, one factor enumerated in § 3621(b) is "the resources of the facility contemplated."  18 U.S.C. § 3621(b)(1).  In proposing the February 2005 Rules, BOP reasoned that Halfway houses are "particularly well suited as placement options for the final portion of

offenders' prison terms," 70 Fed. Reg. at 1660, and that "[b]y ensuring that offenders sentenced

to prison terms not be placed in Halfway houses except during the last ten percent of their prison

sentences (not to exceed six months), the new rule will help ensure that Halfway houses remain

available to serve the purposes for which their resources make them best suited."  Id.

BOP also explained that it took into account "pertinent policy statements issued by the

Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2)," another statutory factor. 18 U.S.C. §

3621(b)(5).  As described above, BOP explained that the February 2005 Rules would support the

policy of the Sentencing Commission restricting the availability of community confinement in

lieu of imprisonment to certain limited situations provided in the Sentencing Guidelines.

Also considered was § 3621(b)'s statutory mandate that"[i]n designating the place of

imprisonment or making transfers under this subsection, there shall be no favoritism given to

prisoners of high social or economic status."  Id.  Pre-December 2002 Policy practices, "which

allowed individualized Halfway house decisions for each inmate upon initial prison designation,

created the possibility that it would unintentionally treat similar inmates differently."  70 Fed.

Reg. at 1660.  By creating uniformity in Halfway house placements, the February 2005 Rules

ensure that certain prisoners will not benefit from favoritism.  In this regard, the February 2005

Rules "promote Congress' goal of eliminating unwarranted disparities in the sentencing and

handling of inmates and also eliminate any concern that the Bureau might use community

confinement to treat specific inmates leniently."  Id.; see Lopez, 531 U.S. at 244 (affirming

BOP's categorical exercise of discretion and noting that "case-by-case decisionmaking in

thousands of cases each year . . . could invite favoritism, disunity, and inconsistency").[3]

In addition, the February 2005 Rules make clear that BOP continues to consider § 3621(b)'s nonexhaustive list of factors when making placement decisions.  Id. ("The Bureau will continue to evaluate these factors [set forth in § 3621(b)] when making individual designations to appropriate facilities, and this rule will not adversely affect such individualized determinations.").   Thus, while the February 2005 Rules set a maximum time limitation for Halfway house placement, they do not prevent BOP from conducting individualized determinations to establish if and when a prisoner would be transferred to a Halfway house within the last ten percent of his or her sentence.

## III.  THE PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM SHOULD DEFENDANTS PREVAIL

This Court found that the BOP's decision "not to make individualized assessment did create irreparable harm, in that (1) it deprived Jasperson of a statutory right (to an individual determination that took into account both his circumstances and the possibility of Halfway house confinement); and in that (2) the shortness of his sentence and the Bureau's refusal to respond to his administrative appeals demonstrate that if an injunction does not issue, Jasperson will be denied his rights under the statute from the moment he surrenders to BOP custody."  Court Order at 22.

---

[3]    The February 2005 Rules, moreover, expressly incorporate sentence length into the calculation of an inmate's Halfway house placement, a factor that clearly is relevant to an inmate's need for a community confinement placement for purposes of facilitating transition into the community.  Thus, the Rules also take into consideration "the nature and circumstance of the offense," another factor enumerated in § 3621.  18 U.S.C. § 3621(b)(2).

The petitioner in this case will not suffer any irreparable harm. As a convicted individual sentenced to a term of imprisonment, he faces serving an imprisonment term under restrictive conditions. Inmates convicted and sentenced for criminal activities are subject to restrictive conditions of confinement. Restrictive conditions of incarceration are even more compelling in this case as Mr. Jasperson was convicted and sentenced for matters related to the conduct of his current business, the same business he is seeking to manage from prison.

## IV.    DEFENDANTS WILL SUFFER SUBSTANTIAL HARM AND THE PUBLIC INTEREST WILL NOT BE ADVANCED SHOULD PLAINTIFF PREVAIL

As the notice of the final rule explained, BOP recognized the cases holding that § 3621(b) conferred discretion to place an inmate in a Halfway house at any point during his term of imprisonment. 70 Fed. Reg. at 1660-61. BOP therefore sought "to determine how to exercise such discretion to minimize the potential for disparity of treatment," id. at 1661, ultimately deciding "to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." Id.

The BOP has been entrusted with the difficult and challenging task of administering federal prisons across the United States. In so doing, the BOP must carefully evaluate its resources and make decisions concerning the prisoners in its custody. To accomplish its duties in an efficient manner, the BOP must have the discretion to make those decisions. To strip the BOP of such decision-making authority impacts the very core of its functions and purpose. The Court's adverse ruling in this case will yield results which are not consistent with fairness and equal treatment for all inmates. Inmates in privileged status, such as Mr. Jasperson, a successful businessman, could potentially be afforded the opportunity to administer his business in prison

27

while inmates with lower income could serve short imprisonment terms within the restrictive confines of the traditional correctional facilities.  The public interest is better served when inmates are treated equally without regard to economic status or profession.

## CONCLUSION

For all the reasons explained above, defendants' motion for reconsideration should be granted and a final judgment entered on behalf of defendants.

Respectfully submitted,

_____/s/_____
JEFFERY A. TAYLOR, DC Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____/s/_____
CHARLOTTE ABEL, DC Bar # 388582
Assistant United States Attorney