IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK D. JASPERSON<br><br>**Plaintiff,**<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, et, al.,<br><br>**Defendants.** | Case No. 1:06CV01488 (HHK) |

OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS
AND FOR RECONSIDERATION, AND OPPOSITION TO
<u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff Mark D. Jasperson, by and through counsel, in opposition to defendant's second Motion to Dismiss and for Reconsideration and Opposition to Motion for Preliminary Injunction requiring the defendants to consider his placement in a halfway house in compliance with 18 USC §3621, without reliance on the Bureau of Prisons' new rule regarding such transfers, relies on the points and authorities set forth in his Opposition and the entire record herein.

**PROCEDURAL BACKGROUND**

Plaintiff filed the underlying complaint on August 23, 2006, predicating jurisdiction primarily on 28 USC § 1331, because the relief sought required the interpretation and application of a statute of the United States, 18 USC § 3621(b), and regulations pursuant thereto, 28 CFR § 570.20 and 570.21. After full and due consideration, this Court granted a Temporary Restraining Order. In so doing, the Court

clearly indicated its jurisdiction over the parties and the subject matter of this Complaint. The Court also denied the government's earlier Motion for Reconsideration.

The Plaintiff wishes to be considered by the BOP for designation in accordance with the "**strong recommendation**" of the sentencing court to serve his four month sentence at a Community Sanctions Center to allow the Plaintiff "to operate his business" by participating in a Community Corrections Center work-release program. This judicial recommendation was made to avoid unnecessary harm to hundreds of innocent families who rely upon the Plaintiff's day-to-day management of the business to assure that they will continue to receive salaries and health insurance from his business.

The sentencing court and the Probation Officer, who recommended sentencing the Plaintiff to the Community Corrections Center, were unaware that the BOP had changed its thirty five year old policy of allowing direct placement of prisoners into Community Corrections Centers and following judicial recommendations regarding such placements. It should be noted that the BOP has now rescinded the new 2005 regulations and allow direct placement into Community Corrections Centers for defendants sentenced in the Second, Third and Eight Circuits since those Circuits have ruled the new regulations illegal and invalid. The newly developed 2005 BOP policy and regulation precluding consideration of such judicial recommendations are invalid as they are directly contrary to 18 USC § 3621(b). Parenthetically, it should be noted that no Circuit has ruled to the contrary and an overwhelming number of district courts in other Circuits have agreed that the BOP regulations are invalid.

2

This Court confirmed and explicated its ruling granting a Preliminary Injunction in its Memorandum Opinion of October 30, 2006. The government filed its Motion for Reconsideration and final Judgment on March 14, 2007.

**1. The Court Correctly Ruled That The Regulations Can Be Reviewed <u>Under The APA</u>**

Title 18, Section 3625 precludes judicial review of sp3ecific adjudicatory acts of the BOP, but does not preclude review of rulemaking. Although the government recites its compliance with certain rulemaking requirements of the APA, but omits its failure to conform its regulations to the controlling statute, 18 USC §3621. Since plaintiff's challenge is not to the specific adjudication, but to the general rule, this action is proper under 5 USC §533 as a challenge to the regulations.

In *Lyle v. Sivley*, 805 F. Supp. 755 (D. Ariz. 1992), the court determined that a direct challenge to a BOP denial of CCC placement in the § 3624 © context (pre-release custody, to be distinguished from the initial confinement determination under § 3621 at issue here) could not be brought, but that challenges to rulemaking would not be precluded by § 3625. *Id.* at 758-69. The court noted the general presumption that agency action is subject to judicial review unless Congress manifests "clear and convincing evidence" of intent to foreclose such review, *id.* at 758 (citing *Abbot Laboratories v. Gardner*, 387 U.S. 136, 141 (1967)), and reviewing the legislative history of the enacting legislation, the Sentencing Reform Act of 1984. *Id.* at 759; see also H. Rep. No. 98-1030, 98th Cong. 2d Sess. 149 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332 (stating that judicial review of rulemaking, but not "adjudication[s] of specific cases," is available)." <u>See also Wiggins v. Wise</u>, 9512 F. Supp. 614 (S.D.W.Va. 1996). Jasperson's claims fall

within this exception. He alleges that BOP violated the specific command of 18 U.S.C. § 3621 to take into account the individualized factors enumerated in that provision. Accordingly, his claim is cognizable under the APA

Moreover, judicial review is available under plaintiff's claim for relief from agency actions in excess of jurisdiction. Griffith v. FLRA, 842 F. 2d 487, 492 (DC Cir. 1988). This Circuit has found that judicial review is available when an agency acts ultra vires, even if a statutory cause is lacking." Trudeau v. FTC, 456 F. 3d 178, 190 ()DC Cir. 2006). See also Dart v. U.S., 848 F. 2d 217, 221 (DC Cir. 1988). Plaintiff's challenge to the agency action is not barred by sovereign immunity. Trudeau, supra. See also Plaintiff's Memorandum in Support of Jurisdiction, filed August 27, 2006. Therefore, plaintiff's case is within the Court's jurisdiction.

