**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARK D. JASPERSON** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:06CV01488 (HHK)** |
| **FEDERAL BUREAU OF PRISONS,** **et, al.,** | |
| **Defendants.** | |

**OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS**
**AND FOR RECONSIDERATION, AND OPPOSITION TO**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Mark D. Jasperson, by and through counsel, in opposition to defendant's

second Motion to Dismiss and for Reconsideration and Opposition to Motion for

Preliminary Injunction requiring the defendants to consider his placement in a halfway

house in compliance with 18 USC §3621, without reliance on the Bureau of Prisons' new

rule regarding such transfers, relies on the points and authorities set forth in his

Opposition and the entire record herein.

**PROCEDURAL BACKGROUND**

Plaintiff filed the underlying complaint on August 23, 2006, predicating

jurisdiction primarily on 28 USC § 1331, because the relief sought required the

interpretation and application of a statute of the United States, 18 USC § 3621(b), and

regulations pursuant thereto, 28 CFR § 570.20 and 570.21.  After full and due

consideration, this Court granted a Temporary Restraining Order.  In so doing, the Court

clearly indicated its jurisdiction over the parties and the subject matter of this Complaint. The Court also denied the government's earlier Motion for Reconsideration.

The Plaintiff wishes to be considered by the BOP for designation in accordance with the "**strong recommendation**" of the sentencing court to serve his four month sentence at a Community Sanctions Center to allow the Plaintiff "to operate his business" by participating in a Community Corrections Center work-release program. This judicial recommendation was made to avoid unnecessary harm to hundreds of innocent families who rely upon the Plaintiff's day-to-day management of the business to assure that they will continue to receive salaries and health insurance from his business.

The sentencing court and the Probation Officer, who recommended sentencing the Plaintiff to the Community Corrections Center, were unaware that the BOP had changed its thirty five year old policy of allowing direct placement of prisoners into Community Corrections Centers and following judicial recommendations regarding such placements. It should be noted that the BOP has now rescinded the new 2005 regulations and allow direct placement into Community Corrections Centers for defendants sentenced in the Second, Third and Eight Circuits since those Circuits have ruled the new regulations illegal and invalid. The newly developed 2005 BOP policy and regulation precluding consideration of such judicial recommendations are invalid as they are directly contrary to 18 USC § 3621(b). Parenthetically, it should be noted that no Circuit has ruled to the contrary and an overwhelming number of district courts in other Circuits have agreed that the BOP regulations are invalid.

This Court confirmed and explicated its ruling granting a Preliminary Injunction in its Memorandum Opinion of October 30, 2006. The government filed its Motion for Reconsideration and final Judgment on March 14, 2007.

## ARGUMENT

## INTRODUCTION

It is apparent that this Honorable Court expended a considerable amount of time and effort analyzing the legal issues involved in granting the Preliminary Injunction. The Court's analysis is sound and correct in every respect. Although the government does not agree with the prior ruling of the Court, I refer to this Court's Memorandum Opinion of November 30, 2006 as sufficient legal argument to defeat the government's misguided Motion for Reconsideration.

From an analysis of Rule 12 And Rule 60 it appears that the government's instant Motion for Reconsideration is largely simply an attempt to reassert the same arguments that were soundly rebuked by this court almost six months earlier. Furthermore, this Motion has been improperly filed under Rule 12 of the Federal Rule of Civil Procedure which states in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. **A motion making any of these defenses shall be made before pleading if a further pleading is permitted.** (emphasis added)

The government filed its Answer (which is a pleading) on November 16, 2006, almost four months before filing this Motion under Rule 12.  As a result, a clear reading of Rule 12 requires that the government should be barred from filing this Motion at this late date.  Hence, it follows that the government is now prohibited from disputing jurisdiction over the subject matter, jurisdiction over the person, improper venue and failure to state a claim upon which relief can be granted.  Clearly, this Motion should be denied or stricken to the extent that, on its face, it seeks relief under Rule 12.

In the alternative, the government seeks reconsideration under Rule 60(b)(6) of the Federal Rule of Civil Procedure which states in part:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.
>
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. (emphasis added)

Once again, the government's Motion was not filed within a reasonable time.  The Preliminary Injunction was entered on September 26, 2006 and the Memorandum Opinion was entered on October 30, 2006.   This delay in filing the Motion of approximately a half-year is unwarranted, especially since there is absolutely no NEW case law or facts to support its position since the entry of this Court's Order.

