```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA


MARK D. JASPERSON              )
                               )
       Plaintiff,              )
                               )
       v.                      )   Case No. 1:06-CV-01488 (HHK)
                               )
FEDERAL BUREAU OF PRISONS,     )
et. al.,                       )
                               )
       Defendants.             )
```

**DEFENDANTS' MOTION FOR STAY**

Pursuant to Rule 62(c), Defendants respectfully request a stay of this Court's August 21, 2007, Order pending appeal of that Order. A stay is necessary because execution of the Order would deprive the government of the opportunity to seek review by a higher court of the district court's findings and judgment. Defendant's counsel contacted the plaintiff's counsel to seek plaintiff's consent to this motion but there was no response. LCvR 7(m).

**A. BACKGROUND**

This case involves a criminal defendant sentenced to a term of imprisonment of four months. In the Judgment and Commitment Order, the sentencing judge issued a judicial recommendation that the defendant serve his sentence in a half way house in Florida. The BOP designated the defendant to a prison camp instead based on its 2005 regulation which no longer allowed the housing of

1

inmates in halfway houses for purposes of serving their sentences. The regulation provides that "[t]he Bureau will designate inmates to community confinement only as part of prerelease custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). This is based on the BOP's new interpretation of 18 U.S.C. §§ 3621 and 3624(c).

Plaintiff filed a habeas corpus petition in the District Court for the Middle District of Florida, challenging the BOP's designation. The petition was dismissed. He then filed the instant action in the District Court for the District of Columbia challenging the regulations and the BOP's interpretations of §§ 3624(c) and 3621 as violative of his rights. The District Court for the District of Columbia issued a preliminary injunction on September 26, 2006. On August 22, 2007, the same court issued an order to the BOP to "make an individualized determination of plaintiff's place of confinement" ... "without regard to the 'categorical exercise' of discretion in 28 C.F.R. § 570.20(a), and considering each of the factors set forth in 18 U.S.C. § 3621 (including the recommendation by plaintiff's sentencing court that he serve his sentence in a Community Center, id. § 3521(b)(4)(b))." Defendant noted an appeal of the final judgment on October 17, 2007.

2

**B. Argument**

As an initial matter, the August 21, 2007, Order is appealable as a final judgment. 28 U.S.C. § 1291. In deciding whether to grant a stay pending appeal, the District Court should consider the four well established criteria:

1. whether the movant has a substantial chance of success on the merits,
2. whether the movant will suffer irreparable injury if the stay is denied,
3. whether the stay will cause substantial harm to third parties, and
4. whether the public interest will be served by the stay.

See id. (citing Washington Metro. Area Transit Comm'n, 559 F.2d 841, 843 (D.C. Cir. 1977)).

**1. Substantial Chance of Success Exists**

Regarding the first factor, Defendant respectfully disagrees with the Court's analysis and conclusion in its August 22, 2007, Order. Courts have consistently recognized that an agency's interpretation of a statute it is entrusted to administer is entitled to deference. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984); accord Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that

they are charged with administering."). Courts should presume that "Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, 517 U.S. at 740-41. As the agency responsible for administering 18 U.S.C. § 3621, see United States v. Wilson, 503 U.S. 329, 335 (1992), BOP's interpretation of that statute, therefore, deserves deference. Chevron, 467 U.S. at 844.

   The D.C. Circuit Court has not yet addressed the validity of the BOP regulations at stake in this case. However, in assuming that BOP has discretion under § 3621(b) to place inmates in halfway houses at any point during their term of imprisonment, the February 2005 Rules are consistent with the reasoning of the First and Eighth Circuits that invalidated the December 2002 Policy. The common thread in each of the decisions was that BOP erroneously had failed to recognize its discretion under § 3621(b) to designate prisoners to a term of imprisonment in a halfway house at any time during the prisoner's sentence, even prior to when the lesser of ten percent or six months remained on an inmate's sentence. See, e.g., Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17, 28 (1st Cir. 2004). In response to these decisions, BOP promulgated the

February 2005 Rules, assuming it possessed discretion under §§ 3621(b) and 3624(c) to place a prisoner sentenced to a term of imprisonment in a halfway house at any time during the term. 70 Fed. Reg. at 1660-61.