   **2. Plaintiff is Highly Likely to Succeed on the Merits.**

A. The government claims that its interpretation is entitled to deference because the courts should defer to reasonable judgments of agencies, citing to, among others, U.S. v. Wilson, 503 U.S. 329, 335 (1992). While the general principle certainly is sound, it has no applicability to DOJ's instant interpretation of the 18 USC 3621. Deference is appropriate so long as the interpretation "is based on a permissible construction of the statute." Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984). Here, as fully demonstrated below and by the nearly two hundred cases uniformly disagreeing with the DOJ, the DOJ's interpretation plainly flouts the statutory commands. Ironically, the Wilson case relied on by DOJ was decided in 1992; at that time and for approximately twenty years the DOJ had interpreted the same statute as permitting designation to a halfway house under these circumstances if the statutory procedures

4

were followed. Thus, DOJ should be bound by its consistent twenty-year interpretation, see plaintiff's Memorandum in Support of a Temporary Restraining Order rather than the aberrant interpretation[1] cooked up in 2002 by the Office of Legal Counsel. Therefore, the regulations are invalid and plaintiff is entitled to be considered for placement by the BOP as directed by 18 USC § 3621.

B. The government claims that §3621 does not require the plaintiff to be designated to any particular place and, therefore, it has "unfettered authority" to designate. Using that red herring, BOP seeks to ignore its controlling statute, §3621. Plaintiff does seek an order[2] directing BOP to put him in any particular facility, he seeks merely to have his designation be determined pursuant to the laws of the United States rather than the whim of the Office of Legal Counsel of the Department of Justice.

C.     BOP Exercise of Categorical Discretion is Improper. Relying on several inapposite cases, primarily Lopez v. Davis, 531 U.S. 230 (2001) the government claims that it may ignore Congress and place plaintiff in a category of defendants who are not entitled to designation under the procedural requirements of §3621. As aptly demonstrated in the Memorandum Opinion here, the rule considered in Lopez does grant full discretion to the BOP. Section 3621(b), the statute controlling here, requires BOP to do precisely that which Section 3621(e)(2)(B) [the Lopez statute] does not: conduct an individualized determination, considering each of the enumerated factors." Accordingly,

---

[1] DOJ's attitude toward flouting Congress' laws is well set forth in DOJ's Opposition at p. 12, where it suggests that so long as "it explains its reasons, it may adopt a rule that all commentators think is stupid or unnecessary." While the DOJ regulations certainly qualify as stupid and unnecessary in the view of nearly all commentators, the regulations suffer from an additional, fatal infirmity: they violate the controlling statute.

[2] See Appendix for a stipulated order and the Muniz v. Winn, 2006 US Dist. Lexis84615, a case supporting such an order in a twelve-inmate consolidated case.

the regulations are defective. See, e.g., Woodall[3] v. Fed. Bureau of Prisons, 432 F. 3d 235, 241-44 (3d.Cir. 2005)and Levine v. Apker, 455 F. 3d 71, 75 (2d Cir. 2006).

D.   The government finally claims that it considered the required factors in §3621 when issuing the 2005 rules, even though it was not required to do so.  The BOP confuses its duty to consider an individual's placement in a BOP facility pursuant to he four factors directed by congress.  Considering these four factors is not a guide to rulemaking as the government's Opposition contends, but is a procedure by which each individual inmate's placement must be considered.

### 3. Plaintiff Will Suffer Irreparable Harm if Injunctive Relief is not Granted.

Plaintiff asks that the government act in compliance with the well settled law that it consider plaintiff's designation without reliance on the invalid regulations categorically baring him from halfway house placement  If he is not considered for designation to a half-way house for the four months of his term, plaintiff will be deprived of the opportunity to adjust to his reentry into society, he will be unable to assist his family, his business ill probably fail, and he will suffer an absolute, irrevocable loss of those liberties, all of which is not susceptible to remedy by money damages.