Moreover, when Rule 60(b)(6) is read in pari material, it is plain that the other reasons should be in the nature of a mistke to comport with the other baes for a Rule 60 Motion.  Accordidngly, the Motion should be denied for failure eto comply with Rules 12 and 60.

### 1.   The Court Correctly Ruled That The Regulations Can Be Reviewed Under The APA

Title 18, Section 3625 precludes judicial review of sp3ecific adjudicatory acts of the BOP, but does not preclude review of rulemaking.  Although the government recites its compliance with certain rulemaking requirements of the APA, but omits its failure to conform its regulations to the controlling statute, 18 USC §3621.  Since plaintiff's challenge is not to the specific adjudication, but to the general rule, this action is proper under 5 USC §533 as a challenge to the regulations.

In *Lyle v. Sivley*, 805 F. Supp. 755 (D. Ariz. 1992), the court determined that a direct challenge to a BOP denial of CCC placement in the § 3624 © context (pre-release custody, to be distinguished from the initial confinement determination under § 3621 at issue here) could not be brought, but that challenges to rulemaking would not be precluded by § 3625. *Id.* at 758-69. The court noted the general presumption that agency

action is subject to judicial review unless Congress manifests "clear and convincing

evidence" of intent to foreclose such review, *id.* at 758 (citing *Abbot Laboratories v.*

*Gardner*, 387 U.S. 136, 141 (1967)), and reviewing the legislative history of the enacting

legislation, the Sentencing Reform Act of 1984. *Id.* at 759; see also H. Rep. No. 98-1030,

98th Cong. 2d Sess. 149 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332 (stating that

judicial review of rulemaking, but not "adjudication[s] of specific cases," is available)."

See also Wiggins v. Wise, 9512 F. Supp. 614 (S.D.W.Va. 1996).  Jasperson's claims fall

within this exception. He alleges that BOP violated the specific command of 18 U.S.C. §

3621 to take into account the individualized factors enumerated in that provision.

Accordingly, his claim is cognizable under the APA

        Moreover, judicial review is available under plaintiff's claim for relief from

agency actions in excess of jurisdiction.  Griffith v. FLRA, 842 F. 2d 487, 492 (DC Cir.

1988).  This Circuit has found that judicial review is available when an agency acts ultra

vires, even if a statutory cause is lacking."  Trudeau v. FTC, 456 F. 3d 178, 190 ()DC Cir.

2006).  See also Dart v. U.S., 848 F. 2d 217, 221 (DC Cir. 1988).  Plaintiff's challenge to

the agency action is not barred by sovereign immunity.  Trudeau, supra.  See also

Plaintiff's Memorandum in Support of Jurisdiction, filed August 27, 2006.  Therefore,

plaintiff's case is within the Court's jurisdiction.

        2. **Plaintiff is Highly Likely to Succeed on the Merits.**

A.  The government claims that its interpretation is entitled to deference because the

courts should defer to reasonable judgments of agencies, citing to, among others, U.S. v.

Wilson, 503 U.S. 329, 335 (1992).  While the general principle certainly is sound, it has

no applicability to DOJ's instant interpretation of the 18 USC 3621.  Deference is

appropriate so long as the interpretation "is based on a permissible construction of the

statute." Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984).

Here, as fully demonstrated below and by the nearly two hundred cases uniformly

disagreeing with the DOJ, the DOJ's interpretation plainly flouts the statutory commands.

Ironically, the Wilson case relied on by DOJ was decided in 1992; at that time and for

approximately twenty years the DOJ had interpreted the same statute as permitting

designation to a halfway house under these circumstances if the statutory procedures

were followed.  Thus, DOJ should be bound by its consistent twenty-year interpretation,

see plaintiff's Memorandum in Support of a Temporary Restraining Order rather than the

aberrant interpretation[1] cooked up in 2002 by the Office of Legal Counsel.  Therefore, the

regulations are invalid and plaintiff is entitled to be considered for placement by the BOP

as directed  by 18 USC § 3621.