BOP properly exercised that discretion in the February 2005 Rules to categorically limit the period an inmate may be placed in a CCC. See 28 C.F.R. § 570.20-21; 70 Fed. Reg. 1659. BOP's categorical exercise is supported by numerous cases holding that an agency may categorically exercise the discretion Congress has statutorily granted it. See, e.g., Lopez v. Davis, 531 U.S. 230 233-34 (2001); Warren v. Miles, 230 F.3d 688, 693-94 & n.4 (5th Cir. 2000); Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir. 2000); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998); Jacks v. Crabtree, 114 F.3d 983, 985-86 (9th Cir. 1997); Yang v. INS, 79 F.3d 932, 936 (9th Cir. 1996).

Indeed, Lopez presented strikingly similar issues to those before this Court (and one expressly relied on by BOP in proposing the February 2005 Rules, see 69 Fed. Reg. 51213). The Lopez Court addressed BOP's categorical exercise of its statutory discretion under 18 U.S.C. § 3621(e)(2)(b), a sub-division of the statutory section at issue here, providing that the "period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program may be reduced

by the Bureau."[1]  The Lopez Court reviewed a BOP regulation pursuant to which inmates convicted of non-violent crimes involving firearms were ineligible for relief.  28 C.F.R. § 550.58(a)(1)(vi)(B).

In upholding BOP's regulation, the Lopez Court "reject[ed the petitioner's] argument . . . that the agency must not make

---

[1] The history of the rule in Lopez closely parallels the change in BOP policy in this case.  As summarized by the Ninth Circuit,

> For some time, the Bureau has been of the belief that a prisoner whose crime of conviction involved the possession, carrying, or use of a firearm should be ineligible for early release.  At first, the Bureau implemented that belief by decreeing [in a statement not promulgated through notice-and-comment rulemaking] that those possessors of firearms had committed crimes of violence, and, therefore, had not been "convicted of a nonviolent offense" [as required by statute for eligibility for the early-release program].  We declared that the Bureau thereby misinterpreted the meaning of "nonviolent offense" because it could not declare that possession of a firearm, either as the very offense of conviction or as an enhancement, was itself enough to make a crime one of violence.
>
> The Bureau acceded to that interpretation, but, not deterred from its continuing belief that individuals in that category should not be given early release into the community, it determined that it would not rest its categorical exclusion of them on a direct interpretation of the specific statutory language, "nonviolent offense." Rather, it would exercise its discretion under the statute to refuse them early release, regardless of that language.

Bowen, 202 F.3d at 1217 (citations omitted).  The court held that the BOP had the power to "reach[] the same conclusion [as previously rejected by the court] on an entirely different ground," id. at 1219, and held that the BOP's new regulation was proper, id. at 1220.  The same rule was affirmed by the Supreme Court in Lopez.

6

categorical exclusions, but may rely only on case-by-case assessments." 531 U.S. at 243. The Court explained, even where a statutory scheme requires individualized determinations (which was not the case in Lopez), "'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" Id. at 243-44 (quoting Am. Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991)). The Court further held that BOP "is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'" Id. at 244 (quoting Heckler v. Campbell, 461 U.S. 458 (1983)).

Just as "§ 3621(e)(2) vests broad discretion in the BOP to determine which individuals, among the group of statutorily eligible inmates convicted of nonviolent offenses, are appropriate candidates for early release," Bellis v. Davis, 186 F.3d 1092, 1094 (8th Cir. 1999), so too, § 3621(b) vests BOP with broad discretion in determining where to designate inmates. BOP's decision to restrict CCC placements to prisoners serving the final ten percent of their sentences, not to exceed six months, is a lawful categorical exercise of the agency's placement discretion, just as the BOP's categorical exclusion of certain crimes from early release eligibility was lawful in Lopez. Further, as in § 3621(e)(2), no language in § 3621(b)

7

precludes BOP from exercising its discretion categorically.  See Warren, 230 F.3d at 694 n.4 ("section 3621 grants the BOP unfettered discretion . . . .  [N]othing in section 3621 prevents the BOP from exercising that discretion categorically."); Moss v. Apker, 2005 WL 1593016, at *8 (S.D. N.Y. July 6, 2005)("Nothing in § 3621(b) explicitly prohibits the BOP from regulating its discretion under that statutory provision in part through the issuance of categorical rules"); Levine v. Menifee, 2005 WL 1384021, at *4 (S.D. N.Y. June 9, 2005)(holding that § 3621 "does not . . . mandate that the enumerated factors must be considered on a case-by-case, as opposed to a categorical basis"); Wiesel v. Menifee, 2005 WL 1036297, at *5 (S.D. N.Y. May 2, 2005)(same).