The United States Supreme Court has held on more than one occasion that a violation of constitutional rights constitutes irreparable injury warranting interim injunctive relief.  See Elrod v. Burns, 437 U.S. 347 (1976); Doran v. Salem Inn, Inc., 422 U.S. 922 (1975).  The rationale behind treating constitutional injuries as irreparable is that no other form of redress appears available if the preliminary injunction is denied, and, later on the merits, a constitutional violation is found to have occurred.  This is

---

[3] Plaintiff has attached a long list of cases ruling against the government position in the Appendix.  Plaintiff relies on those cases as well as those cited in his Opposition to a previous motion to dismiss.

particularly true in cases, as here, in which the constitutional violation might likely become permanent due to the extended time necessary to complete the litigation.

### 4. Defendants Will Suffer No Harm And The Public Interest Will Be Served By The Injunctive Relief Grunted Here.

The rule at issue in this case was adopted in response to a legal opinion issued by the Department of Justice's Office of Legal Counsel.  There is no suggestion in that opinion or elsewhere of any rationale for the rule other than a perceived inconsistency in the application of the law.  Indeed, representatives of BOP have noted that enforcement of the rule is coming at great effort and cost for the agency because it requires the administrative expense of redesignation and the practical expense of transfer and housing at higher security institutions.  Rather than imposing a burden, the entry of a preliminary injunction is likely to save the defendants time and money.  See Hurt v. BOP, in which Judge Fitzpatrick found that the entry of a preliminary injunction would be a benefit to the BOP financially and administratively.  USDC M.D. GA, Memorandum Order, September 19, 2003, attached hereto.

In granting relief in a similar case, Judge Ponsor, in Iacoboni v. United States, 251 F. Supp. 2d 1015, 1022-23 (D. Mass. 2003 analyzed the claimed injury to respondents and the public interest as follows:

> But the advantages of community confinement to defendants constitute only a fraction of their particular usefulness. For innocent third parties, particularly children, the economic and emotional devastation caused by a parent's distant incarceration can be, to some extent, palliated. With the inmate employed, families can stay off welfare; with a parent available, children can avoid placement in foster homes. For the Government wishing to recognize substantial assistance provided by a cooperating defendant this option also holds out advantages during plea negotiations, and at sentencing. Finally, of course, perhaps the Number One beneficiary of community corrections is the American Taxpayer,

7

>since the cost of community confinement, when it serves the interests of justice, is far less than the price tag on more conventional forms of imprisonment. When one remembers that persons placed in community corrections are generally minor offenders, with minimal or no criminal records, and no history of violence, the decision to entirely eliminate community corrections as an optional imprisonment designation becomes even more astonishing.

In considering the balance of the hardships, "the court should consider wherein lies the public interest, sometimes described as preserving the status quo ante litem until the merits of a serious controversy can be fully considered by a trial court." Maryland Undercoating Co., 603 F.2d at 481.  In addition to preserving the plaintiff's designation to the halfway house, the Court may consider a variety of other "public interests" which pertain in this case, including safeguarding constitutional rights, maintaining the integrity of the rulemaking process, fostering respect for the criminal justice system, preserving the family unit, and protecting small businesses.  See 3 Moore's Federal Practice § 65.22[3] (Matthew Bender 3d ed.).  All these interests weigh in favor of the plaintiff.

This precipitous sea change[4] in the administration of the BOP was not based on considerations of a broad consideration of the impact of the new rule, but merely on the Department of Justice legal opinion changing the BOP's longstanding, well-established and apparently effective utilization of community correctional centers.

The governmental interest is set forth in the LEGAL RESOURCE GUIDE TO THE FEDERAL BUREAU OF PRISONS, 2003, which, in pertinent part states:

>The Federal Bureau of Prisons (BOP) was established in 1930 to provide more progressive and humane care for Federal inmates, to professionalize the prison service, and to ensure consistent and centralized administration of the 11 Federal prisons in operation at that time. . . . The mission of the BOP is to protect society by confining offenders in the controlled environments of prisons and

---

[4] The nature of the change was best described by District Judge Brady, who explained that under the pre-existing procedure, a reasonable imprisonment was envisioned for Ms. Ferguson by the U.S. Attorney, the court and Ms. Ferguson's attorney.  "And that is precisely what happened. Until, that is, some Washington D.C. bureaucrat determined that the entire legal world had been acting under the same shared "unlawful" fantasy for decades and acted to bring us all back into step with his vision of the law." Ferguson v. Ashcroft, 248 F.Supp. 3d. 547, 561 (D.C.M.D.La. 2003).  That "vision of the law" is what has deprived Mr. Colton of his transfer to the halfway house.

8

community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

The arbitrary abandonment of a fairly effective early transfer program will adversely impact consistent administration of the prisons, will remove many from community based facilities that are humane and cost-efficient and will limit opportunities for offenders to become adjusted to reentry into the community as law-abiding citizens. Thus, this new rule not only deprives Mr. Jasperson of due process, but also it is contrary to the long-established purposes of the BOP as is further demonstrated below.