B.  The government claims that §3621 does not require the plaintiff to be designated to

any particular place and, therefore, it has "unfettered authority" to designate.  Using that

red herring, BOP seeks to ignore its controlling statute, §3621.  Plaintiff does seek an

order[2] directing BOP to put him in any particular facility, he seeks merely to have his

designation be determined pursuant to the laws of the United States rather than the whim

of the Office of Legal Counsel of the Department of Justice.

C.      BOP Exercise of Categorical Discretion is Improper.  Relying on several

inapposite cases, primarily Lopez v. Davis, 531 U.S. 230 (2001) the government claims

---

[1] DOJ's attitude toward flouting Congress' laws is well set forth in DOJ's Opposition at p. 12, where it
suggests that so long as "it explains its reasons, it may adopt a rule that all commentators think is stupid or
unnecessary."  While the DOJ regulations certainly qualify as stupid and unnecessary in the view of nearly
all commentators, the regulations suffer from an additional, fatal infirmity: they violate the controlling
statute.

[2] See Appendix for a stipulated order and the Muniz v.  Winn, 2006 US Dist. Lexis84615, a
case supporting such an order in a twelve-inmate consolidated case.

that it may ignore Congress and place plaintiff in  a category of defendants who are not

entitled to designation under the procedural requirements of §3621.  As aptly

demonstrated in the Memorandum Opinion here, the rule considered in Lopez does grant

full discretion to the BOP.  Section 3621(b), the statute controlling here, requires BOP to

do precisely that which Section 3621(e)(2)(B) [the Lopez statute] does not: conduct an

individualized determination, considering each of the enumerated factors."  Accordingly,

the regulations are defective.  <u>See, e.g., Woodall</u>[3] <u>v. Fed. Bureau of Prisons</u>, 432 F. 3d

235, 241-44 (3d.Cir. 2005)and <u>Levine v. Apker</u>, 455 F. 3d 71, 75 (2d Cir. 2006).

D.       The government finally claims that it considered the required factors in §3621

when issuing the 2005 rules, even though it was not required to do so.  The BOP confuses

its duty to consider an individual's placement in a BOP facility pursuant to he four

factors directed by congress.  Considering these four factors is not a guide to rulemaking

as the government's Opposition contends, but is a procedure by which each individual

inmate's placement must be considered.

**3.  Plaintiff Will Suffer Irreparable Harm if Injunctive Relief is not Granted.**

Plaintiff asks that the government act in compliance with the well settled law that

it consider plaintiff's designation without reliance on the invalid regulations categorically

baring him from halfway house placement  If he is not considered for designation to a

half-way house for the four months of his term, plaintiff will be deprived of the

opportunity to adjust to his reentry into society, he will be unable to assist his family, his

business ill probably fail, and he will suffer an absolute, irrevocable loss of those

liberties, all of which is not susceptible to remedy by money damages.

---

[3] Plaintiff has attached a long list of cases ruling against the government position in the Appendix.  Plaintiff
relies on those cases as well as those cited in his Opposition to a previous motion to dismiss.

The United States Supreme Court has held on more than one occasion that a violation of constitutional rights constitutes irreparable injury warranting interim injunctive relief.  See Elrod v. Burns, 437 U.S. 347 (1976); Doran v. Salem Inn, Inc., 422 U.S. 922 (1975).  The rationale behind treating constitutional injuries as irreparable is that no other form of redress appears available if the preliminary injunction is denied, and, later on the merits, a constitutional violation is found to have occurred.  This is particularly true in cases, as here, in which the constitutional violation might likely become permanent due to the extended time necessary to complete the litigation.

**4.    Defendants Will Suffer No Harm And The Public Interest Will Be Served By The Injunctive Relief Grunted Here.**

The rule at issue in this case was adopted in response to a legal opinion issued by the Department of Justice's Office of Legal Counsel.  There is no suggestion in that opinion or elsewhere of any rationale for the rule other than a perceived inconsistency in the application of the law.  Indeed, representatives of BOP have noted that enforcement of the rule is coming at great effort and cost for the agency because it requires the administrative expense of redesignation and the practical expense of transfer and housing at higher security institutions.  Rather than imposing a burden, the entry of a preliminary injunction is likely to save the defendants time and money.  See Hurt v. BOP, in which Judge Fitzpatrick found that the entry of a preliminary injunction would be a benefit to the BOP financially and administratively.  USDC M.D. GA, Memorandum Order, September 19, 2003, attached hereto.