   Nor does § 3621(b)'s enumeration of a non-exhaustive list of designation considerations alter BOP's authority to announce a categorical application of that statute.  Thus, even assuming arguendo that § 3621 requires BOP to make individualized determinations on inmates' designations, and it does not (see supra Point I.B.2), the Supreme Court has made clear that an agency may announce a categorical rule of general applicability, even where the statutory scheme calls for individualized determinations.  Am. Hosp. Ass'n, 499 U.S. at 612.

   We recognize that in making its decision, this Court relied on other circuit courts which invalidated the BOP regulations.  Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005);

8

Levine v. Apker, 455 F.3d 71 (2d Cir. 2006); Fults v. Sanders, 442 F.2d 1088, 1092 (8th Cir. 2006). However, we respectfully remind this Court that in each of those cases there was a strong dissenting opinion, thereby demonstrating that this is an issue on which circuit judges often differ. Certain circuit judges agree with the BOP's position as explained above. Thus, the first factor favors the stay.

### 2. No Harm Affects Movant

Issuance of the stay will not harm the plaintiff. A stay of the appeal will merely postpone the plaintiff's designation and service of his sentence. In addition, as discussed below, third parties would suffer irreparable harm in the absence of a stay.

### 3. The Stay Serves the Public Interest

The correction of implementing policy serves important public interests in achieving effective punishment and deterrence for criminal activity. Further, the magnitude of punishment and size of achieved deterrence vary significantly as a result of the amount of time a prisoner spends in halfway house placement as opposed to traditional custodial confinement. Take, for instance, an inmate sentenced to a twelve-month term of incarceration. Under the old BOP interpretation of § 3624(c), an inmate could serve as much as half of the sentence outside of prison walls in a halfway house. Under the new policy, which correctly applies § 3624(c), the same inmate could serve only

9

thirty-six days of the year in a halfway house.  Clearly, 329 days of incarceration has a far greater deterrence and punishment effect than six months of incarceration.  See, e.g., H.R. Rep. No. 101-681(I) at 338 (dissenting to proposed expansion of BOP authority to place offenders in community facilities and commenting that "[t]he American public wants dangerous felons in jail, not in therapy programs or home detention").

### 4. Stay Prevents Irreparable Harm to the Bureau of Prisons

It is clear that making an individualized determination of plaintiff's place of confinement without regard to the "categorical exercise of discretion" in the 2005 regulation and considering each one of the factors in § 3621 individually will render any appeal by the Bureau of Prisons moot.  After designation and housing of plaintiff in a halfway house, the harm will be complete and the remedy impossible.  This is precisely the reasoning behind stays granted in other circuits.  See Rodriguez v. Smith, 07-CV-00190, Resp. Obj. To Findings & Recommendations granted (E.D. Cal. Apr. 12, 2007) (Judge granted one year stay to allow a Ninth Circuit Appeal before the issue grew moot on order to review BOP inmate's eligibility for RRC within 14 days); Holloway v. Marberry, 06-12516 Order Granting Resp. Mot. For Stay Pending Appeal (E.D. Mich. July 14, 2007) ("The Sixth Circuit has not addressed the validity of the Bureau of Prisons regulations at issue in this case . . . Accordingly, a

stay pending appeal should not significantly delay the time when Petitioner would be released to a community treatment center.").

A stay is clearly appropriate at this time, in order to permit defendants to pursue a meaningful opportunity for appellate review of this Court's decision.  See Philip Morris, 314 F.3d 621-22 (issuing stay pending resolution of appeal).

### C. Conclusion

Defendants therefore request that this court stay provision of its August 21, 2007, Order granting relief to the plaintiff.

        Respectfully submitted,


        /s/
        JEFFERY A. TAYLOR, DC Bar #498610
        United States Attorney


        /s/
        RUDOLPH CONTRERAS, DC Bar #434122
        Assistant United States Attorney


        /s/
        CHARLOTTE A. ABEL, DC Bar # 388582
        Assistant United States Attorney