The efficacy of the halfway house process is well recognized. The BOP has found it useful and it has received broad-based support in the legal-correctional community. See e.g., Blueprint for Cost-effective Pretrial Detention, Sentencing and Corrections Systems, ABA, Criminal Justice Section August 2002, Halfway Houses Less of an Option in White-Collar Crime, Los Angeles Times, May 25, 2003, Community Update, BOP, June 28, 2002, Electronic Monitoring vs. Halfway Houses: A Study of Federal Offenders by Jody Klein-Saffran, Project Greenlight, Vera Institute of Justice.

Prior to the December 2002 reversal of policy, the BOP had been expanding and improving the use of the halfway house program. See Survey on the Effectiveness of the Comprehensive Sanctions Centers, by James L. Beck and Jody Klein-Saffran, Ph.D., American Probation and Parole Association Perspectives, (Summer 1997), 20(3), pp. 34-7. Indeed, to accomplish one of its primary goals:

> to help ensure sufficient capacity to imprison violent offenders to the fullest extent of the law, DOJ will increase the percentage of its population in other-than-BOP facilities. These include halfway houses, contract facilities, and home confinement. Use of secure and community-based alternatives to traditional confinement helps BOP address the prison overcrowding problem by placing

nonviolent Federal prisoners in other-than-BOP facilities.  "Performance Goal 5.2.3," <u>FY 99 Annual Accountability Report, U.S. Department of Justice</u>.

Raag Singahl, Esquire, Co-Chairman of the Corrections Committee of the National Association of Defense Lawyers, in reacting to the BOP halfway house policy change said, "Removing halfway houses as a sentencing option runs counter to recent trends in state judicial systems, which are increasingly turning to community corrections as a way to save money and ease prison crowding."  A measure of difficulties this restriction will have is the fact that many BOP facilities are now occupied beyond capacity.  This new policy will exacerbate the overcrowding.

Perhaps more significant is the impact that this BOP edict will have on halfway house treatment for drug program attendees, a group the OLC opinion seeks to except from the policy change.  Briefly put, the OLC opinion claims, relying on Section 3624 (c), that non-drug offenders cannot be transferred to a halfway house unless they are within 10% of the end of their sentences, but that drug program attendees may continue to be transferred under Section 3621 (e), even though Section 3624 (c) applies equally to all inmates, including the latter class.  While we do not argue that drug program attendees should be stopped being transferred to a halfway house prior to 10% of the end of their sentence, when the BOP recognizes the legal implication of the OLC opinion and ends that transfer policy as in violation of Section 3624 (c) there will be significant dislocation in the BOP drug program under Section 3621 (e); costs to the taxpayer and prison overcrowding will mount enormously.

Given this framework and the government's failure to provide any relevant authority to the contrary, this Court should find that the balance of the hardships weighs in favor of the plaintiff.

5.      Plaintiff should be awarded attorneys fees and costs pursuant to 28 USC §1927 and Rule 11, Fed R. Civ. P.  The government has pursued this case and hundreds of others knowing that the statute and uncontradicted judicial authority is against its position.  It has caused innumerable defendants vast expenses and has deprived others of

redress because they might not have been able to bring an injunctive action. The Department of Justice has deliberately ignored Congress and the judiciary to attempt to foist its peculiar views[5] on the public, and it should be sanctioned for this enormous waste.

WHEREFORE, plaintiff requests that respondents' Motion to Dismiss be denied, its Motion for Reconsideration be denied and its request for judgment be denied and defendants Lappin and the Bureau of Prisons b required to reconsider plaintiff's designation in good faith in accordance with the standards employed by the Bureau of Prisons prior to December 2002 and without consideration of 28 CFR § 520.20 and 520.21. Plaintiff also requests the award of attorneys fees and costs.

Respectfully submitted,

_____/s/_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW
Suite 101
Washington, DC 20001
(202) 842-1700

Attorney for the Plaintiff
Mark D. Jasperson

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of April 2007, I caused a copy of the foregoing pleading to be sent via the Court's electronic filing system to AUSA Charlene Abel, 555 Fourth Street, NW, Washington, DC 20001.

_____/s/_____
Brian W. Shaughnessy

---

[5] The Court may recall that in addition to the two assistant US attorneys arguing the motion for injunctive relief, there were four Department of Justice attorneys consulting and advising the AUSA. This shows a full awareness of the vexatiousness of the government's position in this case. In addition, the designation document shows that the Department of Justice did not apply to plaintiff uniform standards since the designation noted that the judge's recommendation would have been considered in the 3d and 8th Circuits.