In granting relief in a similar case, Judge Ponsor, in <u>Iacoboni v. United States,</u> 251

F. Supp. 2d 1015, 1022-23 (D. Mass. 2003 analyzed the claimed injury to respondents

and the public interest as follows:

> But the advantages of community confinement to defendants constitute only a
> fraction of their particular usefulness. For innocent third parties, particularly
> children, the economic and emotional devastation caused by a parent's distant
> incarceration can be, to some extent, palliated. With the inmate employed,
> families can stay off welfare; with a parent available, children can avoid
> placement in foster homes. For the Government wishing to recognize substantial
> assistance provided by a cooperating defendant this option also holds out
> advantages during plea negotiations, and at sentencing. Finally, of course, perhaps
> the Number One beneficiary of community corrections is the American Taxpayer,
> since the cost of community confinement, when it serves the interests of justice, is
> far less than the price tag on more conventional forms of imprisonment. When
> one remembers that persons placed in community corrections are generally minor
> offenders, with minimal or no criminal records, and no history of violence, the
> decision to entirely eliminate community corrections as an optional imprisonment
> designation becomes even more astonishing.

In considering the balance of the hardships, "the court should consider wherein

lies the public interest, sometimes described as preserving the status quo ante litem until

the merits of a serious controversy can be fully considered by a trial court." <u>Maryland</u>

<u>Undercoating Co.,</u> 603 F.2d at 481.  In addition to preserving the plaintiff's designation

to the halfway house, the Court may consider a variety of other "public interests" which

pertain in this case, including safeguarding constitutional rights, maintaining the integrity

of the rulemaking process, fostering respect for the criminal justice system, preserving

the family unit, and protecting small businesses.  See <u>3 Moore's Federal Practice</u> §

65.22[3] (Matthew Bender 3d ed.).  All these interests weigh in favor of the plaintiff.

This precipitous sea change[4] in the administration of the BOP was not based on
considerations of a broad consideration of the impact of the new rule, but merely on the

---

[4] The nature of the change was best described by District Judge Brady, who explained that under the pre-
existing procedure, a reasonable imprisonment was envisioned for Ms. Ferguson by the U.S. Attorney, the
court and Ms. Ferguson's attorney.  "And that is precisely what happened. Until, that is, some Washington

Department of Justice legal opinion changing the BOP's longstanding, well-established and apparently effective utilization of community correctional centers.

The governmental interest is set forth in the LEGAL RESOURCE GUIDE TO

THE FEDERAL BUREAU OF PRISONS, 2003, which, in pertinent part states:

> The Federal Bureau of Prisons (BOP) was established in 1930 to provide more progressive and humane care for Federal inmates, to professionalize the prison service, and to ensure consistent and centralized administration of the 11 Federal prisons in operation at that time. . . . The mission of the BOP is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

The arbitrary abandonment of a fairly effective early transfer program will

adversely impact consistent administration of the prisons, will remove many from

community based facilities that are humane and cost-efficient and will limit opportunities

for offenders to become adjusted to reentry into the community as law-abiding citizens.

Thus, this new rule not only deprives Mr. Jasperson of due process, but also it is contrary

to the long-established purposes of the BOP as is further demonstrated below.

The efficacy of the halfway house process is well recognized.  The BOP has

found it useful and it has received broad-based support in the legal-correctional

community. See e.g., Blueprint for Cost-effective Pretrial Detention, Sentencing and

Corrections Systems, ABA, Criminal Justice Section August 2002, Halfway Houses Less

of an Option in White-Collar Crime, Los Angeles Times, May 25, 2003, Community

Update, BOP, June 28, 2002, Electronic Monitoring vs. Halfway Houses: A Study of

Federal Offenders by Jody Klein-Saffran, Project Greenlight, Vera Institute of Justice.

---

D.C. bureaucrat determined that the entire legal world had been acting under the same shared "unlawful" fantasy for decades and acted to bring us all back into step with his vision of the law." Ferguson v. Ashcroft, 248 F.Supp. 3d. 547, 561 (D.C.M.D.La. 2003).  That "vision of the law" is what has deprived Mr. Colton of his transfer to the halfway house.

Prior to the December 2002 reversal of policy, the BOP had been expanding and

improving the use of the halfway house program. See Survey on the Effectiveness of the

Comprehensive Sanctions Centers, by James L. Beck and Jody Klein-Saffran, Ph.D.,

American Probation and Parole Association Perspectives, (Summer 1997), 20(3), pp. 34-

7.  Indeed, to accomplish one of its primary goals:

> to help ensure sufficient capacity to imprison violent offenders to the fullest
> extent of the law, DOJ will increase the percentage of its population in other-than-
> BOP facilities.  These include halfway houses, contract facilities, and home
> confinement.  Use of secure and community-based alternatives to traditional
> confinement helps BOP address the prison overcrowding problem by placing
> nonviolent Federal prisoners in other-than-BOP facilities.  "Performance Goal
> 5.2.3," FY 99 Annual Accountability Report, U.S. Department of Justice.

> Raag Singahl, Esquire, Co-Chairman of the Corrections Committee of the
> National Association of Defense Lawyers, in reacting to the BOP halfway house policy
> change said, "Removing halfway houses as a sentencing option runs counter to recent
> trends in state judicial systems, which are increasingly turning to community corrections
> as a way to save money and ease prison crowding."  A measure of difficulties this
> restriction will have is the fact that many BOP facilities are now occupied beyond
> capacity.  This new policy will exacerbate the overcrowding.

Perhaps more significant is the impact that this BOP edict will have on halfway

house treatment for drug program attendees, a group the OLC opinion seeks to except

from the policy change.  Briefly put, the OLC opinion claims, relying on Section 3624

(c), that non-drug offenders cannot be transferred to a halfway house unless they are

within 10% of the end of their sentences, but that drug program attendees may continue

to be transferred under Section 3621 (e), even though Section 3624 (c) applies equally to

all inmates, including the latter class.  While we do not argue that drug program attendees

should be stopped being transferred to a halfway house prior to 10% of the end of their

sentence, when the BOP recognizes the legal implication of the OLC opinion and ends

that transfer policy as in violation of Section 3624 (c) there will be significant dislocation

in the BOP drug program under Section 3621 (e); costs to the taxpayer and prison

overcrowding will mount enormously.

Given this framework and the government's failure to provide any relevant
authority to the contrary, this Court should find that the balance of the hardships weighs
in favor of the plaintiff.

5.      Plaintiff should be awarded attorneys fees and costs pursuant to 28 USC

§1927 and Rule 11, Fed R. Civ. P.  The government has pursued this case and hundreds

of others knowing that the statute and uncontradicted judicial authority is against its

position.  It has caused innumerable defendants vast expenses and has deprived others of

redress because they might not have been able to bring an injunctive action.   The

Department of Justice has deliberately ignored Congress and the judiciary to attempt to

foist its peculiar views[5] on the public, and it  should be sanctioned for this enormous

waste.

WHEREFORE, plaintiff requests that respondents' Motion to Dismiss be denied,

its Motion for Reconsideration be denied and its request for judgment be denied and

defendants Lappin and the Bureau of Prisons b required to reconsider plaintiff's

designation in good faith in accordance with the standards employed by the Bureau of

Prisons prior to December 2002 and without consideration of 28 CFR § 520.20 and

520.21. Plaintiff also requests the award of attorneys fees and costs.

Respectfully submitted,

_____/s/_____
Brian W. Shaughnessy, DCN 89946
913 M Street, NW

---

[5] The Court may recall that in addition to the two assistant US attorneys arguing the motion for injunctive
relief, there were four Department of Justice attorneys consulting and advising the AUSA.  This shows a
full awareness of the vexatiousness of  the government's position in this case.  In addition, the designation
document shows that the Department of Justice did not apply to plaintiff uniform standards since the
designation noted that the judge's recommendation would have been considered in the 3d and 8th Circuits.

Suite 101
Washington, DC  20001
(202) 842-1700

Attorney for the Plaintiff
Mark D. Jasperson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of May 2007, I caused a copy of the foregoing pleading to be sent via the Court's electronic filing system to AUSA Charlene Abel, 555 Fourth Street, NW, Washington, DC  20001.

_____/s/_____
Brian W. Shaughnessy